IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **FIBRANT, LLC,** *et al.,*[1] | ) | **Case No. 18-10274 (SDB)** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS, (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (III) GRANTING RELATED RELIEF**

Fibrant, LLC (the "Seller") and its affiliated debtors-in-possession (collectively, the "Debtors") file this motion (the "Motion"), pursuant to Sections 105(a) and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, in the form attached hereto as Exhibit A (the "Approval Order"): (a) approving that certain Purchase and Sale Agreement, dated as of May 9, 2018, by and among PCS Nitrogen Fertilizer, L.P. (together with its permitted successors and assigns, the "Purchaser") and the Seller, a true and correct copy of which is attached hereto as Exhibit B (the "Agreement"),[2] (b) authorizing Seller to sell certain assets as set forth in the Agreement, free and clear of all Liens (as defined below), in accordance with the terms and conditions of the Agreement; and (c) granting related relief. In support of this Motion, the Debtors respectfully show the Court as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fibrant, LLC (6694); Evergreen Nylon Recycling, LLC (7625); Fibrant South Center, LLC (8270); and Georgia Monomers Company, LLC (0042).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 105 and 363 of the Bankruptcy Code.

## RELIEF REQUESTED

2. By this Motion, the Debtors request that the Court enter the Approval Order: (a) authorizing the sale of certain assets of the Seller to the Purchaser free and clear of any and all liens, claims, or encumbrances of any kind or nature whatsoever, other than Permitted Exceptions ("Liens"), and (b) granting related relief. The Debtors also seek authorization to take all reasonable and necessary steps to complete and implement the Agreement after the approval of the sale.

## BACKGROUND

**A. The Chapter 11 Cases.**

3. On February 23, 2018 (the "Petition Date"), the Debtors filed voluntary petitions with the Court under chapter 11 of the Bankruptcy Code.

4. The factual background relating to the Debtors' commencement of these cases is set forth in detail in the Declaration of David Leach in Support of First-Day Motions and Applications (the "First-Day Declaration") filed on the Petition Date and incorporated herein by reference.

5. The Debtors have continued in possession of their properties and continue to operate and manage their business as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On March 16, 2018, an Official Committee of Unsecured Creditors was appointed in these cases. As of the date of the filing of this Motion, no request for the appointment of a trustee or examiner has been made.

**B.     Background to the Sale.**

7.      Prior to and following the Petition Date, the Debtors discussed the potential sale of all or material portions of their assets with a number of unaffiliated third party buyers. A number of these potential asset purchasers conducted significant due diligence regarding the Debtors' assets. However, because of the presence of hazardous waste or hazardous constituents at the Debtors' plant site and the related obligation to conduct environmental remediation at the plant site, these potential buyers decided not to submit binding transaction proposals to the Debtors. In addition, prior to the Petition Date, the Debtors listed for sale the Fibrant South Property (as such term is defined in the First Day Declaration), the Debtors' central office building and related parking lot (the "COB Property"), and the Debtors' administrative building and adjacent parking lot (the parking lot is referred to as the "Parking Lot Property") with real estate brokers. After being on the market for a number of months, the Debtors did not receive any bids for these parcels of real estate (whether at or below the listing prices).

8.      The Purchaser operates a chemical plant that is directly adjacent to the Debtors' plant site. In addition, the Purchaser and Seller jointly own and operate certain personal property comprising the river water pump station at the Savannah River (on the edge of the Debtors' plant site), and the Purchaser holds certain easement rights over a portion of the Debtors' real property and associated facilities (to facilitate the supply of river water from the river water pump station to Purchaser's chemical plant). The Purchaser began evaluating the purchase of certain assets of the Debtors during the fall of 2016. In February 2018, Purchaser and Seller began negotiating the

terms under which Purchaser would acquire certain assets of Seller, namely the Parking Lot Property, a parcel of land that includes the river water pump station (the "Pump House Property"), and the COB Property. These discussions culminated in a definitive offer by the Purchaser to acquire the Assets, as described below.

**D.    The Purchase and Sale Agreement.**

9.    After carefully evaluating their alternatives, taking into account the unique nature of the Debtors' real property and its environmental condition, the Debtors concluded that a sale of certain real property assets and related improvements, personal property, entitlements, permits, warranties, and books and records, as described in detail in the Agreement (collectively, the "Assets"), is in the best interests of the Debtors' stakeholders. The Debtors are in the process of completing the decommissioning of their manufacturing facilities and associated assets. Although the Debtors have sufficient funding to complete the decommissioning, the Debtors project they may exhaust their remaining liquidity sometime during July or August 2018 (absent any infusions of cash). The monetization of the Assets will generate cash needed to fund the estates through plan confirmation, to continue the environmental remediation at the plant site, and to fund distributions to creditors.

10.    Accordingly, on May 9, 2018, the Seller and the Purchaser entered into the Agreement. The Agreement contemplates the sale (the "Sale") of the Assets to the Purchaser and contains the following material terms:[3]

- **Assets.** The Assets include (a) the Pump House Property, COB Property and Parking Lot Property, together with all plants, shrubs and trees located thereon and all rights, ways and easements appurtenant thereto (collectively, the

---

[3] The following description of the Agreement is qualified in its entirety by the language of the Agreement. In the event there is any conflict between the description of the Agreement contained in this Motion and the provisions of the Agreement, the provisions of the Agreement shall govern and control.

"<u>Land</u>"); (b) all buildings, structures, driveways, parking areas, sidewalks and other improvements of any nature located on the Land and all fixtures attached or affixed to the Land or to any such buildings, structures or other improvements (collectively, the "<u>Improvements</u>"); (c) all goods, equipment, appliances, machinery, apparatus, fittings, furniture, furnishings and other tangible personal property owned by the Seller or jointly owned by Seller and Purchaser and located on the Land or within the Improvements, excluding computer equipment located in the COB Property (collectively, the "<u>Personalty</u>"); (d) all right, title, interest, powers, privileges, benefits and options of Seller in and to (i) any impact fee credits with, or impact fee payments to, any county or municipality in which the Land is located arising from any construction of improvements, or dedication or contribution of property, by Seller, or its predecessor in title or interest, related to the Land, (ii) any development rights or other similar rights attributable to the Land or the Improvements, and (iii) any utility capacity allocated to or attributable to the Land or the Improvements; (e) to the extent transferable without obtaining the consent of any counterparty, all permits, certificates of occupancy, dedications, approvals and authorizations held by Seller and affecting the ownership, operation, management and maintenance of the Land and the Improvements and all modifications, renewals and extensions thereof which are in full force and effect on and as of the Closing Date (collectively, the "<u>Permits</u>"); <u>provided</u>, <u>however</u>, any permits relating to environmental matters on the Land, including, without limitation, Seller's Permit No. HW-016 (ST & CA) (the "<u>EPD Permit</u>"), are excluded from the definition of "Permits" and will not be acquired by Purchaser; (f) to the extent assignable without obtaining the consent of any counterparty, all warranties, bonds and guaranties held by Seller and relating to the ownership, operation, management and maintenance of the Land, the Improvements or the Personalty (collectively, the "<u>Warranties</u>"); and (g) all books and records associated with the Property, excluding file cabinets located in the COB Property and the contents of such file cabinets.

- **Purchase Price.** $5,000,000.00 cash ($3,400,000 for Pump House Property, $1,400,000 for COB Property and $200,000 for Parking Lot Property).

- **Deposit**. $375,000.00 delivered to Fidelity National Title Insurance Company on the Effective Date.

- **Broker and Commission.** None.

- **Bidding Protection (Breakup Fee).** None.

- **Conditions Precedent**. The Purchaser's obligation to close the purchase of the Assets is subject to the conditions precedent that (among other things) (a) the Georgia Environmental Protection Division shall have issued a final and unappealable modification or amendment to the EPD Permit to remove each

>Parcel from the definition of a regulated facility for purposes of the Act and the EPD Permit, and (b) the Required Subdivision shall have occurred in accordance with Section 21 of the Agreement.

11. The terms of the Agreement were negotiated at arms-length between the parties to the Agreement.

## ARGUMENT

12. The Debtors have determined in their business judgment that a sale of the Assets pursuant to the Agreement is in the best interests of their stakeholders. The Debtors believe the Agreement provides the Debtors with the best opportunity to preserve and maximize the value of the Assets for the benefit of their estates. As such, the Debtors submit that approval of this Motion and the sale of the Assets is consistent with applicable law and should be granted.

### A. Section 363(b) Authorizes the Proposed Sale.

13. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, in applying this section, courts have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 145 (2d Cir. 1992) (holding that a court's authorization to sell assets should be based upon a good business reason); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that approval of a Section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith). The sale of the Assets is a sound exercise of the

Debtors' business judgment because it provides the Debtors with the best opportunity to preserve and maximize the value of the Assets for the benefit of their estates.

**B.    Sound Business Reasons Support a Sale.**

14.    The Agreement provides a greater net recovery for the Debtors' estates than could realistically be achieved by any other practically available alternative. Prior to the Petition Date, the Debtors did not receive any bids for all or any portion of the Assets and the Debtors do not have sufficient liquidity to market the Assets for a lengthy period of time. Moreover, given the location of the Assets, the environmental contamination at the Debtors' plant site, and the reality that the Assets are unlikely to be usable by, or saleable to, any third party that does not have existing business operations in the immediate vicinity of the Assets, the Purchaser is the logical buyer for the Assets. Only a company like the Purchaser, which has a plant directly adjacent to the Debtors' plant site and has a specific need for the Parking Lot Property, Pump House Property and COB Property, is likely to be interested in purchasing any of the Assets. The Debtors believe the purchase price for the Assets is reasonable, equals or exceeds the current fair market value of the Assets, and is the highest price reasonably attainable for the Assets (in their present condition).

15.    The Debtors' decision to enter into the Agreement and to sell the Assets to the Purchaser is a valid and sound exercise of the Debtors' business judgment. The Debtors have engaged in reasonable and appropriate marketing of the Assets prior to and since the Petition Date, and strongly believe that these efforts, in light of the environmental issues facing the Debtors, have resulted in the highest and best possible value for the Assets. The Agreement was negotiated and is presented in good faith after extensive arms-length discussions between the Purchaser and the Debtors. The Debtors have considered all of their options under the

circumstances, including their liquidity constraints, and have determined that the Sale will result in the greatest recovery that is reasonably possible for the Assets.

16. For all of the foregoing reasons, the relief requested in this Motion is a product of sound business judgment and is in the best interests of the Debtors, their creditors, employees, estates and other stakeholders, and should be granted.

**C.     Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

17. No creditor asserts a blanket lien on the Debtors' assets. To the extent any creditor holds or assets a lien, interest, encumbrance or claim on any Asset or portion of the Assets, the Debtors request that the sale and transfer of the Assets be approved free and clear of all claims, liens, interests or other encumbrances (other than Permitted Exceptions). Such relief is consistent with the provisions of Section 363(f) of the Bankruptcy Code.

18. Section 363(f) provides that a debtor-in-possession may sell property free and clear of any lien, claim or interest of another entity in such property if any of the following circumstances pertain:

> (1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

19. As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in Section 363(f) is sufficient to permit the sale of assets free and clear of

Liens. *See In re Elliott*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that Section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided that at least one of the subsections is met).

20. In this instance, the Debtors believe that any entity asserting a lien or security interest in any of the Assets has (or will) consent to the sale. Accordingly, the Assets may be sold free and clear of Liens pursuant to Section 363(f)(2) of the Bankruptcy Code.

21. Moreover, the Debtors can also satisfy Section 363(f)(5) of the Bankruptcy Code. The "cram down" provision of Section 1129(b) of the Bankruptcy Code sets forth a "legal or equitable proceeding" pursuant to which a secured creditor can be compelled to "accept a money satisfaction" on account of its security interest in satisfaction of Section 363(f)(5) of the Bankruptcy Code. *See, e.g. In re Grand Slam U.S.A. Inc.*, 178 B.R. 460, 462 (E.D. Mich. 1995) (holding that "cram down" provisions of Section 1129(b) satisfy "legal or equitable proceeding" requirement of Section 363(f)(5)); *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 508-09 (Bankr. N.D. Ala. 2002) (same); *In re Terrace Chalet Apartments Ltd.*, 159 B.R. 821, 829 (N.D. Ill. 1993) (same); *but see In re PW, LLC*, 391 B.R. 25, 46 (B.A.P. 9th Cir. 2008) (holding that "cram down" provision of Section 1129(b) did not satisfy "legal or equitable" proceeding requirement of Section 363(f)(5)). Under Section 1129(b) of the Bankruptcy Code, a secured creditor is generally entitled to either (a) retain its security interest in its collateral, (b) receive payment(s) on account of the value of its security interest (if any), or (c) have its security interest attach to the net proceeds of the sale of its collateral. *See* 11 U.S.C. §§ 1129(b)(2)(A)(i)-(ii); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) (holding that liens attach to sale proceeds in same order and priority as liens held against collateral sold by trustee under prior Bankruptcy Act). In these cases, the Debtors propose that any Liens on the Assets held by

creditors will attach to the net proceeds of the Sale, subject to any claims and defenses that the Debtors may possess with respect thereto.

22. It is also appropriate to sell the Assets free and clear of successor liability claims. Such limitations on successor liability ensure that the Purchaser is protected from any claims or lawsuits premised on the theory that the Purchaser is a successor in interest to the Debtors. Courts have consistently held that a buyer of a debtor's assets pursuant to a Section 363 sale takes free and clear from successor liability relating to the debtor's business. *See e.g., In re Trans World Airlines, Inc.,* 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585–86 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Dixie Pellets LLC*, 2009 WL 8189341 (Bankr. N.D. Ala. Sept. 13, 2009) (approving sale of substantially all of debtor's assets free and clear of all liens, including but not limited to "all rights or claims based on any theory or principle of successor liability"); *In re Ormet*, 2014 WL 3542133, at *3 (Bankr. D. Del. July 17, 2014) (permitting a sale free and clear of successor liability claims relating to an under-funded pension plan); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

23. The purpose of a Bankruptcy Court sale order authorizing the transfer of assets free and clear of all claims, liens and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Indeed, bankruptcy courts in Georgia frequently enter orders pursuant to Section 363 of the Bankruptcy Code containing provisions regarding successor liability similar to

those found in the Approval Order. *See*, *e.g.*, *In re Astroturf, LLC,* Case No. 16-41504, Docket No. 202, ¶¶ P, 16 (Bankr. N.D. Ga. Aug. 12, 2016) (Bonapfel, J.); *In re South. Reg'l Health Sys., Inc.*, Case No. 15-64266-wlh, Docket No. 373, ¶ 31 (Bankr. N.D. Ga. Oct. 27, 2015) (Hagenau, J.); *In re Cagle's, Inc.*, Case No. 11-80202, Docket No. 439, ¶ 33 (Bankr. N. D. Ga. May 11, 2012) (Bihary, J.); *In re Lake Burton Dev., LLC*, Case No. 09-22830, Docket No. 142, ¶¶ 31–32 (Bankr. N.D. Ga. Apr. 13, 2010) (Bonapfel, J.).

24.     Accordingly, the requirements of Section 363(f) of the Bankruptcy Code can be satisfied, and the sale of the Purchased Assets free and clear of all Liens is appropriate.

**D.     The Purchaser Should Be Afforded All Protections Under Bankruptcy Code Section 363(m) as a Good Faith Purchaser.**

25.     Section 363(m) of the Bankruptcy Code provides that "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . ." 11 U.S.C. § 363(m).

26.     The transaction reflected in the Agreement was negotiated by the parties, represented and independently advised by counsel, at arm's length and in good faith. The Purchaser is neither an "insider" nor an affiliate of the Debtors, and the Purchaser does not have any relationship to the Debtors that has not been fully disclosed to the Court. Accordingly, the Debtors request that the Purchaser be determined to have acted in good faith and be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code. *See, e.g., In re United Press Int'l, Inc.*, No. 91 B 13955 (FGC), 1992 U.S. Bankr. LEXIS 842, at *3 (Bankr. S.D.N.Y. May 18, 1992); *see also Miami Ctr. L.P. v. Bank of N.Y.*, 838 F.2d 1547, 1554 (11th Cir. Fla. 1988) ("The "good faith purchaser" is one who buys in good faith, that is, free of any fraud or misconduct and for value and without knowledge of any adverse claim.").

### E.     Deemed Consent.

27.     The Debtors request that: (a) each holder of a Lien on the Assets that does not object, or that withdraws its objection, to the sale of the Assets and this Motion be deemed to have consented to the sale of the Assets free and clear of all Liens (other than Permitted Exceptions); and (b) each governmental authority that has issued or granted a Permit and that does not object, or that withdraws its objection, to the sale of the Assets and this Motion be deemed to have consented to the transfer of such Permit to the Purchaser as of the Closing Date. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (Posner, J.) (holding that a licensee's failure to object to a sale constituted consent to the sale of intellectual property "free and clear" of the licensee's interests under Section 363 of the Bankruptcy Code); *In re Christ Hospital*, 502 B.R. 158, 174–75 (Bankr. D.N.J. 2013) (adopting the conclusion in *FutureSource* that failure to object to a section 363 sale constitutes consent); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) ("As the Township did not offer any objection, it may be deemed to have consented to the sale for purposes of section 363(f)(2)."); *In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993) (state's failure to object to transfer of liquor license in connection with a section 363 sale constituted consent to the transfer). Courts in Georgia have granted similar relief in connection with sales pursuant to Section 363 of the Bankruptcy Code. *See*, *e.g., In re South. Reg'l Health Sys., Inc.*, Case No. 15-64266-wlh, Docket No. 373, ¶¶ X, 14, 24 (Bankr. N.D. Ga. Oct. 27, 2015) (Hagenau, J.); *In re Cagle's, Inc.*, Case No. 11-80202, Docket No. 439, ¶¶ W, 16, 26 (Bankr. N.D. Ga. May 11, 2012) (Bihary, J.); *In re Lake Burton Dev., LLC*, Case No. 09-22830, Docket No. 142, ¶¶ T, 39 (Bankr. N.D. Ga. Apr. 13, 2010) (Bonapfel, J.); I*n re Astroturf, LLC*, Case No. 16-41504, Docket No. 202 (Bankr. N.D. Ga. Aug. 12, 2016) (Bonapfel, J.).

## NOTICE

28. A copy of this Motion (together with a notice of hearing setting forth the time and location of the hearing on this Motion and the deadline for filing objections to this Motion) has been provided to (a) parties on the Master Service List; (b) the Purchaser; (c) all entities known to the Debtors that assert a Lien in any of the Assets; and (d) all governmental authorities known to the Debtors that may have regulatory oversight over any of the Assets.

29. The Debtors respectfully submit that such notice is sufficient and proper under the circumstances, and that no other or further notice is required.

## CONCLUSION

WHEREFORE, based upon the foregoing, the Debtors respectfully request that the Court enter the Approval Order in the form attached hereto as Exhibit A: (a) approving the Agreement; (b) approving the sale of the Assets free and clear of all Liens; and (c) granting such other and further relief as the Court deems just and proper.

Dated:  May 9, 2018  
      Augusta, Georgia

Respectfully submitted,

KING & SPALDING LLP

/s/ *Paul Ferdinands*  
Paul Ferdinands  
Georgia Bar No. 258623  
pferdinands@kslaw.com  
Jonathan W. Jordan  
Georgia Bar No. 404874  
jjordan@kslaw.com  
Sarah L. Primrose  
Georgia Bar No. 532582  
sprimrose@kslaw.com  
1180 Peachtree Street  
Atlanta, Georgia 30309-3521  
Telephone: (404) 572-4600  
Facsimile: (404) 572-5100

and

KLOSINSKI OVERSTREET, LLP

James C. Overstreet Jr.  
Georgia Bar No. 556005  
jco@klosinski.com  
1229 Augusta West Parkway  
Augusta, GA 30909  
Telephone:  (706) 863-2255  
Facsimile:  (706) 863-5885

COUNSEL FOR THE  
DEBTORS-IN-POSSESSION

DMSLIBRARY01\32173988.v2