**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **FIBRANT, LLC, *et al.*,[1]** | ) | **Case No. 18-10274 (SDB)** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |

**NOTICE OF FILING OF (I) AMENDMENTS TO PLAN;
AND (II) AMENDMENTS TO CONFIRMATION ORDER**

PLEASE TAKE NOTICE that Fibrant, LLC and its affiliated debtors-in-possession (collectively, "Debtors") filed on May 17, 2019 the then-current draft of the Debtors' *Second Amended and Restated Plan of Liquidation for Fibrant LLC, et al.* (the "Draft Plan"), and a draft Confirmation Order (the "Draft Order") [Docket No. 833]. Attached as Exhibit A is the final version of the *Second Amended and Restated Plan of Liquidation For Fibrant, LLC, et al.*, which is marked to show changes from the Draft Plan. The Debtors have also attached a proposed Confirmation Order as Exhibit B, which is marked to show changes from the Draft Order.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fibrant, LLC (6694); Evergreen Nylon Recycling, LLC (7625); Fibrant South Center, LLC (8270); and Georgia Monomers Company, LLC (0042).

Dated:  May 23, 2019                  Respectfully submitted,
    Augusta, Georgia

                                         KING & SPALDING LLP

                                         */s/ Paul K. Ferdinands*
                                         Paul K. Ferdinands
                                         Georgia Bar No. 258623
                                         pferdinands@kslaw.com
                                         Jonathan W. Jordan
                                         Georgia Bar No. 404874
                                         jjordan@kslaw.com
                                         Sarah L. Primrose
                                         Georgia Bar No. 532582
                                         sprimrose@kslaw.com
                                         1180 Peachtree Street
                                         Atlanta, Georgia 30309-3521
                                         Telephone: (404) 572-4600
                                         Facsimile: (404) 572-5100

                                         and

                                         KLOSINSKI OVERSTREET, LLP

                                         James C. Overstreet Jr.
                                         Georgia Bar No. 556005
                                         jco@klosinski.com
                                         1229 Augusta West Parkway
                                         Augusta, GA 30909
                                         Telephone:  (706) 863-2255
                                         Facsimile:  (706) 863-5885

                                         COUNSEL FOR THE
                                         DEBTORS-IN-POSSESSION

Exhibit "A"

K&S DRAFT

5/17/19

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIBRANT, LLC, | ) | Case No. 18-10274 (SDB) |
| EVERGREEN NYLON RECYCLING, LLC, | ) | |
| FIBRANT SOUTH CENTER, LLC, and | ) | |
| GEORGIA MONOMERS COMPANY, LLC, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | )_ | |

---

## SECOND AMENDED AND RESTATED PLAN OF
## LIQUIDATION FOR FIBRANT, LLC, *et al.*

### Dated as of the ——22nd day of May, 2019

---

### Filed by:

**Fibrant, LLC, Evergreen Nylon Recycling, LLC, Fibrant South Center, LLC, and Georgia Monomers Company, LLC**
**Debtors and Debtors In Possession**

**Attorneys for the Debtors and Debtors In Possession:**

Paul K. Ferdinands
Jonathan W. Jordan
Ann R. Carroll
Sarah L. Primrose
King & Spalding LLP
1180 Peachtree Street
Atlanta, Georgia 30309
(404) 572-4600

James C. Overstreet, Jr.
Klosinski Overstreet
1229 Augusta West Parkway
Augusta, Georgia  30909
(706) 863-2255

## TABLE OF CONTENTS

**ARTICLE I DEFINITIONS AND GENERAL PROVISIONS** ............................................... **1**
    1.1    *DEFINITIONS.* ............................................................................................. 1
    1.2    *TIME.* ...................................................................................................... 15

**ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; IMPAIRMENT** ..... **15**
    2.1    *SUMMARY.* ............................................................................................. 15
    2.2    *DEEMED ACCEPTANCE OF PLAN.* .............................................................. 15
    2.3    *CIH CLAIMS.* ......................................................................................... 15
    2.4    *CONFIRMATION PURSUANT TO SECTION 1129(B) OF THE BANKRUPTCY CODE.* 16

**ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS** .............................. **16**
    3.1    *CLASS 1—MISCELLANEOUS SECURED CLAIMS.* ......................................... 16
    3.2    *CLASS 2—PRIORITY CLAIMS.* .................................................................. 17
    3.3    *CLASS 3—ENVIRONMENTAL REMEDIATION CLAIMS.* ................................ 17
    3.4    *CLASS 4—GENERAL UNSECURED CLAIMS.* ............................................... 18
    3.5    *CLASS 5 – EQUITY INTERESTS.* ............................................................... 19
    3.6    *NO WAIVER OF DEFENSES.* ...................................................................... 19

**ARTICLE IV TREATMENT OF UNCLASSIFIED CLAIMS** .......................................... **19**
    4.1    *SUMMARY.* ............................................................................................. 19
    4.2    *ADMINISTRATIVE EXPENSE CLAIMS.* ....................................................... 19
    4.3    *TAX CLAIMS.* ......................................................................................... 20

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ..... **20**
    5.1    *REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES.* 20
    5.2    *CURE OF DEFAULTS; ASSIGNMENT OF EXECUTORY CONTRACTS AND*
          *UNEXPIRED LEASES* .............................................................................. 20
    5.3    *CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED*
          *LEASES.* ................................................................................................. 22
    5.4    *SURVIVAL OF CERTAIN INDEMNIFICATION OBLIGATIONS.* .......................... 22
    5.5    *CERTAIN APPLICABLE INSURANCE MATTERS.* ........................................... 22

**ARTICLE VI MEANS FOR IMPLEMENTATION OF PLAN** .......................................... **23**
    6.1    *SUBSTANTIVE CONSOLIDATION.* ............................................................... 23
    6.2    *DISSOLUTION OF FIBRANT.* ..................................................................... 23
    6.3    *VESTING OF THE DEBTORS' ASSETS.* ........................................................ 23
    6.4    *OPERATION OF THE DEBTORS.* ................................................................ 24
    6.5    *BILLING AND COLLECTION OF ACCOUNTS RECEIVABLE.* ............................. 25
    6.6    *MAINTENANCE OF BANK ACCOUNTS AND DISTRIBUTION OF LIQUIDATION*
          *PROCEEDS.* ............................................................................................ 25
    6.7    *CANCELLATION OF EXISTING SECURITIES OF DEBTORS AND AGREEMENTS.* ... 26
    6.8    *BOOKS AND RECORDS.* ........................................................................... 26
    6.9    *CORPORATE ACTION.* ............................................................................. 26
    6.10   *PRESERVATION OF CAUSES OF ACTION.* ................................................... 26
    6.11   *EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS.* ............................. 27

DMSLIBRARY01\34076864.v4

| | | |
|---|---|---|
| 6.12 | *ELT Transaction and ChemicaInvest Parties' Payments.* | 27 |
| 6.13 | *Fibrant South Center Proceeds.* | 27 |
| 6.14 | *Establishment of the Environmental Remediation Trust.* | 28 |
| 6.15 | *Transfer of the Environmental Remediation Property.* | 28 |
| 6.16 | *Appointment of the Environmental Remediation Trustee.* | 28 |
| 6.17 | *Transfer of Remaining Assets.* | 28 |
| 6.18 | *Exemption From Certain Transfer Taxes and Recording Fees.* | 29 |
| 6.19 | *Further Authorization.* | 29 |
| 6.20 | *Establishment of the Litigation Trust.* | 29 |
| 6.21 | *Dissolution.* | 29 |

**ARTICLE VII Provisions Regarding Corporate Governance of Debtors** — **29**

| | | |
|---|---|---|
| 7.1 | *Amendment of Organizational Documents.* | 29 |
| 7.2 | *Managers and Officers of Debtors.* | 29 |

**ARTICLE VIII Distributions** — **30**

| | | |
|---|---|---|
| 8.1 | *Disbursing Agents.* | 30 |
| 8.2 | *Distributions of Cash.* | 30 |
| 8.3 | *No Interest on Claims.* | 30 |
| 8.4 | *Delivery of Distributions.* | 30 |
| 8.5 | *Distributions to Holders as of the Record Date.* | 30 |
| 8.6 | *De Minimis Distributions.* | 31 |
| 8.7 | *Fractional Dollars.* | 31 |
| 8.8 | *Withholding Taxes.* | 31 |
| 8.9 | *Tax Reporting.* | 31 |
| 8.10 | *Undistributed Funds.* | 31 |

**ARTICLE IX Procedures for Treating and Resolving Disputed Claims** — **31**

| | | |
|---|---|---|
| 9.1 | *Objections to Claims.* | 31 |
| 9.2 | *No Distributions Pending Allowance.* | 32 |
| 9.3 | *Estimation of Claims.* | 32 |
| 9.4 | *Resolution of Claims Objections.* | 32 |
| 9.5 | *Distributions After Allowance.* | 32 |
| 9.6 | *Distributions On Insured Claims.* | 33 |

**ARTICLE X Effect of Plan on Claims and Equity Interests** — **33**

| | | |
|---|---|---|
| 10.1 | *Revesting of Assets.* | 33 |
| 10.2 | *Treatment of Claims and Equity Interests.* | 34 |
| 10.3 | *Release by Debtors of Certain Parties.* | 34 |
| 10.4 | *Third Party Releases.* | 34 |
| 10.5 | *ChemicaInvest Releases.* | 35 |
| 10.6 | *Setoffs.* | 36 |
| 10.7 | ***Exculpation and Limitation of Liability.*** | 36 |
| 10.8 | ***Injunction.*** | 36 |
| 10.9 | *Waiver of Statutory Limitation on Releases.* | 37 |
| 10.10 | *Waiver of Certain Avoidance Actions.* | 37 |
| 10.11 | *Vesting of Certain Causes of Action.* | 37 |

DMSLIBRARY01\34076864.v4

| | | |
|---|---|---:|
| 10.12 | PRESERVATION OF ALL CAUSES OF ACTION NOT EXPRESSLY SETTLED OR RELEASED. | 38 |
| 10.13 | EFFECT OF CONFIRMATION. | 38 |
| 10.14 | NO DISCHARGE. | 39 |

**ARTICLE XI CONDITIONS PRECEDENT** — **39**

| | | |
|---|---|---:|
| 11.1 | CONDITIONS TO CONFIRMATION. | 39 |
| 11.2 | CONDITIONS TO THE EFFECTIVE DATE. | 39 |
| 11.3 | WAIVER OF CONDITIONS TO CONFIRMATION OR EFFECTIVE DATE. | 40 |

**ARTICLE XII RETENTION AND SCOPE OF JURISDICTION OF THE BANKRUPTCY COURT** — **40**

| | | |
|---|---|---:|
| 12.1 | RETENTION OF JURISDICTION. | 40 |
| 12.2 | ALTERNATIVE JURISDICTION. | 41 |
| 12.3 | FINAL DECREE. | 42 |

**ARTICLE XIII THE CREDITOR TRUSTEE** — **42**

| | | |
|---|---|---:|
| 13.1 | APPOINTMENT. | 42 |
| 13.2 | RETENTION OF PROFESSIONALS. | 42 |
| 13.3 | LIMITED LIABILITY. | 42 |
| 13.4 | AUTHORITY. | 43 |
| 13.5 | REPORTING. | 43 |
| 13.6 | COMPENSATION AND REIMBURSEMENT. | 43 |
| 13.7 | REPLACEMENT OF CREDITOR TRUSTEE. | 43 |
| 13.8 | DISCHARGE OF CREDITOR TRUSTEE. | 43 |

**ARTICLE XIV MISCELLANEOUS PROVISIONS** — **44**

| | | |
|---|---|---:|
| 14.1 | MODIFICATION OF THIS PLAN. | 44 |
| 14.2 | ALLOCATION OF PLAN DISTRIBUTIONS BETWEEN PRINCIPAL AND INTEREST. | 44 |
| 14.3 | CREDITORS' COMMITTEE. | 44 |
| 14.4 | APPLICABLE LAW. | 44 |
| 14.5 | PREPARATION OF ESTATES' RETURNS AND RESOLUTION OF TAX CLAIMS. | 44 |
| 14.6 | HEADINGS. | 44 |
| 14.7 | REVOCATION OF PLAN. | 45 |
| 14.8 | CONFIRMATION OF PLANS FOR SEPARATE DEBTORS. | 45 |
| 14.9 | NO ADMISSIONS; OBJECTION TO CLAIMS. | 45 |
| 14.10 | NO BAR TO SUITS. | 45 |
| 14.11 | EXHIBITS/SCHEDULES. | 45 |
| 14.12 | CONFLICTS. | 45 |
| 14.13 | NOTICES. | 45 |
| 14.14 | SECTION 1125 OF THE BANKRUPTCY CODE. | 47 |
| 14.15 | SEVERABILITY. | 47 |
| 14.16 | DESIGNATED NOTICE. | 47 |
| 14.17 | EMPLOYEE RECORDS. | 47 |

DMSLIBRARY01\34076864.v4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIBRANT, LLC, *et al.*,[1] | ) | Case No. 18-10274 (SDB) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## SECOND AMENDED AND RESTATED PLAN OF LIQUIDATION FOR FIBRANT, LLC; EVERGREEN NYLON RECYCLING, LLC; FIBRANT SOUTH CENTER, LLC; AND GEORGIA MONOMERS COMPANY, LLC

## INTRODUCTION

Fibrant, LLC ("Fibrant"), Evergreen Nylon Recycling, LLC ("Evergreen"), Fibrant South Center, LLC ("South Center"), and Georgia Monomers Company, LLC ("Monomers") (each a "Debtor" and collectively, the "Debtors"), debtors and debtors in possession in the above-captioned cases, propose this Plan for the resolution of the outstanding Claims against and Equity Interests in the Debtors. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Section 1.1 of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, terms shall include the plural as well as the singular in number, and the masculine shall include the feminine and the feminine shall include the masculine in gender.

1.1     *Definitions*. The following terms shall have the following meanings when used in this Plan:

1.1.1     "Administrative Expense Claim" means a Claim (other than a DIP Lender Claim) for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including the actual, necessary costs and expenses, incurred on or after the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fibrant, LLC (6694); Evergreen Nylon Recycling, LLC (7625); Fibrant South Center, LLC (8270); and Georgia Monomers Company, LLC (0042).

Filing Date, of preserving the Estates and operating the business of the Debtors, including wages, salaries or commissions for services rendered after the commencement of the Bankruptcy Cases, Professional Compensation, and all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code; provided, however, that the term Administrative Expense Claim does not include any Assumed Obligations (as defined in the ELT Property Transfer Agreement).

1.1.2    "Affiliates" shall have the meaning ascribed to such term by section 101(2) of the Bankruptcy Code.

1.1.3    "Allowed" shall mean when used in reference to a Claim, such Claim or any portion thereof that (i) has been allowed by a Final Order of the Bankruptcy Court; (ii) is listed in any of the Debtors' respective Schedules and for which no contrary proof of claim has been filed, other than a Claim that is listed in any of the Debtors' Schedules at zero or as disputed, contingent, or unliquidated; (iii) is evidenced by a proof of claim that has been timely filed with the Bankruptcy Court or the Claims Agent on or before any applicable claim bar date or deemed to be timely filed pursuant to any Final Order of the Bankruptcy Court or under applicable law, and as to which (A) no objection to its allowance has been filed on or before the Claims Objection Deadline, or (B) any objection to its allowance has been settled or withdrawn, or has been overruled by a Final Order; or (iv) is listed in Schedule 1 to the Plan as an Allowed Claim (regardless of whether such Claim has been listed by the Debtors in their Schedules and regardless of whether a proof of claim has been filed in respect thereof); provided, however, that Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims for the purposes of distribution under this Plan.

1.1.4    "Applicable Causes of Action" means the Applicable ELT Insurance Causes of Action and the Causes of Action.

1.1.5    "Applicable CIH Insurance Causes of Action" means any and all claims, actions, causes of action, suits, choses in action and rights to payment of the Debtors and their Estates arising with respect to the Applicable Insurance for losses or liabilities other than those relating to environmental releases or contamination ELT assumed with respect to the Environmental Remediation Property pursuant to the ELT Transaction.

1.1.6    "Applicable ELT Insurance Causes of Action" means any and all claims, actions, causes of action, suits, choses in action and rights to payment of the Debtors and their Estates arising with respect to the Applicable Insurance solely for losses or liabilities relating to environmental releases or contamination ELT assumed with respect to the Environmental Remediation Property pursuant to the ELT Transaction.

1.1.7    "Applicable Insurance" shall mean all primary and excess liability insurance policies, including any environmental liability insurance, that the Debtors have asserted or could assert provides coverage to the Debtors (including any of their predecessors in interest) for losses or liabilities relating to environmental releases or contamination with respect to the Environmental Remediation Property.  TheSubject to the provisions of Paragraphs 13 and

- 2-

14 of the Confirmation Order, the Applicable Insurance shall include the policies listed on Schedule 4.

1.1.8    "Assets" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of each of the Estates of the Debtors (including all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Causes of Action), wherever situated as such property exists on the Effective Date or thereafter.

1.1.9    "Avoidance Action" means any claim or cause of action of an Estate arising out of or maintainable pursuant to sections 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date.

1.1.10   "Ballot" means each of the ballot forms that were distributed with the Disclosure Statement to Holders of Claims included in Classes that are Impaired under this Plan and are entitled to vote under Article III of this Plan to accept or reject this Plan.

1.1.11   "Bankruptcy Case" means, with respect to each Debtor, the chapter 11 case initiated by such Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  The Bankruptcy Cases are being jointly administered in the Bankruptcy Court as Bankruptcy Case No. 18-10274 (SDB) pursuant to the *Order Directing Joint Administration of Chapter 11 Cases* entered by the Bankruptcy Court on March 7, 2018.

1.1.12   "Bankruptcy Code" means title 11 of the United States Code.

1.1.13   "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Georgia, Augusta Division or, in the event such court ceases to exercise jurisdiction over any Bankruptcy Case, such court or adjunct thereof that exercises jurisdiction over such Bankruptcy Case in lieu of the United States Bankruptcy Court for the Southern District of Georgia, Augusta Division.

1.1.14   "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as applicable to the Bankruptcy Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applied to the Bankruptcy Cases or proceedings therein, as the case may be.

1.1.15   "Business Day" means any day on which commercial banks are required to be open for business in Augusta, Georgia.

1.1.16   "Cash" means legal tender of the United States of America and equivalents thereof.

1.1.17   "Causes of Action" means all Avoidance Actions of the Debtors and their Estates and any and all claims, actions, causes of action, choses in action, debts, dues, sums of money, reckonings, bonds, bills, specialties, covenants, contracts, controversies, variances,

- 3-

trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including all claims and any avoidance, preference, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code) suits, accounts, agreements, promises, rights to payment and claims of the Debtors and their Estates, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly, indirectly or derivatively, in law, equity, or otherwise; provided, however, the term "Causes of Action" shall not include (i) any Waived Avoidance Actions, (ii) any claims, actions, causes of action, suits, accounts, agreements, promises, rights to payment or claims released pursuant to Article X of this Plan, (iii) any actions, causes of action, suits, choses in action, rights to payment or claims transferred and assigned to ELT pursuant to the ELT Property Transfer Agreement, (iv) the DSM SPA Causes of Action, (v) the Applicable CIH Insurance Causes of Action, or (vi) the Applicable ELT Insurance Causes of Action.

1.1.18    "Certificate" means any instrument, including any note, bond, indenture, or other document, evidencing or creating any indebtedness or obligation of the Debtors or otherwise evidencing a Claim.

1.1.19    "ChemicaInvest Affiliated Parties" means each direct and indirect equity holder of the ChemicaInvest Parties (including ChemicaInvest Netherlands, B.V., ChemicaInvest Netherlands II B.V., ChemInvest Holdings S.à.r.l., ChemInvest Holdings II S.à.r.l., Top Hat Holdings Limited and Top Hat Holdings II Limited, but excluding Newco C B.V. and any direct or indirect equity holders thereof), and any investment funds or vehicles directly or indirectly owning equity in such equity holder companies and any investment advisers to and/or partners of such funds, vehicles or equity holder companies, together with their respective Affiliates, subsidiaries, and each of the foregoing's respective officers, directors, managers, members, equity holders, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, such term shall not include any of the DSM Entities.

1.1.20    "ChemicaInvest Parties" means CIH, CAP I B.V., CAP II B.V., Fibrant Holding B.V., and Augusta Holdco, Inc.

1.1.21    "CIH" means ChemicaInvest Holding, B.V.

1.1.22    "CIH Causes of Action" means (i) all claims, actions, causes of action, suits, choses in action and rights to payment that could be asserted by CIH against any DSM Entity relating to or arising out of environmental contamination at the Debtors' owned real property and arising under the DSM SPA, and (ii) the Applicable CIH Insurance Causes of Action: provided, however, the CIH Causes of Action shall not include any claims, actions, causes of action, suits, choses in action or rights to payment arising from (i) the Settlement Payments, (ii) contributions or payments by any ChemicaInvest Party to the Debtors prior to the Filing Date, including under (a) that certain Escrow Agreement, dated July 6, 2016, by and among Fibrant, CIH and Wells Fargo Bank, N.A., or (b) that certain Capital Contribution Agreement, dated May 23, 2016, between Augusta Holdco, Inc. and Fibrant; provided, further, the CIH Causes of Action shall not include any claims, actions, causes of action, suits, choses in

- 4-

action or rights to payment arising under the DSM SPA that are unrelated to environmental contamination at the Debtors' owned real property.

      1.1.23    "CIH Claims" means any and all Claims that ChemicaInvest Parties may have against the Debtors.

      1.1.24    "CIH Released Parties" means collectively: (a) each of the Debtors; (b) each of the Releasing Parties, (c) the Committee and each of its members, and (d) each Debtor's, the Committee's and each Releasing Party's officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, such term shall not include any of the DSM Entities or issuers of the Applicable Insurance.

      1.1.25    "Claim" means a claim against one of the Debtors (or any combination of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

      1.1.26    "Claims Agent" means Kurtzman Carson Consultants LLC.

      1.1.27    "Claims Litigation" means any and all litigation or proceedings arising out of objections to Claims asserted against the Estates, motions to estimate Claims asserted against the Estates or affirmative counterclaims or requests for setoff or recoupment that are raised with regard to Claims asserted against the Estates.

      1.1.28    "Claims Objection Deadline" means the latest of (i) ninety (90) days after the Effective Date, (ii) the first Business Day that is at least ninety (90) days after a specific proof of claim was filed, or (iii) such other time as may be ordered by the Bankruptcy Court after Designated Notice.

      1.1.29    "Classes" means a category of Claims or Equity Interests described in Article III of this Plan.

      1.1.30    "Committee" means the Official Committee of Unsecured Creditors appointed in the Debtors' Bankruptcy Cases pursuant to section 1102(a) of the Bankruptcy Code.

      1.1.31    "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

      1.1.32    "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

      1.1.33    "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

      1.1.34    "Consummation Date" means the date on which the Liquidating Agent and the Creditor Trustee (solely with respect to GUC Funds) make the Final Distribution of the GUC Funds, Liquidation Proceeds and Retained Proceeds in accordance with this Plan.

DMSLIBRARY01\34076864.v4

1.1.35    "Creditor Released Parties" means, collectively: (a) each of the ChemicaInvest Parties, and (b) each of the ChemicaInvest Affiliated Parties.

1.1.36    "Creditor Trust" means the trust established by the Creditor Trust Agreement for the purposes of facilitating the distribution of GUC Funds to Holders of Allowed Class 4 Claims and related matters.

1.1.37    "Creditor Trust Agreement" means the Creditor Trust Agreement by and among the Debtors, the ChemicaInvest Parties,  the Committee and the Creditor Trustee, establishing the Creditor Trust in conformity with the provisions of this Plan.  The Creditor Trust Agreement will be entered into on (or as of) the Effective Date.

1.1.38    "Creditor Trust Reserve" means a reserve in the amount of $100,000, which shall be remitted to the Creditor Trust and used to fund the costs associated with the Creditor Trustee's consummation of its rights and obligations under the Plan and Creditor Trust Agreement, including funding the out-of-pocket expenses of the Creditor Trustee and the fees and expenses of the Creditor Trustee's professionals.  To the extent the Creditor Trust Reserve is depleted, it shall be replenished in the Creditor Trustee's sole discretion out of the GUC Funds; provided, however, for the avoidance of doubt, that any such replenishment shall not reduce the amount of GUC Funds for the purposes of determining any amounts of Net Litigation Proceeds to be delivered to the Creditor Trust (including the maximum amount of Net Litigation Proceeds deliverable to the Creditor Trust).  For the avoidance of doubt, the Creditor Trustee, as trustee of the Creditor Trust, has the sole and exclusive right to access, utilize, and/or make Distributions from the Creditor Trust Reserve.

1.1.39    "Creditor Trustee" means GlassRatner Advisory & Capital Group, LLC by and through Joseph Pegnia, appointed, effective as of the Effective Date, as trustee of the Creditor Trust for the purposes of representing the interests of Holders of Allowed Class 4 General Unsecured Claims and making Distributions to Allowed Class 4 General Unsecured Claims under the Plan and Creditor Trust Agreement.  For the avoidance of doubt, all funds transferred to the Creditor Trustee for the purposes of making distributions to Holders of Allowed Class 4 Claims pursuant to the Plan are transferred to the Creditor Trustee solely in its capacity as trustee of the Creditor Trust and shall be construed as transfers to the Creditor Trust accordingly.

1.1.40    "Debtor" or "Debtors" means, individually, Fibrant, Evergreen, South Center, and Monomers, each of which is a Debtor in its Bankruptcy Case.

1.1.41    "Debtor Released Parties" means, collectively: (a) each of the ChemicaInvest Parties, and (b) each of the ChemicaInvest Affiliated Parties.

1.1.42    "Designated Notice" means notice and an opportunity for a hearing as defined in section 102(1) of the Bankruptcy Code, with notice limited to the Debtors, the Liquidating Agent, the Creditor Trustee, the United States Trustee, and other parties in interest who, after entry of the Confirmation Order, file a request for such notice with the Clerk of the Bankruptcy Court and serve a copy of same on counsel for the Debtors.  Until and including thirty (30) days after the Effective Date, Designated Notice means notice pursuant to the *Order*

DMSLIBRARY01\34076864.v4

*Establishing Notice and Administrative Procedures* entered by the Bankruptcy Court on March 7, 2018, in the Bankruptcy Cases.

1.1.43  "DIP Credit Facility" means that certain Senior Secured Debtor-In-Possession Loan Agreement, as amended from time to time, by and between the Debtors and the DIP Lender, as approved by the DIP Order.

1.1.44  "DIP Lender" means CAP II B.V.

1.1.45  "DIP Lender Claims" means any Claims of the DIP Lender arising under the DIP Credit Facility or the DIP Order.

1.1.46  "DIP Order" means that certain Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Superpriority Claims, and (IV) Modifying the Automatic Stay, entered by the Bankruptcy Court on November 14, 2018 [Docket No. 456].

1.1.47  "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is listed in any of the Debtors' respective Schedules at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court or the Claims Agent pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court, (iii) is not listed in any of the Debtors' respective Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court or the Claims Agent pursuant to the Bankruptcy Code or any Final Order of the Bankruptcy Court, or (iv) except as otherwise agreed by the Creditor Trustee and the Holder of such Claim or as otherwise ordered by the Bankruptcy Court, is a General Unsecured Claim that is not listed on Schedule 1 to the Plan.

1.1.48  "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time with the prior written consent of the ChemicaInvest Parties.

1.1.49  "Disclosure Statement Order" means the Order of the Bankruptcy Court approving the Disclosure Statement as entered on the docket of the Bankruptcy Cases, as such Order may be amended, supplemented, or modified from time to time with the prior written consent of the ChemicaInvest Parties.

1.1.50  "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court. Disputed Claims shall also include any Claim held by a creditor against which the Debtors or the Liquidating Agent has asserted a claim that has the effect, under section 502(d) of the Bankruptcy Code, of precluding a Distribution with respect to such Claim; provided, however,

DMSLIBRARY01\34076864.v4

the Debtors and the Liquidating Agent shall not assert any claims that constitute Waived Avoidance Actions. Furthermore, Disputed Claims shall also include any Claims that are listed as Disputed Claims on <u>Schedule 1</u> to the Plan.

1.1.51    "Distribution" means any distribution of Cash by (or on behalf of) the Debtors to a Holder of an Allowed Claim made in accordance with the Plan.

1.1.52    "Distribution Date" means (i) the Initial Distribution Date and the date of the first Distribution made by the Creditor Trustee pursuant to section 3.4.2 of this Plan, and (ii) the first Business Day after the end of the months of March, June, September and December, commencing with the first such date to occur more than ninety (90) days after the Initial Distribution Date and continuing until the Consummation Date; <u>provided</u>, <u>however</u>, with respect to Distributions made by the Liquidating Agent, that a Distribution Date (other than the Initial Distribution Date and Consummation Date) shall not occur in the discretion of the Liquidating Agent if the aggregate value of the consideration to be distributed on account of all Allowed Claims on such Distribution Date is less than one million and 00/100 dollars ($1,000,000.00), in which case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

1.1.53    "District Court" means the United States District Court for the Southern District of Georgia, Augusta Division.

1.1.54    "DSM" shall mean Koninklijke DSM, N.V.

1.1.55    "DSM Entities" shall mean (a) DSM, (b) all of DSM's Affiliates and subsidiaries (other than any ChemicaInvest Parties), and (c) all officers, directors, managers, members, equity holders, employees, agents, financial advisors, attorneys, accountants, consultants, representatives, and other professionals of DSM or of any such Affiliate or subsidiary (other than any ChemicaInvest Parties).

1.1.56    "DSM SPA" shall mean that certain Agreement for the Sale and Purchase of all Issued and Outstanding Shares in DSM Fibre Intermediates International B.V., DSM Composite Resins Holding International B.V. and DSM Fibre Intermediates China B.V., dated July 30, 2015, by and between CIH and DSM (as amended to date).

1.1.57    "DSM SPA Causes of Action" means all claims, actions, causes of action, suits, choses in action and rights to payment that could be asserted by any one or more of the Debtors or their Estates against any DSM Entity, but only to the extent relating to or arising out of environmental contamination at the Debtors' owned real property or arising under the DSM SPA.

1.1.58    "Effective Date" means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which this Plan shall take effect, which date shall be not more than ten (10) Business Days after the date on which the conditions to the Effective Date provided for in this Plan have been satisfied or waived by the Debtors and the ChemicaInvest Parties.

1.1.59    "ELT" means Environmental Liability Transfer, Inc. and its permitted assignee under the ELT Property Transfer Agreement.

1.1.60    "ELT Property Transfer Agreement" means the Property Transfer Agreement, by and among the Debtors, the ChemicaInvest Parties and ELT, pursuant to which ELT will acquire the Environmental Remediation Property and will assume responsibility for the environmental remediation of the Facility. A copy of the executed ELT Property Transfer Agreement is attached to this Plan as Exhibit A.

1.1.61    "ELT Transaction" means the transactions contemplated by the ELT Property Transfer Agreement and the Environmental Remediation Trust Agreement.  The ELT Transaction shall be consummated pursuant to Sections 105, 363, 365 and 1123(a)(5) of the Bankruptcy Code.

1.1.62    "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.63    "Environmental Remediation Claims" means any and all Claims asserted, or that could be asserted, against any one or more of the Debtors by the EPA or the EPD pursuant to federal law, state law, the EPD Permit, or any other basis.

1.1.64    "Environmental Remediation Property" means the Property (as such term is defined in the ELT Property Transfer Agreement) of the Debtors to be transferred to ELT pursuant to the ELT Property Transfer Agreement.

1.1.65    "Environmental Remediation Trust" means the Fibrant Environmental Remediation Trust, established by the Environmental Remediation Trust Agreement and described in Article VI of the Plan.

1.1.66    "Environmental Remediation Trust Agreement" means the Environmental Remediation Trust Agreement by and among the Debtors, the ChemicaInvest Parties, ELT (or ELT's assignee pursuant to Section 15 of the ELT Property Transfer Agreement) and Delaware Trust Company, solely in its capacity as the Environmental Remediation Trustee, establishing the Environmental Remediation Trust in conformity with the provisions of the Plan and the ELT Property Transfer Agreement.   The form of the Environmental Remediation Trust Agreement is attached to this Plan as Exhibit B and will be entered into on (or as of) the Effective Date.

1.1.67    "Environmental Remediation Trust Assets" means the Remediation Payment to be made by the ChemicaInvest Parties to the Environmental Remediation Trust as provided in Sections 6.15 and 10.10.2 of this Plan and such other assets acquired, earned or held by the Environmental Remediation Trust from time to time pursuant to the Environmental Remediation Trust Agreement.

1.1.68    "Environmental Remediation Trustee" means Delaware Trust Company, which has been appointed to administer the Environmental Remediation Trust in accordance with the terms of the Environmental Remediation Trust Agreement.

- 9-

1.1.69    "EPA" means the United States Environmental Protection Agency.

1.1.70    "EPD" means the Georgia Department of Natural Resources, Environmental Protection Division.

1.1.71    "EPD Permit" means Hazardous Waste Permit No. HW-016 (ST & CA) issued to Fibrant by the EPD.

1.1.72    "Equity Interest" means any equity interest in a Debtor that existed immediately prior to the Filing Date.

1.1.73    "Estate" means, with regard to each Debtor, the estate that was created by the commencement by a Debtor of a Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such Estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case.

1.1.74    "Estate Cash" means all Cash held by the Estates (whether existing as of the Effective Date or later recovered, received, or otherwise obtained), less the payment, in full, of all Allowed Claims in Class 1 and Class 2, all Allowed Administrative Expense Claims and Allowed Tax Claims, less and except an appropriate amount of Retained Proceeds.

1.1.75    "Estate Payment" means a Cash payment in an amount equal to $2,500,000.00 to be made by the ChemicaInvest Parties on the Effective Date to the Creditor Trust for the benefit of Holders of Allowed Class 4 General Unsecured Claims, with such payment to be used to fund Distributions to Holders of Allowed General Unsecured Claims in Class 4 and the fees and expenses incurred by the Creditor Trustee pursuant to Article XIII of this Plan; provided, however, if the sum of the Estate Cash and the Estate Payment exceed $6 million as of the Effective Date, then the Estate Payment shall be reduced by an amount equal to such excess.

1.1.76    "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which any of the Debtors is a party. Notwithstanding any other provision of the Plan, the Applicable Insurance shall not be treated as (or deemed to be) Executory Contracts or Unexpired Leases for purposes of the Plan.

1.1.77    "Fibrant South Center Proceeds" means any Cash and any non-cash proceeds received by South Center from the sale of the South Center Assets, less the payment of all fees, expenses and costs incurred by the Debtors in connection with the sale of the South Center Assets.

1.1.78    "Filing Date" means February 23, 2018.

1.1.79    "Final Distribution" means the final Distribution by the Liquidating Agent or the Creditor Trustee to the holders of Allowed Claims in accordance with this Plan.

-10-

1.1.80    "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court of competent jurisdiction as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal, motion for reconsideration, *vacatur* or rehearing, or request for a stay has been filed timely.  In the case of an order of the Bankruptcy Court, the time for appeal, motion for reconsideration, *vacatur* or rehearing, or request for a stay for purposes of this definition, shall be the time permitted for an appeal to the District Court.

1.1.81    "General Unsecured Claims" means Claims against any Debtor that are not Administrative Expense Claims, Claims on account of Professional Compensation, Tax Claims, Miscellaneous Secured Claims, Priority Claims, Environmental Remediation Claims, or Intercompany Claims.

1.1.82    "GUC Funds" means (i) the Estate Payment, plus, (ii) the Estate Cash, plus (iii) if applicable, a portion of the Net Litigation Proceeds pursuant to the formula set forth in Section 3.4.2 hereof.

1.1.83    "Holder" means a holder of a Claim or Equity Interest, as applicable.

1.1.84    "Impaired" shall have the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

1.1.85    "Initial Distribution Date" means the first Business Day after the Effective Date or as soon as reasonably practical thereafter; provided, however, that in no event shall the Initial Distribution Date be more than thirty (30) days after the Effective Date unless otherwise ordered by the Bankruptcy Court.

1.1.86    "Insurance Payment" means the cash payment to be made by the ChemicaInvest Parties on (or as of) the Effective Date pursuant to Section 7.5(a) of the ELT Property Transfer Agreement, in connection with obtaining certain insurance policies.

1.1.87    "Intercompany Claim" means any Claim asserted by a Debtor against another Debtor.

1.1.88    "Interim Distribution Agreements" means letter agreements entered into by Fibrant with certain Holders of General Unsecured Claims prior to the Filing Date, pursuant to which such Holders received interim payments with respect to such Holders' General Unsecured Claims.

1.1.89    "Letter of Credit" means the irrevocable standby letter of credit, dated April 25, 2016, in the amount of $2,126,200.00 established by Citibank, N.A. for the benefit of the EPD, as extended from time to time in accordance with the terms of such letter of credit.

1.1.90    "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.1.91    "Liquidating Agent" means Lawrence Hirsh and any successors under this Plan.  Confirmation of this Plan shall constitute the approval of the Liquidating Agent as a

professional person pursuant to the applicable provisions of the Bankruptcy Code.  Except as otherwise specifically provided for herein (including with respect to the duties delegated to the Creditor Trustee), the Liquidating Agent shall conduct the final liquidation and distribution of the Estates and conduct the wind-up of the Debtors' affairs, in each case in accordance with the terms and conditions of this Plan.

1.1.92    "Liquidation Proceeds" means any Cash received by the Estates from any source, less and except an appropriate amount of Retained Proceeds.  "Liquidation Proceeds" includes Cash generated by (a) the collection of outstanding accounts receivable, (b) sales of the Debtors' assets (other than the South Center Assets and the Environmental Remediation Property), and (c) the return of any deposits or escrowed funds to the Debtors.  Liquidation Proceeds shall include any Cash held by any of the Debtors as of the Effective Date, and all Cash realized from the liquidation of any asset of the Debtors or the Estates (after satisfaction of any Lien on such asset that secures a Secured Claim).

1.1.93    "Litigation Trust" means the trust established by the Litigation Trust Agreement and described in the Plan.

1.1.94    "Litigation Trust Agreement" means the Litigation Trust Agreement by and among the Debtors and the Litigation Trustee, establishing the Litigation Trust in conformity with the provisions of this Plan.  The form of the Litigation Trust Agreement is attached to this Plan as Exhibit C and will be entered into on (or as of) the Effective Date.

1.1.95    "Litigation Trustee" means the trustee appointed under the Litigation Trust Agreement, in its capacity as such.

1.1.96    "Miscellaneous Secured Claims" means a Secured Claim other than any Secured Claim that has been fully and finally satisfied prior to the Effective Date.

1.1.97    "Net Litigation Proceeds" means any Cash received by CIH, ELT or the Litigation Trust from any source in connection with the prosecution, settlement and enforcement or realization of the Applicable Causes of Action, the DSM SPA Causes of Action and the CIH Causes of Action, less the payment of all fees, expenses and out-of-pocket costs incurred by CIH, the Litigation Trust, and ELT in connection therewith (which such parties are hereby authorized to pay from such Cash without any notice to any other parties in interest or the Bankruptcy Court and without any requirement of application or hearing).

1.1.98    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

1.1.99    "Plan" means this Second Amended and Restated Plan of Liquidation for Fibrant, LLC, Evergreen Nylon Recycling, LLC, Fibrant South Center, LLC, and Georgia Monomers Company, LLC, dated as of May —,22, 2019, as it may be amended, altered, supplemented or modified from and after the date hereof, with the prior written consent of the ChemicaInvest Parties.

-12-

1.1.100  "Plan Objection Deadline" means the date and time by which objections to confirmation and consummation of the Plan must be filed with the Bankruptcy Court and served in accordance with the Disclosure Statement Order.

1.1.101  "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Tax Claim.

1.1.102  "Professional Compensation" means (i) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by the Debtors or the Committee, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Cases.

1.1.103  "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court, then the Record Date shall be the Confirmation Date.

1.1.104  "Record Holder" means the Holder of a Claim or Holder of an Equity Interest as of the Record Date.

1.1.105  "Releasing Parties" means collectively: (a) all parties-in-interest in these Bankruptcy Cases, and (b) all Holders of Claims; provided, however, that (1) EPD and EPA are Releasing Parties solely with respect to liabilities related to the Environmental Remediation Property under the Georgia Hazardous Waste Management Act, Official Code of Georgia Annotated ("O.C.G.A."), Section 12-8-66(e) and 12-8-71(b), the Georgia Hazardous Site Response Act, Sections 12-8-90 through 12-8-97, Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§9606 and 9607(a), and Section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. §6973, and (2) except as provided in clause (1) above, the Releasing Parties shall not include the United States of America or any department, agency, or instrumentality thereof, or the State of Georgia or any department, agency, or instrumentality thereof.

1.1.106  "Remediation Payment" means a Cash payment in an amount equal to $12.85 million (as such amount may be adjusted pursuant to Section 2.2 of the ELT Property Transfer Agreements) to be made by the ChemicaInvest Parties on the Effective Date to the Environmental Remediation Trust pursuant to the ELT Property Transfer Agreement and the Environmental Remediation Trust Agreement.

1.1.107  "Retained Proceeds" means the Unpaid Claims Reserve plus a portion of the Cash in the Estates, as determined by the Liquidating Agent in its reasonable discretion on or immediately prior to the Effective Date and from time to time thereafter after consulting in good faith with the Creditor Trustee or the Committee (as applicable), that shall be retained in the Estates as a reserve fund to cover, among other things, (a) payments to Holders of Disputed

-13-

Claims in Class 1 or Class 2 or Disputed Claims that are asserted as Administrative Expense Claims or Tax Claims, which are not Allowed Claims on the Effective Date or any applicable Distribution Date (it being understood that the Bankruptcy Court may, at the request of the Liquidating Agent, fix the amount of the reserve fund allocated to Disputed Claims); (b) Professional Compensation; (c) the post-Effective Date costs and expenses of liquidating and administering the Estates (including resolving Disputed Claims); (d) Tax Claims (if any) and other Priority Claims accruing after the Effective Date; (e) a reasonable reserve for the payment of the post-Effective Date compensation and expenses of the Liquidating Agent and the fees and expenses of professional persons retained by the Liquidating Agent and/or the Debtors; and (f) the Creditor Trust Reserve (which shall be paid to the Creditor Trust and administered and distributed by the Creditor Trustee). On a quarterly basis, the Liquidating Agent shall assess the amount of Retained Proceeds and, to the extent the Liquidating Agent determines (after consulting in good faith with the Creditor Trustee) there are excess funds available, the Liquidating Agent shall pay such excess funds, as an addition to the GUC Funds to the Creditor Trust on such quarterly basis.  Further on, the Consummation Date, any remaining Retained Proceeds (after the payment, in full, of all Allowed Claims in Class 1 and Class 2, all Allowed Administrative Expense Claims and Allowed Tax Claims, all post-Effective Date compensation and expenses of the Liquidating Agent, and all fees and expenses of professional persons retained by the Liquidating Agent) shall be added to the GUC Funds and used to make the Final Distribution under this Plan.  Notwithstanding any of the foregoing, to the extent that the application of remaining Retained Proceeds causes the amount of GUC Funds to exceed $7 million, such remaining Retained Proceeds shall be paid to CIH.

1.1.108   "Schedules" means, with respect to any Debtor, the Schedules of Assets and Liabilities such Debtor filed in its Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

1.1.109   "Secured Claim" means a Claim against any Debtor to the extent secured by a Lien on any property of such Debtor to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

1.1.110   "Settlement Payments" means, collectively, the Remediation Payment, the Estate Payment, the Insurance Payment, and the payment by the ChemicaInvest Parties of $850,000 to fund a deductible trust, which proceeds shall be used to cover deductibles/self-insured retentions under certain insurance policies (pursuant to Section 7.5(b) of the ELT Property Transfer Agreement).

1.1.111   "South Center Assets" shall mean all property owned by South Center and all Equity Interests of South Center held by the other Debtors.

1.1.112   "Tax Claim" means any Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.1.113   "Unimpaired" means, with respect to a Class of Claims, any Class that is not Impaired.

DMSLIBRARY01\34076864.v4

1.1.114   "Unpaid Claims Reserve" shall have the meaning ascribed to such term in Section 8.4 hereof.

1.1.115   "Waived Avoidance Action" means: (i) any Avoidance Action against any Holder of an Allowed Claim arising out of or maintainable pursuant to any state fraudulent conveyance laws or sections 544, 547, 548, 550 or 553(b) of the Bankruptcy Code; and (ii) any Avoidance Action against any Holder of an Allowed Claim arising out of or maintainable pursuant to section 549 of the Bankruptcy Code relating to the payment of valid pre-petition obligations of the Debtors; provided, however, Waived Avoidance Actions shall not include any Avoidance Actions that may be asserted against any DSM Entity.

1.2    *Time*.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the occurrence or happening of said event shall be extended to the next day that is not a Saturday, Sunday, or legal holiday.

## ARTICLE II
## Classification of Claims and Equity Interests; Impairment

2.1    *Summary*. The categories of Claims and Equity Interests set forth below classify all Claims against and Equity Interests in the Debtors for all purposes of this Plan.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Equity Interests provided for in Article III shall be in full and complete satisfaction and release of such Claims and Equity Interests.

The classification of Claims under this Plan is as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Miscellaneous Secured Claims | Unimpaired | No |
| 2 | Priority Claims | Unimpaired | No |
| 3 | Environmental Remediation Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |

The classification of Equity Interests under this Plan is as follows:

| | | | |
|-------|-------------|------------|------------------|
| 5 | Equity Interests in Fibrant | Impaired | No |

2.2    *Deemed Acceptance of Plan*.  Classes 1 and 2 are Unimpaired under this Plan. Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, Classes 1 and 2 are deemed to accept this Plan and are not entitled to vote to accept or reject this Plan.

2.3    *CIH Claims*. As a settlement of the CIH Claims in connection with the terms and conditions of the Plan and related documents and agreements, notwithstanding any other provision of this Plan, all CIH Claims are waived and deemed discharged as of the Effective Date, and the Holders of such Claims are not entitled to vote to accept or reject this Plan or to

-15-

receive any Distributions under this Plan on account of the CIH Claims; provided, however, for the avoidance of doubt, that nothing in the foregoing shall release any party from obligations under the Plan, and the ChemicaInvest Parties shall be entitled to enforce the terms and conditions of the Plan and related documents and agreements.  All proofs of claim filed by the ChemicaInvest Parties shall be deemed expunged upon the Effective Date without any requirement of further notice or filing by any party.  Notwithstanding the foregoing, any DIP Lender Claims shall be Allowed Claims in the full amount outstanding under the DIP Credit Agreement and DIP Order, including any expenses payable under the DIP Credit Agreement or DIP Order; provided, however, that the Allowed amount of DIP Lender Claims on account of such Claims arising on or before October 15, 2018 shall be no greater than $125,000.  Except to the extent that the DIP Lender agrees to less favorable treatment, on or before the Effective Date, each Holder of an Allowed DIP Lender Claim shall receive, on account of and in full and final satisfaction, settlement, release, and discharge of such Claim, indefeasible payment in full in Cash.

2.4    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*. The Debtors will request confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class that rejects, or is deemed to have rejected, this Plan.

## ARTICLE III
## Treatment of Claims and Equity Interests

3.1    *Class 1—Miscellaneous Secured Claims*.

3.1.1    Classification:  Class 1 consists of all Miscellaneous Secured Claims.

3.1.2    Treatment:  The legal, equitable and contractual rights of the Holders of Class 1 Miscellaneous Secured Claims are unaltered by this Plan.  Unless the Holder of such Claim and the Liquidating Agent agree to a different treatment, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Miscellaneous Secured Claim becomes Allowed, each Holder of an Allowed Class 1 Miscellaneous Secured Claim shall receive, in full and final satisfaction of such Allowed Class 1 Miscellaneous Secured Claim, either:

(a)    Cash in an amount equal to such Allowed Miscellaneous Secured Claim, including any interest on such Allowed Miscellaneous Secured Claim required to be paid pursuant to applicable law;

(b)    the proceeds of the sale or disposition of the collateral securing such Allowed Miscellaneous Secured Claim to the extent of the value of the Holder's interest in such collateral; or

(c)    the collateral securing such Allowed Miscellaneous Secured Clam.

Notwithstanding any other provision of this Plan, (1) the Allowed Miscellaneous Secured Claim of Augusta Sulfate Company, LLC may be paid as contemplated by Section 6.13 of the Plan promptly following the sale or other disposition of the South Center Assets, and (2) Augusta

DMSLIBRARY01\34076864.v4

Sulfate Company, LLC shall not have any other Allowed Claims or receive any other Distributions under the Plan.

In the event that the Debtors elect to treat an Allowed Miscellaneous Secured Claim under clause (a) or (b) of this Section 3.1.2, the Liens securing such Claim shall be deemed released without the need for further action.

3.1.3    Voting:  Class 1 is an Unimpaired Class, and the Holders of Allowed Class 1 Miscellaneous Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

3.2    *Class 2—Priority Claims.*

3.2.1    Classification:  Class 2 consists of all Priority Claims.

3.2.2    Treatment:  The legal, equitable and contractual rights of the Holders of Class 2 Priority Claims are unaltered by this Plan.  Unless the Holder of such Claim and the Debtors agree to a different treatment, each Holder of an Allowed Class 2 Priority Claim shall receive, in full and final satisfaction of such Allowed Class 2 Priority Claim, Cash equal to the full amount of such Allowed Priority Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, or (b) the date such Priority Claim becomes Allowed.

3.2.3    Voting:  Class 2 is an Unimpaired Class, and the Holders of Class 2 Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Claims in Class 2 are not entitled to vote to accept or reject this Plan.

3.3    *Class 3—Environmental Remediation Claims.*

3.3.1    Classification:  Class 3 consists of all Environmental Remediation Claims.

3.3.2    Treatment: Except to the extent that a Holder of an Environmental Remediation Claim agrees to a less favorable treatment, each Environmental Remediation Claim shall be resolved and satisfied (in full) by the closing of the ELT Transaction and the assumption by ELT of the "Assumed Obligations" pursuant to Section 9.1 of the ELT Property Transfer Agreement.  Holders of Environmental Remediation Claims shall not be entitled to receive any Cash Distributions under the Plan. EPD has asserted a claim against the Letter of Credit that the Debtors employ to satisfy certain financial assurance obligations arising under federal and state law and the EPD Permit. The Letter of Credit shall remain in place until ELT accepts the Environmental Remediation Property, EPD transfers the EPD Permit to ELT and ELT posts financial assurance acceptable to the EPD. The Letter of Credit shall then be released to the party that posted it.

3.3.3    Voting:  Class 3 is an Impaired Class.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Class 3 Environmental Remediation Claim is entitled to vote to accept or reject this Plan.

-17-

DMSLIBRARY01\34076864.v4

3.4    *Class 4—General Unsecured Claims.*

    3.4.1    Classification:  Class 4 consists of all General Unsecured Claims.

    3.4.2    Treatment:  Beginning on either (i) the thirtieth (30th) day from the Effective Date, with respect to Allowed Class 4 Claims listed on Schedule 1 (subject to the Creditor Trustee establishing a reserve for Disputed Claims in Class 4), (ii) the first Distribution Date after the applicable Claims Objection Deadline has occurred, if no objection to such Claim has been timely filed, or (iii) the first Distribution Date after the date on which any objection to such General Unsecured Claim is settled, withdrawn, or overruled pursuant to a Final Order of the Bankruptcy Court, each Holder of an Allowed Class 4 General Unsecured Claim shall receive a pro rata Distribution of any GUC Funds.  On each subsequent Distribution Date or as soon thereafter as is reasonably practicable, the Creditor Trustee shall continue to make pro rata Distributions to the holders of Allowed Claims in Class 4 of any available GUC Funds that remain in the Debtors' Estates, until the Consummation Date.  The timing of Distributions made to Holders of Allowed Claims in Class 4 pursuant to this Plan shall be determined by the Creditor Trustee in his sole discretion.

Notwithstanding any other provision of this Section 3.4.2, (a) each Holder of a Class 4 Claim that is listed on Schedule 1 to the Plan as Allowed shall be deemed to have an Allowed Claim in the amount set forth opposite such Holder's name on Schedule 1 for all purposes, and such Claims shall not be subject to objection, recharacterization, disallowance or subordination; (b) each Holder of a Class 4 Claim that is listed on Schedule 1 to the Plan as a Disputed Claim shall be deemed to have an Allowed Claim in an amount to be established pursuant to either an agreement between such Holder and the Creditor Trustee or pursuant to a Final Order by the Bankruptcy Court, as applicable; (c) notwithstanding the terms and conditions of the Interim Distribution Agreements, all Distributions to Holders of Allowed Class 4 Claims shall be made on a pro rata basis out of the GUC Funds; and (d) except as otherwise agreed by the Creditor Trustee and the Holder of such Claim or as otherwise ordered by the Bankruptcy Court, any Class 4 General Unsecured Claim that is not listed on Schedule 1 shall be deemed a Disallowed Claim under the Plan.

The aggregate Distributions payable to each Holder of an Allowed Class 4 General Unsecured Claim shall not exceed the Allowed Amount of such Claim.  The Distributions payable under this Section 3.4.2 shall be in full and final satisfaction of the amounts due to Holders of Allowed Class 4 General Unsecured Claims under the Plan.

In the event that the amount of GUC Funds on the Effective Date is less than $6 million, then (a) if the amount of GUC Funds on the Effective Date is $5.1 million or more, thirty percent (30%) of the Net Litigation Proceeds shall be added to the GUC Funds, (b) if the amount of GUC Funds on the Effective Date is $4.6 million or more but less the $5.1 million, forty percent (40%) of the Net Litigation Proceeds shall be added to the GUC Funds, and (c) if the amount of GUC Funds on the Effective Date is less than $4.6 million, fifty percent (50%) of the Net Litigation Proceeds shall be added to the GUC Funds; provided, however, once the aggregate amount of the GUC Funds equals $7 million, no further portion of the Net Litigation Proceeds shall be added to the GUC Funds.  All GUC Funds shall be paid to the Creditor Trust for the benefit of Holders of Allowed Class 4 General Unsecured Claims.

-18-

All GUC Funds shall be remitted to the Creditor Trustee (or the Creditor Trust, as applicable) beginning as of the Effective Date so the Creditor Trustee can carry out its duty to make Distributions from the GUC Funds to Holders of Allowed Class 4 General Unsecured Claims.

3.4.3    Voting:  Class 4 is an Impaired Class.  Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject this Plan.

3.5    *Class 5 – Equity Interests*.

3.5.1    Classification: Class 5 consists of all Equity Interests.

3.5.2    Treatment: Class 5 will receive neither receive any Distribution under the Plan nor retain any property under the Plan.  All Equity Interests in the Debtors shall be deemed cancelled upon the Effective Date.

3.5.3    Voting: Class 5 is an Impaired Class and will receive no Distribution under the Plan and, therefore, holders of Equity Interests in Class 5 are deemed to have rejected the Plan and are not entitled to vote on the Plan.

3.6    *No Waiver of Defenses.* Except as otherwise provided in this Plan, nothing under this Plan is intended to or shall affect the Debtors', the Liquidating Agent's or the Estates' rights and defenses in respect of any Claim under this Plan, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Claims.

## ARTICLE IV
### Treatment of Unclassified Claims

4.1    *Summary.*  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Tax Claims against the Debtors are not classified for purposes of voting on, or receiving Distributions under, this Plan.  All such Claims are instead treated separately in accordance with this Article IV and in accordance with the requirements set forth in sections 1129(a)(9)(A) and (C) of the Bankruptcy Code.

4.2    *Administrative Expense Claims*.

4.2.1    Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (i) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such Holder and the Liquidating Agent, or (iv) as otherwise ordered by the Bankruptcy Court.

4.2.2    **Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim (other than a claim for Professional Compensation and other than any claim for fees and charges assessed against the Estates under chapter 123 of**

DMSLIBRARY01\34076864.v4

title 128 of the United States Code) shall file a proof of such Administrative Expense Claim with the Claims Agent within thirty (30) days after the Liquidating Agent provides notice by mail or by publication, in a form and manner approved by the Bankruptcy Court, of the occurrence of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Liquidating Agent and the Creditor Trustee.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim by the Debtors and the Estates.

4.2.3    Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date or by such other deadline as may be fixed by the Bankruptcy Court.  The provisions of this paragraph shall not apply to any professional providing services pursuant to, and subject to the limits contained in, the *Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business* entered in the Bankruptcy Cases on May 1, 2018.

4.3    *Tax Claims.*  Except to the extent that the Holder of a particular Tax Claim has agreed to a different treatment of such Claim, each Holder of an Allowed Tax Claim shall receive Cash on the Effective Date (or as soon thereafter as is reasonably practicable) in an amount equal to such Allowed Tax Claim.  The Debtors shall pay each Tax Claim that becomes Allowed following the Effective Date in Cash in full as soon as reasonably practicable after the date such Claim becomes Allowed.

## ARTICLE V
## Treatment of Executory Contracts and Unexpired Leases

5.1    *Rejection of Certain Executory Contracts and Unexpired Leases.* On the Effective Date, (i) the Executory Contracts or Unexpired Leases listed on Schedule 2 shall be deemed assumed by Fibrant and assigned to ELT, (ii) the Executory Contracts or Unexpired Leases listed on Schedule 3 shall be deemed assumed by Fibrant, and (iii) all other Executory Contracts or Unexpired Leases of the Debtors will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those Executory Contracts or Unexpired Leases that (a) have been previously rejected or assumed by any Debtor pursuant to an order of the Bankruptcy Court, (b) are the subject of a motion to assume filed by any Debtor which is pending on the Effective Date, or (c) are assumed by any Debtor pursuant to the Plan or the Confirmation Order.

5.2    *Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases*

Any defaults under each Executory Contract and Unexpired Lease to be assumed, or assumed and assigned, pursuant to this Plan shall be satisfied, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable cure amount in Cash on the Effective Date or on such other terms as the Bankruptcy Court may order or the

DMSLIBRARY01\34076864.v4

parties to such Executory Contracts or Unexpired Leases may otherwise agree with the Debtors in writing (the "Cure Claim Amount").

In the event of an assumption, or an assumption and assignment, of an Executory Contract or Unexpired Lease under this Plan, at least twenty (20) days prior to the Plan Objection Deadline, the Debtors shall file and serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, or proposed assumption and assignment, which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, or proposed assumption and assignment, under this Plan or any related Cure Claim Amount, must be filed, served and actually received by the Debtors prior to the Plan Objection Deadline (notwithstanding anything in the Schedules or a proof of claim to the contrary). Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or Cure Claim Amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and Cure Claim Amount. The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any proposed Cure Claim Amount, (b) the ability of any Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, or (c) any other matter pertaining to assumption or assignment, the applicable Cure Claim Amount required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment; provided, however, that following the resolution of any such dispute the Debtors or the Liquidating Agent, as applicable, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming or assigning it. The Debtors or the Liquidating Agent, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within ten (10) days of the entry of such Final Order.

Subject to any cure claims filed with respect thereto, assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any proofs of claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or

-21-

assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

With respect to any Executory Contract or Unexpired Lease assumed and assigned pursuant to this Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the applicable Debtor party to such assigned Executory Contract or Unexpired Lease and, accordingly, the Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned Executory Contract or Unexpired Lease.

5.3    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* All proofs of claim with respect to Claims arising from the rejection pursuant to this Plan of any Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served upon counsel for the Liquidating Agent within thirty (30) days after the Effective Date (for the avoidance of doubt, this requirement does not apply to Holders of Claims that have their Claims listed in Schedule 1, as those Claims are treated as Allowed or Disputed Claims, as applicable, pursuant to this Plan).  Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that become Allowed Claims are classified and shall be treated as a Class 4 General Unsecured Claims, as applicable.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan not filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates, and each of their successors and assigns and their assets and properties unless otherwise ordered by the Bankruptcy Court or provided in this Plan.  All such late-filed Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 10.8 herein. Notwithstanding the foregoing, a Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease rejected pursuant to an order of the Bankruptcy Court must be filed prior to any bar date set forth in such order.

5.4    *Survival of Certain Indemnification Obligations.* Notwithstanding any other provision of this Plan, the obligations of the Debtors pursuant to their organizational documents to indemnify persons serving after the Filing Date as officers, directors, managers, agents, or employees of the Debtors with respect to actions, suits and proceedings against the Debtors or such officers, directors, managers, agents, or employees, based upon any act or omission for, on behalf of, or relating to the Debtors and occurring prior to or after the Filing Date, shall not be discharged or impaired by the confirmation of the Plan (it being understood that such obligations shall continue to be obligations of the Debtors and the Estates from and after the Confirmation Date).

5.5    *Certain Applicable Insurance Matters.*  On the Effective Date, pursuant to Sections 105 and 1123(a)(5)(B) of the Bankruptcy Code, the Debtors shall transfer and assign (i) to ELT all of the Debtors' rights to assert and pursue claims under the Applicable ELT Insurance Causes of Action, and ELT shall have the right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable ELT Insurance Causes of Action, and (ii) to CIH all of the Debtors' rights to assert and pursue claims under the Applicable CIH Insurance Causes of Action, and CIH shall have the

-22-

right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable CIH Insurance Causes of Action.  For the avoidance of doubt, the Net Litigation Proceeds in respect of the Applicable CIH Insurance Causes of Action shall be subject to the rights of Holders of Allowed Class 4 General Unsecured Claims to receive Net Litigation Proceeds pursuant to section 3.4 of this Plan.

## ARTICLE VI
## Means for Implementation of Plan

6.1     *Substantive Consolidation*.  This Plan is premised on the substantive consolidation of the Debtors with respect to the treatment of all Claims and Equity Interests. This Plan shall serve as a request by the Debtors, in lieu of a separate motion, to the Bankruptcy Court, that it grant substantive consolidation with respect to the treatment of all Claims and Equity Interests as follows: on the Effective Date, (a) all assets and liabilities of the Debtors will be pooled or treated as though they were pooled; (b) all guarantees by each Debtor of the obligations of the other Debtors and any joint and several liability of the Debtors shall be eliminated; (c) all Intercompany Claims shall be cancelled and extinguished without the payment of any consideration; (d) no Distributions shall be made under the Plan on account of any Equity Interest held by a Debtor; and (e) each and every Claim against any Debtor shall be deemed filed against the consolidated Debtors and all Claims filed against more than one Debtor for the same liability shall be deemed one Claim against the consolidated Debtors.  The entry of the Confirmation Order shall constitute the approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors and their Estates for all purposes relating to the Plan, including for purposes of voting, confirmation, and Distributions.  Unless otherwise provided herein, the consolidation of the Debtors effected by the Plan shall not (other than for purposes relating to Distributions, as set forth above) affect (i) the legal and organizational structure of the Debtors, (ii) any defense to any Claim or cause of action, or (iii) any distributions out of any insurance policy or proceeds of such policy.

6.2     *Dissolution of Fibrant.*  Fibrant will be deemed dissolved ~~upon the Effective Date~~ and will cease to exist upon the date the EPD Permit is transferred, which dissolution shall occur immediately following the transfer of the ~~Environmental Remediation Property to ELT and the closing of the ELT Transaction~~EPD Permit to ELT; such dissolution shall be deemed to occur pursuant to the applicable laws of the State of Delaware and without the necessity of taking any action or making any filing with the Delaware Secretary of State or otherwise.  Fibrant and the Liquidating Trustee are authorized to file the Plan and Confirmation Order as evidence of the dissolution of Fibrant and shall take such actions as reasonably requested by the ChemicaInvest Parties with respect to the dissolution of Fibrant and administration of such dissolution with the Delaware Secretary of State.

6.3     *Vesting of the Debtors' Assets.*  Pursuant to this Plan, all property of the Debtors and their Estates shall vest automatically in the Debtors on the Effective Date (without the necessity of executing any instruments of assignment), for the express purpose of allowing the Debtors to close the ELT Transaction and the Liquidating Agent and Creditor Trustee to make Distributions to Holders of Claims pursuant to the terms and conditions of this Plan.  In addition,

-23-

on the Effective Date, (a) the Causes of Action shall be deemed transferred, conveyed and assigned to the Litigation Trust, (b) the Applicable ELT Insurance Causes of Action shall be deemed transferred, conveyed and assigned to ELT, and (c) the DSM SPA Causes of Action and the Applicable CIH Insurance Causes of Action shall be deemed transferred, conveyed and assigned to CIH.  As of the Effective Date, (i) all property of the Debtors shall be free and clear of all Liens, Claims and Equity Interests, and (ii) the rights of Holders of Claims to receive Distributions shall be governed by the Plan.

6.4     *Operation of the Debtors*.  The Liquidating Agent shall have the rights, powers and duties as set forth in this Plan and shall be responsible for administering this Plan under the terms and subject to the conditions set forth herein.  After the Effective Date, the Liquidating Agent shall be authorized to take, on behalf of the Debtors, all necessary, desirable or appropriate actions to direct and oversee any remaining business activities, winddown activities, and to proceed with an orderly, expeditious and efficient liquidation and distribution of the Estates.  The Liquidating Agent shall be authorized to retain or engage, or to cause the Debtors to retain or engage, such employees, professional persons and agents as are appropriate or desirable to continue the liquidation of the Estates.  Further, the Liquidating Agent shall be authorized to make Distributions from the Retained Proceeds to pay the costs and expenses incurred after the Effective Date in connection with the administration, liquidation and distribution of the Estates, without the necessity of providing any notice or seeking or obtaining any approval of the Bankruptcy Court with respect to such Distributions.  Without limiting the generality of the foregoing, the Liquidating Agent shall be authorized to make Distributions from the Retained Proceeds to pay the fees and expenses of any professional persons retained by the Liquidating Agent and/or the Debtors.  The Liquidating Agent shall be the representative of the Estates as contemplated by section 1123(b)(3)(B) of the Bankruptcy Code.  Except as otherwise specifically provided in this Plan, the Liquidating Agent shall have full and exclusive power and authority to act on behalf of the Debtors and shall be responsible for performing the duties of the Debtors under this Plan.  The Liquidating Agent shall have the rights, duties and powers of a trustee appointed pursuant to sections 701, 702 and 1104 of the Bankruptcy Code to act on behalf of the Debtors with regard to the administration of the Bankruptcy Cases and the assets of the Estates.  No recourse shall ever be had, directly or indirectly, against the Liquidating Agent personally, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Agent under this Plan, or by reason of the creation of any indebtedness by the Liquidating Agent under this Plan for any purpose authorized by this Plan, save and except in cases of defalcation, misappropriation, fraud or gross negligence by the Liquidating Agent, it being expressly understood and agreed that such liabilities, promises, contracts, instruments, undertakings, obligations, covenants and agreements shall be enforceable only against and be satisfied only out of the assets of the Debtors or shall be evidence only of a right of payment from the Debtors' assets.  The Liquidating Agent shall be indemnified and held harmless by the Estates from and against any expenses (including the reasonable fees and expenses of counsel), damages or losses incurred or suffered by the Liquidating Agent in connection with any claim or demand which in any way arises out of or relates to this Plan or the services of the Liquidating Agent under this Plan; provided, however, if the Liquidating Agent is guilty of defalcation, misappropriation, fraud or gross negligence, then the Liquidating Agent shall bear all losses, damages and expenses arising as a result of such defalcation, misappropriation, fraud or gross negligence.  The Liquidating Agent may resign at any time in its sole discretion, and such

-24-

resignation shall be effective upon the earlier of (i) 30 days after the Liquidating Agent has given written notice of resignation to the Creditor Trustee and filed such notice with the Bankruptcy Court, and (ii) the date the Bankruptcy Court approves a successor to the resigning Liquidating Agent.  In case of the resignation of the Liquidating Agent, a successor shall thereupon be appointed by the Creditor Trustee, subject to approval of the Bankruptcy Court, or, in the event that the Creditor Trustee does not exist or does not exercise such right of appointment, by the Bankruptcy Court.  The Liquidating Agent shall be reimbursed for any out-of-pocket expenses incurred in connection with the discharge of its duties under this Plan and shall be compensated for his services at his standard hourly rate.  The Liquidating Agent's compensation and expenses shall be reimbursed and/or paid out of the Retained Proceeds and such compensation and expenses may be paid without the necessity of providing notice to any party in interest or obtaining any approval from the Bankruptcy Court.  On the Consummation Date, after making the Final Distribution under this Plan, the Liquidating Agent shall be discharged from its duties under this Plan.

6.5     *Billing and Collection of Accounts Receivable.*  As of the Effective Date, the Liquidating Agent shall be authorized to: (i) complete the billing of the Debtors' account debtors; (ii) send correspondence to the Debtors' account debtors requesting payment of all amounts outstanding, due and payable to the Debtors; (iii) engage in other collection activity to ensure payment of outstanding accounts receivable; and (iv) employ or cause the Debtors to employ one or more collection agencies to further pursue collection of any outstanding accounts receivable.

6.6     *Maintenance of Bank Accounts and Distribution of Liquidation Proceeds.* The Liquidating Agent and the Creditor Trustee shall have the authority and responsibility to disburse the assets of the Estates to the Holders of Allowed Claims and otherwise in accordance with the terms of this Plan.  All GUC Funds, Liquidation Proceeds and Retained Proceeds shall be held in trust for the benefit of Holders of Allowed Claims in one or more separate bank or other depository accounts throughout the term of this Plan.  The Liquidating Agent shall be entitled to use the Debtors' bank accounts that are in existence as of the Effective Date and shall be authorized to open such bank or other depository accounts as may be necessary or appropriate in the discretion of the Liquidating Agent to enable it to carry out the provisions of this Plan (provided that any bank account opened by the Liquidating Agent shall be at a financial institution approved by the Office of the United States Trustee).  The Liquidating Agent may, from time to time, cause the Debtors to invest the Liquidation Proceeds and Retained Proceeds in certificates of deposit, treasury bills, money market accounts or other short term investments.  All interest earned shall be retained for Distribution to the Holders of Allowed Claims pursuant to this Plan.  The Liquidating Agent  and the Creditor Trustee (with respect to Class 4 Claims) shall prepare and maintain an adequate set of financial books, records or databases that will allow the Liquidating Agent and Creditor Trustee (as applicable) to accurately track the amount of Claims asserted against the Estates and the amounts paid to each Holder of an Allowed Claim pursuant to the terms of this Plan; provided that the Liquidating Agent also shall be entitled to use the Debtors' books and records (including the books and records maintained by the Claims Agent that are in existence on the Effective Date).  On the Initial Distribution Date or, with respect to the Creditor Trustee, on the 30th day from the Effective Date (or as soon thereafter as is reasonably practicable), and each subsequent Distribution Date, the Liquidating Agent, and the Creditor Trustee with respect to Class 4 General Unsecured Claims, shall make Distributions to the Holders of Allowed Claims in accordance with the terms of this Plan.  The Liquidating

DMSLIBRARY01\34076864.v4

Agent, and the Creditor Trustee with respect to Class 4 General Unsecured Claims, will continue to make Distributions until the assets in the Estates have been fully distributed to Holders of Allowed Claims in accordance with the terms of this Plan.

6.7     *Cancellation of Existing Securities of Debtors and Agreements.* On the Effective Date, except as otherwise specifically provided for herein, (a) any and all agreements, Certificates or other documents evidencing or creating any Claims, rights, indebtedness or obligation of or ownership interest in the Debtors will be deemed to be fully and finally cancelled, and (b) the obligations of, Claims against, and/or Equity Interests in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar organizational documents governing any and all agreements, Certificates or other documents evidencing or creating any Claims, rights, indebtedness or obligation of or ownership interest in the Debtors will be terminated and released.

6.8     *Books and Records*.  To the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over any and all books and records that may relate to the Environmental Remediation Property to ELT on the Effective Date; provided, however, that any books and records that may relate to the Causes of Action shall be transferred to CIH (in its capacity as Trustee under the Litigation Trust Agreement), any books and records that may relate to the Applicable CIH Insurance Cause of Action shall be transferred to CIH, and any books and records that may relate to the Applicable ELT Insurance Causes of Action shall be transferred to ELT. CIH or ELT, as applicable, may, and shall be deemed authorized but not required to, abandon all such books and records on or after ninety (90) days from the Effective Date, provided, however, that CIH and ELT shall not dispose or abandon any books and records that are reasonably likely to pertain to pending litigation in which the Litigation Trust, the Debtors or the Debtors' current or former officers, directors or managers are a party or that pertain to Claims without further order of the Bankruptcy Court nor shall CIH or ELT dispose of or abandon any books or records relating to the Environmental Remediation Property, the Applicable Causes of Action, or the DSM SPA Causes of Action without first consulting one another. Pursuant to section 554 of the Bankruptcy Code, Section 6.8 of the Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtors.

6.9     *Corporate Action.* Each of the matters provided for under this Plan involving the organizational structure of any Debtor or any limited liability company action to be taken by or required of any Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by officers, creditors, managers or equity holders of any of the Debtors.

6.10    *Preservation of Causes of Action.*  Except as expressly set forth in this Plan (including Section 9.6 of this Plan), in accordance with section 1123(b)(3) of the Bankruptcy Code, (i) the Litigation Trust (as assignee of the Debtors) will retain and may (but is not required to) enforce all Causes of Action, (ii) ELT (as assignee of the Debtors) will retain and may (but is not required to) enforce all Applicable ELT Insurance Causes of Action, and (iii) CIH (as assignee of the Debtors) will retain and may (but is not required to) enforce all DSM SPA Causes

-26-

of Action and the Applicable CIH Insurance Causes of Action.  After the Effective Date, the Litigation Trustee, ELT, and CIH, in their respective sole and absolute discretion (except as provided in Section 10.7 of this Plan), shall have the right to bring, settle, release, compromise, or enforce such Applicable Causes of Action, Applicable CIH Insurance Causes of Action, and DSM SPA Causes of Action (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Insurance Cause of Action or DSM SPA Cause of Action in this Plan does not, and will not be deemed to, constitute a waiver or release by the Estates, the Liquidating Agent, the Litigation Trust, ELT, CIH or the Debtors of such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action, and the Litigation Trust, ELT, and CIH will retain the right to pursue such claims, rights of action, suits, proceedings and other Applicable Causes of Action, Applicable CIH Cause of Action and DSM SPA Cause of Action (as applicable), each in its respective sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action upon or after the confirmation or consummation of this Plan.

6.11    *Effectuating Documents; Further Transactions*. Each of the Debtors, their respective officers and designees, and the Liquidating Agent, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions, as may be necessary, desirable or appropriate, or as may be reasonably requested by the ChemicaInvest Parties, to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.  In order to facilitate the liquidation and distribution of the Estates and the wind-down of the Debtors' affairs, on the Effective Date the Liquidating Agent shall be deemed, by operation of law and the Confirmation Order and without need for any action by any person affiliated with the Debtors or any officer or manager of the Debtors, to hold an irrevocable power of attorney on behalf of each Debtor and each Estate and with respect to all of the Assets.

6.12    *ELT Transaction and ChemicaInvest Parties' Payments*.   Pursuant to the ELT Property Transfer Agreement, on the Effective Date, (a) ELT shall acquire the Environmental Remediation Property and assume responsibility for environmental remediation of the Environmental Remediation Property on the terms set forth in the ELT Property Transfer Agreement, and (b) the ChemicaInvest Parties shall pay (i) to the Environmental Remediation Trust the Remediation Payment, (ii) the Insurance Payment, and (iii) to the Debtors the Estate Payment.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the ELT Property Transfer Agreement, the Environmental Remediation Trust Agreement and the Litigation Trust Agreement.

6.13    *Fibrant South Center Proceeds*.  If the South Center Assets are sold by South Center (a) prior to or on the Effective Date, the Debtors shall transfer fifty percent (50%) of the Fibrant South Center Proceeds to the Environmental Remediation Trust, which shall reduce on a dollar-for-dollar basis the amount of the Remediation Payment to be paid by CIH to the Environmental Remediation Trust, and (b) after the Effective Date, the Debtors or Liquidating Trustee (as applicable) shall transfer fifty percent (50%) of the Fibrant South Center Proceeds to

DMSLIBRARY01\34076864.v4

CIH promptly following the closing of the sale of the South Center Assets. The remaining fifty percent (50%) of the Fibrant South Center Proceeds shall be distributed to Augusta Sulfate Company, LLC ("Augusta Sulfate") in full satisfaction of its Allowed Miscellaneous Secured Claim; provided, however, if Augusta Sulfate is the purchaser of the South Center Assets, then (i) the Allowed Miscellaneous Secured claim of Augusta Sulfate shall be deemed satisfied as of the closing of the sale, (ii) Augusta Sulfate shall receive a purchase price "credit" in an amount equal to fifty percent of the Fibrant South Center Proceeds, and (iii) no funds shall be distributed to Augusta Sulfate in connection with the sale of the South Center Assets.

6.14    *Establishment of the Environmental Remediation Trust*. On the Effective Date, the Environmental Remediation Trust shall be established pursuant to the Environmental Remediation Trust Agreement for the purposes of, among other things: (i) holding the Environmental Remediation Trust Assets; (ii) carrying out administrative functions related to the Environmental Remediation Trust Assets; and (iii) funding implementation of future Clean-Up Activities (as such term is defined in the Environmental Remediation Trust Agreement) with respect to the Environmental Remediation Property. Upon execution of the Environmental Remediation Trust Agreement, the Environmental Remediation Trustee shall be authorized to take all steps necessary to complete the formation of the Environmental Remediation Trust. The Environmental Remediation Trust shall be administered by the Environmental Remediation Trustee in accordance with the Environmental Remediation Trust Agreement and the ELT Property Transfer Agreement.

6.15    *Transfer of the Environmental Remediation Property*. On the Effective Date, the Debtors shall transfer, assign, and deliver to ELT all of Debtors' right, title and interest in and to the Environmental Remediation Property in accordance with section 1141 of the Bankruptcy Code. Pursuant to Sections 363(f) and 1123(a)(5)(B) and (D) of the Bankruptcy Code, the foregoing transfers shall be: (i) free and clear of all claims, liens, encumbrances and interests against the Debtors of any kind or nature whatsoever (other than "Permitted Title Exceptions," as such term is defined in the ELT Property Transfer Agreement); and (ii) subject to any rights of the ChemicaInvest Parties, ELT, the Debtors, EPA and EPD under the Environmental Remediation Trust Agreement or the ELT Property Transfer Agreement.

6.16    *Appointment of the Environmental Remediation Trustee.* Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the appointment of the Environmental Remediation Trustee, and such appointment shall be effective as of the Effective Date. The Environmental Remediation Trustee shall have and perform the duties and obligations set forth in the Environmental Remediation Trust Agreement.

6.17    *Transfer of Remaining Assets*.  On and after the Effective Date, the Liquidating Agent shall have sole authority to cause the Debtors to liquidate and sell, and the Liquidating Agent shall pursue the liquidation of, all remaining Assets.  The Liquidating Agent shall have the authority to consummate such liquidations and sales without the necessity of obtaining any approval from the Bankruptcy Court or providing notice to any party in interest if the aggregate purchase price for the Assets to be sold in connection with a particular transaction is less than or equal to $500,000; provided, however, the Liquidating Agent shall have the right in its sole discretion to seek and obtain Bankruptcy Court approval of any sale transaction if the Liquidating Agent believes it is in the best interests of the Estates to do so.  If the aggregate purchase price in

-28-

connection with a particular sale transaction exceeds $500,000, then Bankruptcy Court approval (following Designated Notice) shall be required. The Liquidating Agent shall also have the authority, if appropriate in the sole discretion of the Liquidating Agent, to abandon any Assets that cannot be liquidated or sold in a cost effective manner or that have inconsequential value.

6.18    *Exemption From Certain Transfer Taxes and Recording Fees.* Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to any other Person pursuant to this Plan (including pursuant to the ELT Property Transfer Agreement and including any sale of the South Center Assets), or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.19    *Further Authorization.* Each of the Debtors and the Liquidating Agent shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.20    *Establishment of the Litigation Trust.* On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purposes of, among other things, (i) holding the Causes of Action, (ii) prosecuting, settling, enforcing and/or realizing on the Causes of Action, and (iii) if applicable, paying a portion of the Net Litigation Proceeds to the Debtors (which will be added to the GUC Funds). Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the appointment of the Litigation Trustee as trustee of the Litigation Trust, and such appointment shall be effective as of the Effective Date.

6.21    *Dissolution.* After the occurrence of the Consummation Date and the entry of an order of the Bankruptcy Court closing the Bankruptcy Cases, South Center, Evergreen and Monomers shall be deemed dissolved pursuant to the applicable laws of the State of Georgia without the necessity of taking any action or making any filing with the Georgia Secretary of State or otherwise.

## ARTICLE VII
## Provisions Regarding Corporate Governance of Debtors

7.1    *Amendment of Organizational Documents.* On and as of the Effective Date, the organizational documents of each Debtor shall be deemed to have been amended to prohibit the issuance of nonvoting equity securities to the extent required by the Bankruptcy Code.

7.2    *Managers and Officers of Debtors.* On the Effective Date (a) the authority, power and incumbency of the persons then acting as officers and managers of the Debtors shall be terminated and such officers and managers shall be deemed to have resigned, and (b) the

-29-

Liquidating Agent shall be deemed the sole officer and sole manager of each Debtor and shall be deemed to have succeeded to such powers as would have been previously exercisable by the equityholder of each Debtor.

## ARTICLE VIII
## Distributions

8.1    *Disbursing Agents.* Except with respect to Distributions made by the Creditor Trustee to Holders of Allowed Class 4 General Unsecured Claims, all Distributions under this Plan shall be made by the Liquidating Agent.

8.2    *Distributions of Cash.* Any Distribution of Cash made by the Liquidating Agent, or by the Creditor Trustee with respect to Allowed Class 4 General Unsecured Claims, pursuant to this Plan shall, at the Liquidating Agent's or Creditor Trustee's option, as applicable, be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

8.3    *No Interest on Claims.* Unless otherwise specifically provided for in this Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on Claims and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.

8.4    *Delivery of Distributions.* The Distribution to a Holder of an Allowed Claim shall be made by the Liquidating Agent and, with respect to Holders of Allowed Class 4 General Unsecured Claims, the Creditor Trustee: (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to the Debtors, the Liquidating Agent or the Creditor Trustee after the date of any related proof of claim, (c) at the address set forth in any Notice of Transfer of Claim, (d) at the address reflected in the Schedules if no proof of claim has been filed and the Debtors, Liquidating Agent and Creditor Trustee have not received a written notice of a change of address, or (e) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.  If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidating Agent or Creditor Trustee, as applicable, is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest from the original Distribution Date to the new Distribution Date. Amounts in respect of undeliverable Distributions made in Cash shall be retained by the Liquidating Agent in an "Unpaid Claims Reserve" until such Distributions are claimed.  All Cash Distributions returned to the Liquidating Agent or Creditor Trustee and not claimed within six (6) months of return shall be irrevocably retained by the Liquidating Agent (and the funds held in the Unpaid Claims Reserve shall become Liquidation Proceeds at the end of such six-month period) notwithstanding any federal or state escheat laws to the contrary. After the end of such six-month period, the Claim of any other Person to such property shall be discharged and forever barred.

8.5    *Distributions to Holders as of the Record Date.* All Distributions on Allowed Claims shall be made to the Record Holders of such Claims.  As of the close of business on the Record Date, the Claims register maintained by the Claims Agent shall be closed. The Liquidating Agent and Creditor Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  The Liquidating Agent and Creditor Trustee shall instead

-30-

be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6     *De Minimis Distributions*.  Except for Distributions being made on the Consummation Date, the Liquidating Agent and the Creditor Trustee, as applicable, shall have no obligation to make a Distribution if the amount to be distributed to the specific Holder of the Allowed Claim is less than Fifty Dollars ($50.00); provided, however, if the Liquidating Agent elects not to make a Distribution as contemplated by this Section 8.6, such Distribution shall be held for the Holder of such Claim until the next Distribution Date at which time such Distribution shall be made (unless this Section 8.6 shall again apply).

8.7     *Fractional Dollars*.  Any other provision of this Plan notwithstanding, the Liquidating Agent and Creditor Trustee, as applicable, shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.8     *Withholding Taxes*.  The Debtors, the Creditor Trustee and the Liquidating Agent shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.  Any amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to the Holders of applicable Claims.

8.9     *Tax Reporting*.   In order to receive Distributions under the Plan, all Holders of Allowed Claims will need to identify themselves to the Liquidating Agent or Creditor Trustee, as applicable, and provide all tax information the Liquidating Agent or Creditor Trustee, as applicable, deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each Holder).  The Liquidating Agent and/or Creditor Trustee, as applicable, may refuse to make a Distribution to any Holder of a Claim that fails to furnish such information within ninety (90) calendar days after a request by the Liquidating Agent or Creditor Trustee for the completion and return of the appropriate form.  In such instance, (i) such Holder shall be deemed to have forfeited its right to such Distributions, (ii) the Claim(s) of such Holder shall be waived, discharged, and forever barred without further order of the Bankruptcy Court, and (iii) such Distribution shall revert back to the Estates notwithstanding any federal, state, or escheat law to the contrary.

8.10     *Undistributed Funds*.   The Creditor Trustee may deliver to CIH any undistributed funds in the Estates if, in the reasonable judgment of the Creditor Trustee, the cost of calculating and making a final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Allowed Claims who would otherwise be entitled to such Distributions.

**ARTICLE IX**
**Procedures for Treating and Resolving Disputed Claims**

9.1     *Objections to Claims*.   The Creditor Trustee and the Liquidating Agent shall be entitled to object to Claims within the respective Class(es) for which the Creditor Trustee and Liquidating Agent, as applicable, are responsible for making Distributions; provided, however,

-31-

that the Creditor Trustee and Liquidating Agent shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.  Any objections to Claims must be filed by the Claims Objection Deadline.

9.2     *No Distributions Pending Allowance*.  Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) the Claims Objection Deadline has passed and no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.  Notwithstanding the foregoing, any undisputed portion of a Disputed Claim shall be deemed Allowed and the Holder of such Disputed Claim shall receive Distributions on the undisputed portion of such Disputed Claim pursuant to the terms of this Plan.

9.3     *Estimation of Claims.*  The Debtors, the Creditor Trustee, or the Liquidating Agent, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502 of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Agent have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (and after the Effective Date, the Liquidating Agent) may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

9.4     *Resolution of Claims Objections*.  On and after the Effective Date, the Liquidating Agent and the Creditor Trustee (each with respect to the Class(es) for which such party is responsible for making Distributions) shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.  This Section 9.4 is not intended to and shall not be construed as limiting the rights of Debtors' insurers to control the defense and settlement of Claims allegedly covered under any Applicable Insurance policy.

9.5     *Distributions After Allowance*.  As soon as practicable after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) a Disputed Claim becomes an Allowed Claim, the Debtors, with respect to all Distributions other than to Holders of General Unsecured Claims, will distribute to the Holder thereof all Distributions to which such Holder is then entitled under this Plan.  With respect to General Unsecured Claims, on the first Distribution Date after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) a Disputed Claim becomes an Allowed Claim, notwithstanding the dollar threshold in Section 1.1.45 of the Plan, the Holder of an Allowed General Unsecured Claim shall receive the Distribution to which such Holder is then entitled plus any Distribution such Holder would have received on a prior Distribution Date had such Holder's Claim been Allowed on such prior Distribution Date;

-32-

provided, however, if the date such General Unsecured Claim becomes entitled to a Distribution is less than twenty (20) Business Days prior to the next Distribution Date, the Distribution with respect to such Claim will be made on the first Distribution Date that occurs more than twenty (20) Business Days after the Claim becomes entitled to a Distribution.

9.6    *Distributions On Insured Claims*.   Except as provided in any order of the Bankruptcy Court, if any Holder has asserted an Allowed Claim that is covered as to liability, in whole or in part, by an insurance policy that is assumed or otherwise remains in effect pursuant to the terms of this Plan, such Holder will have an Allowed Claim entitled to a Distribution under this Plan only to the extent of any deductible or self-insured retention under the applicable insurance policy that was unpaid or otherwise unexhausted as of the Filing Date. Notwithstanding the foregoing, the Holder shall be entitled to pursue recovery of any amount in excess of such unpaid deductible or self-insured retention from the applicable insurance carrier (up to the full amount of such Allowed Claim) and, in connection therewith, notwithstanding the discharge of the balance of such Claim provided pursuant to this Plan, such Holder may continue to pursue the balance of such Claim against the Debtors solely for the purposes of liquidating such Claim and obtaining payment of the balance of such liquidated Allowed Claim from any otherwise applicable policy of insurance.   Except as otherwise provided in the applicable insurance policy, the applicable insurance carrier may, at its expense, employ counsel, direct the defense, and determine whether and on what terms to settle any Disputed Claim for the purposes of determining the amount of insurance proceeds that will be paid on account of such Claim. Except as provided in any order of the Bankruptcy Court, if after liquidation of an Allowed Claim pursuant to this Section 9.6, it is determined that there are insufficient insurance proceeds available to satisfy the amount of such Claim that is in excess of any unpaid deductible or self-insured retention, then the Holder of such Allowed Claim shall have a Claim in the amount of such insufficiency.   Notwithstanding any other provision of this Plan, after the Effective Date the Bankruptcy Court shall be authorized to enter one or more orders in the Bankruptcy Cases modifying and amending the provisions of this Section 9.6, provided that any such modifications shall not be material and adverse to the interests of Holders of insured Claims.   The treatment of any Claim or portion of a Claim as an Allowed Claim under this Section 9.6 shall not constitute a settlement or adjudication of the Claim (as to liability or damages) for any purpose other than distribution from the Estates and shall not be offered or admitted into evidence for any purpose in any other proceeding to determine the amount of the Claim for the purpose of recovering against insurance coverage, or in any action to establish insurance coverage.

**ARTICLE X**
**Effect of Plan on Claims and Equity Interests**

10.1    *Revesting of Assets*.   Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including the Applicable Causes of Action and DSM SPA Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in the Debtors for the express purpose of allowing the consummation of the Plan and ELT Transaction and allowing the Liquidating Agent to make Distributions to Holders of Claims pursuant to the terms and conditions of this Plan.

10.2    *Treatment of Claims and Equity Interests*.   Except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided

-33-

in this Plan shall govern the rights of all Holders of Claims, whether known or unknown, against, Liens on, and Equity Interests in the Debtors or their Estates that arose prior to the Effective Date, and no such Holder shall be authorized or permitted to take any action that is inconsistent with the Plan.

10.3   *Release by Debtors of Certain Parties.*  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration provided by or on behalf of the Debtor Released Parties (including payment of the Settlement Payments), each of the Debtors and the Estates shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to the Debtor Released Parties, from any and all Causes of Action and any other claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any of the Debtors and the Estates has, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, equitable subordination, breach of fiduciary duty, contribution, indemnification, joint liability, or otherwise, or based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, including those in any way related to the Bankruptcy Cases or the Plan; provided, however, the foregoing release does not release any obligations of any Debtor Released Party under the Plan or any document, instrument or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Section 10.3, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Section 10.3 is: (i) in exchange for the good and valuable consideration provided by or on behalf of the Debtor Released Parties and is a good faith settlement and compromise; (ii) in the best interests of the Debtors and all holders of Equity Interests and Claims; (iii) fair, equitable, and reasonable; and (iv) given and made after due notice and opportunity for hearing.

10.4   *Third Party Releases*. Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration provided by or on behalf of the Creditor Released Parties (including payment of the Settlement Payments), each Releasing Party shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to each Creditor Released Party from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any Releasing Party has, based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, the Estates and their business operations,

-34-

assets and liabilities, including those in any way related to the Bankruptcy Cases or the Plan; provided, however, the foregoing release does not release any obligations of any Creditor Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan; provided, further, that if prior to or on the Effective Date, any Releasing Party has directly or indirectly brought or asserted a claim or cause of action that has been released or is contemplated to be released pursuant to the Plan against any Creditor Released Party, such Releasing Party shall withdraw and/or dismiss, with prejudice, such pending claim or cause of action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Section 10.4, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Section 10.4 is: (i) in exchange for the good and valuable consideration provided by or on behalf of the Creditor Released Parties and is a good faith settlement and compromise; (ii) in the best interests of the Debtors and all holders of Equity Interests and Claims; (iii) fair, equitable, and reasonable; and (iv) given and made after due notice and opportunity for hearing. For the avoidance of doubt, all references to Releasing Parties set forth in this Section 10.4 and elsewhere in this Plan shall have the meaning set forth in Section 1.1.105.

10.5    *ChemicaInvest Releases*. Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, each ChemicaInvest Party shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to each CIH Released Party from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any ChemicaInvest Party has, based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, the Estates and their business operations, assets and liabilities, including those in any way related to the Bankruptcy Cases or the Plan; provided, however, the foregoing release does not release any obligations of any CIH Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Section 10.5, which includes, by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute its finding that each release described in this Section 10.5 is: (i) in exchange for the good and valuable consideration provided by or on behalf of the CIH Released Parties and is a good faith settlement and compromise; (ii) in the best interests of the Debtors and all holders of Equity Interests and Claims; (iii) fair, equitable, and reasonable; and (iv) given and made after due notice and opportunity for hearing.

10.6   *Setoffs*. The Debtors may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Estates of any such claim that the Debtors or the Estates may have against such Holder.  This section is without prejudice to the setoff and recoupment rights, if any, of the Holders of Class 4 Claims.

10.7   **Exculpation and Limitation of Liability. The Debtors, the Estates, the Committee, the members of the Committee solely in their capacities as such, and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, managers, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Equity Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the filing of the Bankruptcy Cases, the negotiation, formulation, preparation, dissemination, and filing of this Plan, the pursuit of confirmation or the pursuit of approval of this Plan, the Estates, the property to be distributed under this Plan, the Disclosure Statement or any other contract, instrument, release or other agreements or documents created or entered into in connection with this Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the filing of the Bankruptcy Cases, the negotiation, formulation, preparation, dissemination and filing of this Plan, the pursuit of confirmation or the pursuit of approval of this Plan, the Estates, the property to be distributed under this Plan, the Disclosure Statement or any other contract, instrument, release or other agreements or documents created or entered into in connection with this Plan.  Nothing in this Section 10.7 relieves any Person from complying with the applicable provisions of the federal securities laws. Notwithstanding any other provision of the Plan (including the provisions of this Section 10.7), (a) the releases of liability by EPD and EPA shall be limited to Sections 10.4 (subject to Section 1.1.105) and 10.9 (to the extent Section 10.9 clarifies the releases in Section 10.4), (b) the exculpation and limitation of liability contained in this Section 10.7 extends to acts or omissions occurring from and after the Filing Date and through and including the Confirmation Date, and (c) Claims for payment of statutory fees pursuant to 28 U.S.C. §1930(a)(6) are not barred by this Section 10.7.**

10.8   **Injunction. Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate Final Order of the Bankruptcy Court, all Persons who have held, hold, or may hold Claims against or Equity Interests in any of the Debtors are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing**

DMSLIBRARY01\34076864.v4

**in any manner any action or other proceeding of any kind against the Debtors or Creditor Released Parties with respect to any such Claim or Equity Interest; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors or Creditor Released Parties on account of any such Claim or Equity Interest; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors or Creditor Released Parties or against the property or interests in the property thereof on account of any such Claim or Equity Interest; (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim which is treated or satisfied pursuant to the Plan; and (e) taking any action to interfere with the implementation or consummation of the Plan; _provided_, _however_, the provisions of this Section 10.8 shall not prevent any Person from taking action in the Bankruptcy Court to enforce their rights under and in accordance with this Plan.**

10.9    _Waiver of Statutory Limitation on Releases_.    Each Releasing Party expressly acknowledges that although ordinarily a general release may not extend to claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the releases provided under the Plan the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of granting the release, which if known by it may have materially affected its settlement with the released party.  The releases contained in this Article X are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, or foreseen or unforeseen.

10.10    _Waiver of Certain Avoidance Actions_.  On and as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall waive, and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever waived, the Waived Avoidance Actions.  The Debtors, the Committee, the Liquidating Agent, the Creditor Trustee, and other potential representatives of the Estates shall be bound, to the same extent the Debtors are bound, by the waiver set forth above.

10.11    _Vesting of Certain Causes of Action_.  Except as otherwise provided in the Plan or Confirmation Order, any and all Causes of Action that the Debtors and the Estates may hold against any Entity shall vest in the Litigation Trust on the Effective Date; _provided_, _however_, that the Net Litigation Proceeds shall be distributed to CIH and, if applicable, to the Creditor Trust (so as to permit Distributions to Holders of Allowed Class 4 General Unsecured Claims pursuant to section 3.4 of the Plan).  Except as otherwise provided in the Plan (including Section 9.6) or the Confirmation Order, (x) any and all Applicable ELT Insurance Causes of Action that the Debtors and the Estates may hold against any Entity shall vest in ELT on the Effective Date; and (y) any and all Applicable CIH Insurance Causes of Action that the Debtors and the Estates may hold against any Entity shall vest in CIH on the Effective Date; _provided_, _however_, that, in each case, the Net Litigation Proceeds shall be distributed to CIH and, if applicable, to the Creditor Trust (so as to permit Distributions to Holders of Allowed Class 4 General Unsecured Claims pursuant to section 3.4 of the Plan).  Except as otherwise provided in the Plan or Confirmation Order, any and all DSM SPA Causes of Action that the Debtors and the Estates may hold against

DMSLIBRARY01\34076864.v4

any Entity shall vest in CIH on the Effective Date; provided, however, that the Net Litigation Proceeds shall be distributed to CIH and, if applicable, to the Creditor Trust (so as to permit Distributions to Holders of Allowed Class 4 General Unsecured Claims pursuant to section 3.4 of the Plan).

10.12   *Preservation of All Causes of Action Not Expressly Settled or Released.*  Unless a claim, action, cause of action, suit, chose in action or right to payment against any Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such claim, action, cause of action, suit, chose in action or right to payment for later adjudication or administration (including claims, actions, causes of action, suits, choses in action or rights to payment not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, actions, causes of action, suits, choses in action or rights to payment upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such claims, actions, causes of action, suits, choses in action or rights to payment have been released in the Plan (including, for the avoidance of doubt, the releases contained in Section 10.3) or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

10.13   *Effect of Confirmation.*

10.13.1   *Binding Effect.*  On the Confirmation Date, the provisions of this Plan shall be binding on the Debtors, the Estates, all Holders of Claims against or Equity Interests in the Debtors, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan.

10.13.2   *Automatic Stay.*  The automatic stay arising out of section 362(a) of the Bankruptcy Code shall continue in full force and effect until the Consummation Date and the Debtors and the Estates shall be entitled to all of the protections afforded thereby.  All assets of the Debtors (including the GUC Funds, Liquidation Proceeds and the Retained Proceeds) shall remain property of the Estates until distributed in accordance with this Plan, and no Person shall at any time have any claim to or interest in any asset of the Debtors except to the extent that such Person is the Holder of an Allowed Claim entitled to Distributions under this Plan.

10.13.3   *Filing of Reports.*  Notwithstanding any provision in this Plan to the contrary, quarterly disbursement reports shall be filed in the Bankruptcy Cases until such time as the Bankruptcy Cases are closed, converted to Chapter 7, or dismissed.  All fees required to be paid by 28 U.S.C. §1930(a)(6) ("US Trustee Fees") will accrue and be timely paid until the Bankruptcy Cases are closed, dismissed or converted to another chapter of the Bankruptcy Code. Any US Trustee Fees that are due and owing as of the Effective Date will be paid on the

DMSLIBRARY01\34076864.v4

Effective Date.  From and after the Effective Date, the Liquidating Agent shall file the reports and cause the Estates to pay the US Trustee Fees as contemplated by this Section 10.13.3.

10.13.4    *Post-Effective Date Retention of Professionals*.  Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtors and the Liquidating Agent will employ and pay professionals (to be paid from Retained Proceeds), and the Creditor Trustee will employ its professionals (to be paid from the Creditor Trust Reserve or GUC Funds), in each case in the ordinary course of business.

10.14  *No Discharge*.  Notwithstanding any other provision of the Plan or Confirmation Order, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors will not receive a discharge.

## ARTICLE XI
## Conditions Precedent

11.1  *Conditions to Confirmation*. The following are conditions precedent to confirmation of this Plan that may be satisfied or waived in accordance with Section 11.3 of this Plan:

11.1.1    The Bankruptcy Court shall have entered the Disclosure Statement Order in form and substance acceptable to the ChemicaInvest Parties and the Debtors in their sole and absolute discretion approving the Disclosure Statement, which shall be in form and substance acceptable to the ChemicaInvest Parties and the Debtors in their sole and absolute discretion, and

11.1.2    The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the ChemicaInvest Parties and the Debtors in their sole and absolute discretion and reasonably acceptable to the Committee and entered on the docket of the Bankruptcy Cases.

11.2  *Conditions to the Effective Date*. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Section 11.3 of this Plan:

11.2.1    The Confirmation Order shall have been entered by the Bankruptcy Court and shall be in form and substance acceptable to the ChemicaInvest Parties and the Debtors in their sole and absolute discretion, and reasonably acceptable to the Committee, shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed;

11.2.2    The ELT Transaction shall have been consummated;

11.2.3    The Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order; and

11.2.4    **[DELETED INTENTIONALLY]**

-39-

DMSLIBRARY01\34076864.v4

11.2.5    The Confirmation Order shall have become a Final Order.

11.3    *Waiver of Conditions to Confirmation or Effective Date.*  The conditions set forth in Sections 11.1 and 11.2 of this Plan may be waived in writing, in whole or in part, with the consent of the Committee, the Debtors and the ChemicaInvest Parties without any notice to any other parties in interest or the Bankruptcy Court and without a hearing; provided that the consent of the Committee shall not be unreasonably withheld.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by the Debtors or ChemicaInvest Parties in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or ChemicaInvest Parties). The failure of the Debtors and the ChemicaInvest Parties to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE XII
## Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1    *Retention of Jurisdiction.* Subsequent to the Effective Date, to the extent consistent with 28 U.S.C. § 1334, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1    To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2    To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, and to establish the amount of any reserve required to be withheld from any Distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3    To resolve all matters related to the rejection, or assumption and/or assignment, of any Executory Contract or Unexpired Lease of the Debtors;

12.1.4    To hear and rule upon all Causes of Action, Applicable CIH Insurance Causes of Action, Applicable ELT Insurance Causes of Action, or DSM SPA Causes of Action, in each case as commenced or pursued by the Debtors, the Liquidating Agent, the Litigation Trust, CIH or ELT, as applicable;

12.1.5    To hear and rule upon all applications for Professional Compensation;

12.1.6    To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7    To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Code;

DMSLIBRARY01\34076864.v4

12.1.8    To hear, rule upon and enter orders approving any sales of Assets (including sales of fee owned real property) by the Debtors after the Effective Date;

12.1.9    To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan, including any disputes that may arise between the Liquidating Agent, CIH and/or the Creditor Trustee;

12.1.10    To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estates and the payment of Claims;

12.1.11    To determine any suit or proceeding brought by the Debtors or the Liquidating Agent to recover property under any provisions of the Bankruptcy Code;

12.1.12    To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under this Plan;

12.1.13    To hear, rule upon and enter orders regarding any disputes, controversies or other matters relating to or arising under the ELT Property Transfer Agreement, the Environmental Remediation Trust Agreement, the Litigation Trust Agreement and/or the Debtors' rights thereunder;

12.1.14    To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.15    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.16    To decide or resolve any motions, adversary proceedings, contested or litigated matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Agent after the Effective Date.

12.1.17    To enforce the releases contained in Sections 10.3, 10.4, 10.5 and 10.7 hereof.

12.1.18    To enforce the injunction set forth in Section 10.8 hereof.

12.1.19    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of their assets during the Bankruptcy Cases; and

12.1.20    To enter a final decree closing the Bankruptcy Cases.

12.2    *Alternative Jurisdiction.*  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If

DMSLIBRARY01\34076864.v4

the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3     *Final Decree.* The Bankruptcy Court may, upon application of the Liquidating Agent after Designated Notice, at any time on or after one hundred twenty (120) days after the Initial Distribution Date, enter a final decree in these cases, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.   In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code; provided, however, that: (a) the Debtors, the Liquidating Agent, the Creditor Trustee and other parties in interest shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Cases if appropriate for any of the following purposes:  (i) administering Assets; (ii) entertaining any adversary proceedings, contested matters or applications the Debtors, the Liquidating Agent, ELT or CIH have brought or bring with regard to the liquidation of Assets or the prosecution of Applicable Causes of Action or DSM SPA Causes of Action; (iii) enforcing or interpreting this Plan or supervising its implementation; (iv) enforcing, interpreting or supervising the implementation of the ELT Property Transfer Agreement, the Environmental Trust Agreement or the Litigation Trust Agreement; or (v) for other cause.

## ARTICLE XIII
## The Creditor Trustee

13.1     *Appointment.* On the Effective Date, the Committee's appointment of the Creditor Trustee shall become effective, and the Creditor Trustee shall be authorized to perform his duties under this Plan and Creditor Trust Agreement, including making distributions to Holders of Allowed Class 4 General Unsecured Claims, objecting to the Disputed Claims listed in Schedule 1, and overseeing the actions of the Liquidating Agent, the Litigation Trust, and CIH under the Plan.

13.2     *Retention of Professionals.* The Creditor Trustee may retain professionals and the reasonable fees and expenses of such professionals shall be paid out of the Creditor Trust Reserve, without the necessity of obtaining any approval from the Bankruptcy Court or providing notice to any party in interest with respect to such retention or payment.

13.3     *Limited Liability.* Neither the Creditor Trustee nor its counsel shall be liable for anything other than its own acts or omissions as constitute willful misconduct or gross negligence in the performance of its duties.  The Creditor Trustee shall be indemnified and held harmless by the Estates from and against any expenses (including the reasonable fees and expenses of counsel), damages, liabilities, claims or losses incurred or suffered by the Creditor Trustee in connection with any claim or demand which in any way arises out of or relates to this Plan and Creditor Trust Agreement or the services of the Creditor Trustee under this Plan and Creditor Trust Agreement; provided, however, if the Creditor Trustee is determined to be guilty of defalcation, misappropriation, fraud or gross negligence by a Final Order of a court of competent jurisdiction, then the Creditor Trustee shall bear all losses, damages and expenses arising as a result of such defalcation, misappropriation, fraud or gross negligence.

-42-

13.4    *Authority.* Consistent with the terms of this Plan and Creditor Trust Agreement, the Creditor Trustee shall have the authority to (i) review the activities of the Liquidating Agent; (ii) seek to remove and replace the Liquidating Agent for good cause shown; provided, however, any removal or replacement of the Liquidating Agent shall require approval of the Bankruptcy Court following Designated Notice and the removal or replacement of the Liquidating Agent shall not be effective unless the Liquidating Agent shall have received at least 30 days' advance written notice of such proposed removal or replacement; (iii) object to Class 4 Claims (other than those listed as Allowed in Schedule 1); (iv) establish a reserve for payment of any Disputed Claims in Class 4; and (v) make Distributions to Holders of Allowed Class 4 Claims in accordance with the terms of this Plan.

13.5    *Reporting.* The Liquidating Agent shall submit quarterly reports to the Creditor Trustee, which shall detail, among other things, the key activities undertaken and fees incurred by the Liquidating Agent in connection with this Plan during the reporting period. The Liquidating Agent shall also promptly report to the Creditor Trustee, at the reasonable request of the Creditor Trustee or counsel retained by the Creditor Trustee, on any matter that reasonably relates to the post-Effective Date administration of the Estates or Distributions under the Plan. In the event that a portion of the Net Litigation Proceeds are required to be added to the GUC Funds, and only until the earlier of the aggregate amount of GUC Funds is $7 million or the Litigation Trustee, CIH, and ELT determine not to pursue any remaining Applicable Causes of Action, Applicable CIH Insurance Causes of Action and DSM SPA Causes of Action, CIH shall be required to (i) submit quarterly reports to the Creditor Trustee which shall detail, among other things, the key activities taken by the Litigation Trustee, CIH or ELT, as applicable, in connection with this Plan and the Litigation Trust Agreement, and (ii) provide the Creditor Trustee with notice of seven (7) days or, if not practicable under the circumstances, such other notice as is reasonably practicable, of any proposed settlement of any Causes of Action of the Litigation Trust, including the key terms of such proposed settlement, and shall consult to the extent reasonably practicable with the Creditor Trustee regarding such proposed settlement and the distribution of any Net Litigation Proceeds thereof; provided, however, that CIH and ELT, as applicable shall not be required to disclose any information subject to attorney-client privilege, attorney work product protection, or other applicable privileges or protections.

13.6    *Compensation and Reimbursement.* The Creditor Trustee shall be entitled to payment of fees and reimbursement of expenses to be paid from the Creditor Trust Reserve or GUC Funds (as applicable).

13.7    *Replacement of Creditor Trustee.* In the event that the Creditor Trustee resigns or is otherwise removed, the Bankruptcy Court shall appoint a replacement to fulfill the duties of the Creditor Trustee under this Plan on motion by an interested party.

13.8    *Discharge of Creditor Trustee.* Effective as of the Consummation Date, the Creditor Trustee shall be discharged of its duties and responsibilities under this Plan and Creditor Trust Agreement.

DMSLIBRARY01\34076864.v4

## ARTICLE XIV
## Miscellaneous Provisions

14.1    *Modification of this Plan*.  The Debtors may modify this Plan with the prior written consent of the ChemicaInvest Parties pursuant to section 1127 of the Bankruptcy Code and as herein provided, to the extent applicable law permits.  The Debtors may modify this Plan with the prior written consent of the ChemicaInvest Parties in accordance with this paragraph, before or after confirmation, upon notice to the Creditor Trustee only, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.  In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes.  The Debtors reserve the right in accordance with section 1127 of the Bankruptcy Code to modify this Plan with the prior written consent of the ChemicaInvest Parties at any time before the Confirmation Date.

14.2    *Allocation of Plan Distributions Between Principal and Interest*. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

14.3    *Creditors' Committee*. On the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Bankruptcy Cases and under the Bankruptcy Code; provided, however, notwithstanding the foregoing, the Committee shall continue to exist for the limited purpose of filing appropriate fee applications or requests for expense reimbursements.

14.4    *Applicable Law*.  Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

14.5    *Preparation of Estates' Returns and Resolution of Tax Claims.*  The Debtors or the Liquidating Agent shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505 of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.6    *Headings*.  The headings of the Articles and the sections of this Plan have been used for convenience of reference only and shall not limit or otherwise affect the meaning of this Plan.  Whenever the words "include," "includes" or "including" (or other words of similar import) are used in this Plan, they shall be deemed to be followed by the words "without limitation."

-44-

14.7    *Revocation of Plan*. The Debtors reserve the right, unilaterally and unconditionally, to revoke or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation or withdrawal this Plan shall be deemed null and void and of no force or effect.

14.8    *Confirmation of Plans for Separate Debtors*. In the event the Debtors are unable to confirm this Plan with respect to all Debtors, the Debtors reserve the right, unconditionally, with the prior written consent of the ChemicaInvest Parties to proceed with this Plan with respect to any Debtor for which the confirmation requirements of the Bankruptcy Code are met.

14.9    *No Admissions; Objection to Claims*.  Nothing in this Plan shall be deemed to constitute an admission that any Person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan.  The failure of the Debtors to object to or examine any Claim for purposes of voting shall not be deemed a waiver of the Debtors' rights to object to or reexamine such Claim in whole or in part (including for purposes of Distribution).

14.10   *No Bar to Suits*.  Except as otherwise provided in Article X of this Plan, neither this Plan nor confirmation hereof shall operate to bar or estop the Liquidating Agent, the Estates, the Litigation Trust, ELT, the Debtors, or the ChemicaInvest Parties from commencing any cause of action or any other legal action against any Holder of a Claim or Equity Interest or any other Person, whether such cause of action or other legal action arose prior to or after the Confirmation Date and whether or not the existence of such cause of action or any other legal action was disclosed in any disclosure statement filed by the Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim or Equity Interest.

14.11   *Exhibits/Schedules*. All exhibits and schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

14.12   *Conflicts*. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern and control.

14.13   *Notices*.  Any notice required or permitted to be provided to the Debtors, the Liquidating Agent, the Creditor Trustee or the ChemicaInvest Parties under this Plan shall be in writing and served by overnight courier service, facsimile transmission or certified mail, return receipt requested, addressed as follows:

<u>Debtors and/or Liquidating Agent for the Debtors:</u>

Fibrant, LLC
c/o Alvarez & Marsal North America, LLC
Monarch Tower
3424 Peachtree Road NE, Suite 1500
Atlanta, Georgia, 30326
Attn:  Lawrence Hirsh
Email: lhirsh@alvarezandmarsal.com

with a copy to (which shall not constitute notice):

DMSLIBRARY01\34076864.v4

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Attn: Paul Ferdinands
Email: pferdinands@kslaw.com

The Creditor Trustee:

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Attn: Jeffrey D. Prol
Email: jprol@lowenstein.com

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Attn: Bruce S. Nathan
Email: bnathan@lowenstein.com

GlassRatner Advisory & Capital Group, LLC
3445 Peachtree Road, Suite 1225
Atlanta, GA 30326
Attn: Joseph V. Pegnia
Email: jpegnia@glassratner.com

The ChemicaInvest Parties:

c/o ChemicaInvest Holding B.V.
Mauritslaan 49, 6129 EL Urmond
The Netherlands
Attn: Jean-Paul Van de Velde
Email: jean-paul.velde-van-de@chemicainvest.com

with copies to (which shall not constitute notice):

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Gary Gengel, Adam J. Goldberg
Email: gary.gengel@lw.com, adam.goldberg@lw.com

Scroggins & Williamson, P.C.
4401 Northside Parkway, Suite 450
Atlanta, Georgia 30327

-46-

Attn: Matthew Levin
Email: mlevin@swlawfirm.com

14.14   *Section 1125 of the Bankruptcy Code.* The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Debtors have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Debtors (and each of their respective Affiliates, officers, directors, managers, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and/or purchase of any securities offered or sold under this Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time on account of such solicitation or participation for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of any securities offered or sold under this Plan.

14.15   *Severability.* Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of this Plan other than Section 10.3 or 10.4 is either illegal on its face or illegal as applied to any Claim or Equity Interest, such provision shall be unenforceable as to all Holders of Claims or Equity Interests or to the specific Holder of such Claim or Equity Interest, as the case may be, as to which such provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.  The Debtors and the ChemicaInvest Parties reserve the right not to proceed with Confirmation or consummation of this Plan if any such ruling occurs.

14.16   *Designated Notice.*  Notwithstanding any other provision of this Plan, when notice and a hearing is required with regard to any action to be taken after the Confirmation Date by the Debtors and/or the Liquidating Agent, Designated Notice shall be adequate.

14.17   *Employee Records.*   On or after the Effective Date of the Plan, the Debtors will transfer their employee and human resources records regarding their former employees to a DSM Entity, pursuant to a data transfer agreement.  The Debtors shall use commercially reasonable efforts to ensure that the data transfer agreement provides that such DSM Entity will be obligated (i) to keep the records confidential, (ii) to comply with all federal, state and local laws regarding the records, (iii) to use the employee information only in connection with providing services and benefits to participants under DSM's defined benefit pension plan, (iv) to protect the information through a business associate agreement, and (v) to allow the Debtors reasonable access to the records during normal business hours to allow the Debtors to comply with any legal obligations they may have.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the transfer of the employee records to such DSM Entity.

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

[SIGNATURE PAGE FOLLOWS]

DMSLIBRARY01\34076864.v4

Dated as of this ——22nd day of May, 2019.

Respectfully submitted,

**FIBRANT, LLC**

By: */s/ David Leach*_____
　　David Leach
　　President and General Manager

**EVERGREEN NYLON RECYCLING, LLC**

By: */s/ David Leach*_____
　　David Leach
　　President

**FIBRANT SOUTH CENTER, LLC**

By: */s/ David Leach*_____
　　David Leach
　　President

**GEORGIA MONOMERS COMPANY, LLC**

By: */s/ David Leach*_____
　　David Leach
　　President

-48-

DMSLIBRARY01\34076864.v4

**KING & SPALDING LLP**

*/s/ Paul K. Ferdinands*
Paul K. Ferdinands
Georgia Bar No. 258623
pferdinands@kslaw.com
Jonathan W. Jordan
Georgia Bar No. 404874
jjordan@kslaw.com
Ann R. Carroll
Georgia Bar No. 127813
acarroll@kslaw.com
Sarah L. Primrose
Georgia Bar No. 532582
sprimrose@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

And

**KLOSINSKI OVERSTREET, LLP**

James C. Overstreet Jr.
Georgia Bar No. 556005
jco@klosinski.com
1229 Augusta West Parkway
Augusta, GA 30909
Telephone:  (706) 863-2255
Facsimile:  (706) 863-5885


**COUNSEL FOR THE
DEBTORS-IN-POSSESSION**

DMSLIBRARY01\34076864.v4

**Schedule 1**

| Creditor | Claim |
|---|---|
| ADS Security LP | $ 790 |
| AIG | 39,822 |
| Advanced Disposal Services | 7,133 |
| Advansix, Inc. | 1,016 |
| Airgas USA, LLC | 5,338 |
| Allied Universal Security Services | 735 |
| American Railcar Leasing, LLC | 1,650,000 |
| Ascentis Corporation | 2,647 |
| Augusta Chiller Service Inc | 4,317 |
| Augusta Data Storage Inc. | 131 |
| Augusta Utilities Department | 9,041 |
| Austin Maintenance & Construction, Inc. | 2,784 |
| Bank of America | 45,997 |
| Blue Ridge Railcar Repair LLC | 4,211 |
| BMSI Packaging Services, Inc. | 323,695 |
| Century 3 Inc. | 19,474 |
| Chemtrade (F/K/A General Chemicals) | 16,223,768 |
| Cherry Bekaert | 14,863 |
| Chevron Phillips Chemical Co. LP | 5,930,004 |
| Control Southern Inc. | 114,440 |
| Covanta Environmental Solutions LLC. | 1,990 |
| Cranston Engineering Group, P.C. | 5,000 |
| Crawford's Contracting Services | 1,163 |
| Csra Analytical Laboratories Inc | 4,348 |
| CSX Transportation, Inc. | 2,090 |
| Deloitte Tax Llp | 22,089 |
| Earthlink Business | 8,230 |
| Emerson Process | 468,772 |
| Environmental Operating Solutions Inc. | 8,974 |
| Estate of Malcolm Baxley | 500,000 (less insurance recoveries) |
| Ferguson Enterprises | 11,168 |
| Flint Hills Resources, LP | 713,112 |
| GATX Rail / A Division of GATX | 5,707,425 |
| Georgia Power | 124,946 |
| Geosyntec Consultants, Inc. | 7,394 |
| Giffin Gear Inc. | 43,050 |
| Greatamerica Financial Services | 2,620 |
| Haver & Boecker Usa | 1,513 |
| Herc Rentals Inc. | 2,707 |
| Hoerbiger Service Inc. | 28,526 |
| Hood Packaging Corporation | 52,748 |
| Horne Label & Printing | 30,705 |
| IDG USA LLC | 897 |
| Industrial Kiln & Dryer Group, Inc. | 18,165 |
| Internal Revenue Service (General Unsecured portion) | 3,712 |
| Interstate Commodities (RM Railcar) | 3,363,026 |

**Schedule 1**

| Creditor | Claim |
|---|---|
| J&H Equipment, Inc. | 741 |
| Kevin R. Boyle | 39 |
| Koch Rail LLC | 125,400 |
| Kunkle Oil Co., Inc | 1,392 |
| Linde, Inc. (F/K/A The BOC Group, Inc.) | 2,328,459 |
| LWD Group Escrow Account | 26,050 |
| Maxim Crane Works LP | 850 |
| MECS, Inc | 14,937 |
| Midwest Railcar Corporation | 28,200 |
| Mobile Mini Tank & Pump Solutions | 1,043 |
| MRC Global, Inc. | 32,224 |
| Nanjing Baose Co. Ltd | 113,141 |
| Nexair, LLC | 2,321 |
| Onion Enterprise | 57,950 |
| Payneless Enterprises LLC | 2,681 |
| PCS Nitrogen, Inc. | 606,253.76 |
| Pollock Financial Services Inc. | 3,987 |
| Process Equipment Inc. | 12,149 |
| Rawson, Inc. | 64,007 |
| Safety-Kleen/Cleanharbors | 4,611 |
| SGS North America, Inc. | 3,672 |
| Southeast Railcar, Inc. | 27,238 |
| Spok, Inc. | 35 |
| The Great Walton Railroad Co., Inc. | 3,240 |
| Thompson Industrial Services LLC | 20,945 |
| United Rentals (North America) Inc. | 871 |
| United Technology Group, LLC | 9,563 |
| Vallen Distribution, Inc. | 638 |
| Veenschoten And Company | 152,010 |
| Weathers Commercial Fleet | 1,070 |
| Windstream | 4,158 |
| | $ 39,184,448.76 |

DMSLIBRARY01\34076864.v4

## Schedule 2

### Executory Contracts and Unexpired Leases Assumed and Assigned to ELT

The following contracts and leases will be assumed and assigned by the Debtors pursuant to the Plan:

1. Amended and Restated Lease dated September 1, 2017 by and between Fibrant, LLC and DSM Coating Resins, Inc. (Sch. G. 2.20)

2. Memorandum of Lease dated September 1, 2017 by and between Fibrant, LLC and DSM Coating Resins, Inc. (Sch. G. 2.23)

3. Easement and Maintenance Agreement dated September 1, 2017 by and between Fibrant, LLC and DSM Coating Resins, Inc. (Sch. G. 2.22)

4. Ground Lease between Fibrant, LLC and Praxair, Inc. dated October 16, 2018

## Schedule 3

**Executory Contracts and Unexpired Leases Assumed by Debtors**

1. Augusta Sulfate Company, LLC: Settlement Agreement dated January 1, 2018 (Schedule G, 2.104)

2. Kevin Boyle: Agreement (Schedule G, 2.64)

3. Univar USA Inc.:  License Agreement dated March 20, 2017 between Fibrant and Univar and Declaration of Easement dated August 26, 2005 executed by Fibrant in favor of Univar.

## Schedule 4

### Applicable Insurance Policies

The Applicable Insurance (as defined in Section 1.1.7 of the Plan) includes the following insurance policies ~~will be transferred by the Debtors pursuant to the Plan~~:

1. Admiral Insurance Company ~~1981-92 Primary~~(2/1/75) – Policy ~~(Sch. G. 2.86)~~No. 5 CG 0071

2. Admiral Insurance Company (4/1/81) – A1 CM 2315

3. Admiral Insurance Company (4/1/82) – A2 CM 2956

4. Admiral Insurance Company (4/1/83) – A3 CM 3088

5. ~~2.~~ AIG 500 12 84 (2/1/76) (Sch. G. 2.87)

6. ~~3.~~ AIG 500 17 87 (4/1/77) (Sch. G. 2.87)

7. ~~4.~~ AIG 551 31 62 (4/1/80) (Sch. G. 2.87)

8. ~~5.~~ AIG 1168554 (4/1/76) (Sch. G. 2.87)

9. ~~6.~~ AIG ~~1976~~1975-76 Umbrella Policy (Sch. G. 2.87)

10. ~~7.~~ Allstate Insurance 63 007 805 (4/1/81) (Sch. G. 2.88)

11. ~~8. Chubb and Brandywine Holdings (INA)~~Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America XBC 15 43 69 (4/1/~~84~~1984 – 4/1/1985) (Sch. G. 2.89)

12. ~~9. Chubb and Brandywine Holdings (INA)~~Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America XBC G00021623 (~~4/1/85~~3/31/1985 - 3/31/1986) (Sch. G. 2.89)

13. ~~10. Chubb and Brandywine Holdings (INA)~~Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America XBC G00021647 (3/31/~~85~~1985 - 3/31/1986) (Sch. G. 2.89)

14. ~~11. Cigna~~Century Indemnity Company, as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company: ZCX 00 61 89 (4/1/~~82~~1982 – 4/1/1983) (Sch. G. 2.90)

15. ~~12. Cigna~~Century Indemnity Company, as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company: ZCX 00 65 15 (4/1/~~83~~1983 - 4/1/1984) (Sch. G. 2.90)

16. ~~13. Cigna~~Century Indemnity Company, as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company: ZCX 00 69 53 (3/31/~~85~~1985 – 3/31/1986) (Sch. G. 2.90)

17. 14. CignaCentury Indemnity Company, as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company: ZCX 00 79 4247 (3/31/851985 – 3/31/1986) (Sch. G. 2.90)

18. 15. CignaCentury Indemnity Company, as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company: ZCX 00 79 48 (3/31/851985 – 3/31/1986) (Sch. G. 2.90)

19. 16. CNA 968 21 95 (1/1/73) (Sch. G. 2.91)

20. 17. CNA 988 31 59 (1/1/74) (Sch. G. 2.91)

21. 18. CNA GLA 467668 (4/1/76) (Sch. G. 2.91)

22. 19. CNA 416 99 91 (4/1/80) (Sch. G. 2.91)

23. 20. CNA 917 65 61 (3/31/85) (Sch. G. 2.91)

24. 21. Crum and FosterUnited States Fire Insurance Company GLA 28 40 22 (2/1/761976 – 4/1/1977) (Sch. G. 2.92)

25. 22. Crum and Foster XS 2951 (4/1/76) (Sch. G. 2.92)

23. Crum and Foster XS 2951 (4/1/76) (Sch. G. 2.92)

26. 24. Crum and Foster 540 079751 GLA 28 40 22 (4/1/77United States Fire Insurance Company 540 0797517 (4/1/1977 – 4/1/1978) (Sch. G. 2.92)

27. 25. Crum and Foster XS 2973 (4/1/77) (Sch. G. 2.92)

28. 26. Crum and Foster 540 189362 GLA 28 40 227 (4/1/78) (Sch. G. 2.92)

29. 27. Crum and Foster 1975-76 Primary Policy (Sch. G. 2.92)

30. 28. Crum and Foster GLA 46 77 45 (5/1/78) (Sch. G. 2.92)

31. 29. Harbor Insurance Company 1976-77 Excess Policy 122409 (Sch. G. 2.93)

32. 30. Harbor Insurance Company 1977-78 (Sch. G. 2.93)

33. 31. Hartford 904403902403 (5/1/75) (Sch. G. 2.94)

34. 32. Hartford 945396 (4/1/80) (Sch. G. 2.94)

35. 33. Hartford 903060 (umbrella 1976-77) (Sch. G. 2.94)

36. Hartford 948534 (umbrella 4/1/81)

37. 34. Home Insurance Company 9 63 15 32 (8/24/79) (Sch. G. 2.95)

38. 35. Home Insurance Company 1 47 15 35 (4/1/84) (Sch. G. 2.95)

39. 36. Liberty Mutual 5376 00 102718 (3/31/85) (Sch. G. 2.96)

40. 37. Lloyd's L 64E 2 120A (2/13/64) (Sch. G. 2.97)

41. 38. Lloyd's L 65E 2 102 (2/13/65) (Sch. G. 2.97)

42. 39. Lloyd's 65E 2 102A 65 10754 3 BB 402286 (2/13/65) (Sch. G. 2.97)

DMSLIBRARY01\34076864.v4

43. 40. Lloyd's L 68E 1 162 68 10754 2 B-14449 (2/13/68) (Sch. G. 2.97)

44. 41. Lloyd's L 68E 1 162A 68 10754 3 B 14450 (2/13/68) (Sch. G. 2.97)

45. 42. Lloyd's C 71E 3 1119119 (2/13/71) (Sch. G. 2.97)

46. 43. Lloyd's 1964-65 Umbrella Policy (Sch. G. 2.97)

47. 44. Lloyd's 1985-86 Excess Policy (Sch. G. 2.97)

48. 45. Mt. McKinley GSL 00005 (4/1/79) (Sch. G. 2.98)

49. 46. Mt. McKinley GSL 00106 (4/1/80) (Sch. G. 2.98)

50. 47. Protective National Insurance 1982-83 Umbrella Policy (Sch. G. 2.99)

51. 48. Protective National Insurance 1983-84 Umbrella Policy (Sch. G. 2.99)

49. Resolute Management claims management (Sch. G. 2.100)

52. 50. Starr Indemnity CDU-1583 (4/1/78) (Sch. G. 2.101)

53. 51. Starr Indemnity CDU-15832583 (4/1/79) (Sch. G. 2.101)

54. 52. Starr Indemnity CDU-6578 (6/15/81) (Sch. G. 2.101)

53. Travelers Casualty and Surety Company/Aetna CG 35 02 59 (1/1/71)

54. Travelers Casualty and Surety Company/Aetna 45 AET 11089/45 AF 181029 (6/1/85) (Sch. G. 2.102)

55. Travelers Casualty and Surety Company/Aetna 1964-65 Primary Policy (Sch. G. 2.102)ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company CG 35 02 59 (1/1/1971 – 1/1/1972)

56. ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company CG 14 03 05 (1/1/1972 – 1/1/1973)

57. ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 1964-65 Policy (Sch. G. 2.102)

58. ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 1964-65 Policy (Sch. G. 2.102)

59. 56. Travelers Casualty and Surety Company/ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 1965-68 Primary Policy (Sch. G. 2.102)

60. 57. Travelers Casualty and Surety Company/ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 1968-71 Primary70 Policy (Sch. G. 2.102)

3

61. ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company CG 26 80 80 (1/1/1970 – 1/1/1971)

62. 58. Travelers Casualty and Surety Company/St. Paul Mercury L18-1029/ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 41 AF 181029 (6/1/841983) (Sch. G. 2.102)

63. ACE Property & Casualty Insurance Company, formerly known as CIGNA Property and Casualty Insurance Company, formerly known as Aetna Insurance Company 45 AET 11089 (6/1/1985) (Sch. G. 2.102)

64. 59. Zurich International 72, 538-85-C (3/31/85) (Sch. G. 2.103)

4

Document comparison by Workshare Compare on Thursday, May 23, 2019 11:37:28 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMSLIBRARY/DMSLIBRARY01/34076864/4 |
| Description | #34076864v4<DMSLIBRARY01> - Fibrant -  Second Amended Plan |
| Document 2 ID | interwovenSite://DMSLIBRARY/DMSLIBRARY01/34076864/7 |
| Description | #34076864v7<DMSLIBRARY01> - Fibrant -  Second Amended Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 126 |
| Deletions | 103 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 229 |
|---|---|

Exhibit "B"

K&S Draft 5/17/2019

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIBRANT, LLC, *et al.,* [1] | ) | Case No. 18-10274 (SDB) |
| | ) | |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER CONFIRMING THE SECOND AMENDED AND
RESTATED PLAN OF LIQUIDATION DATED AS OF
MAY 22, 2019 FILED BY THE DEBTORS

Fibrant, LLC and its affiliated debtors-in-possession (collectively, "Debtors") filed with

this Court their voluntary petitions for relief under Chapter 11 of Title 11, United States Code, 11

U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), on February 23, 2018 (the "Petition Date").   On

February 13, 2019, the Debtors filed the *Disclosure Statement for Amended and Restated Plan of*

*Liquidation Filed by Fibrant, LLC, et al.* [Docket No. 601] (the "Disclosure Statement").   On

_____

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Fibrant, LLC (6694); Evergreen Nylon Recycling, LLC (7625);
Fibrant South Center, LLC (8270); and Georgia Monomers Company, LLC (0042).

34056355.v12

May ~~——~~23, 2019, the Debtors filed their *Second Amended and Restated Plan of Liquidation for Fibrant, LLC, et al.* [Docket No. _____] (as amended and modified to date, the "Plan").[2] On February 7, 2019, the Court conducted a hearing on approval of the Disclosure Statement, and on February 14, 2019, the Court entered the *Order Approving (I) the Disclosure Statement with Respect to Amended and Restated Plan of Liquidation; (II) Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; and (III) Related Notice and Objection Procedures* [Docket No. 604] (the "Disclosure Statement Approval Order"). The Disclosure Statement Approval Order, among other things: (i) approved the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code; (ii) approved the solicitation procedures for the solicitation of votes on the Plan; (iii) fixed April 5, 2019 as the date by which all ballots to accept or reject the Plan must be received (the "Voting Deadline"); (iv) fixed April 5, 2019 as the last day for creditors and other parties in interest to file objections to confirmation of the Plan (the "Objection Deadline"); (v) scheduled a hearing to consider confirmation of the Plan for April 17, 2019 (the "Confirmation Hearing"); and (vi) prescribed the form and manner of notice with respect to the foregoing.

The Plan provides for equitable and prompt Distributions to creditors of the Debtors and preserves the value of the Estates. The Debtors and the Committee have stated their respective opinions that, under the circumstances of these Bankruptcy Cases, the Plan represents the best possible outcome for all of the Debtors' stakeholders.

The Confirmation Hearing was adjourned by the Court and was held on May 22, 2019. After having conducted the Confirmation Hearing, reviewed any objections, considered the

---

[2] All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Plan.

evidence, exhibits, and records, and considered any remaining objections and arguments of counsel,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS**:

A.      <u>Jurisdiction</u>.   The Court has jurisdiction over the Bankruptcy Cases and the subject matter of the Confirmation Hearing pursuant to 28 U.S.C. §§ 157 and 1334.   Plan confirmation is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter this Confirmation Order with respect thereto.   The Debtors are eligible for relief under Section 109 of the Bankruptcy Code.

B.      <u>Venue</u>.   Venue of the Bankruptcy Cases and the subject matter of the Confirmation Hearing are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      <u>Judicial Notice</u>.   This Court takes judicial notice of the docket of the Bankruptcy Cases maintained by the Clerk of the Court, including all pleadings, all documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of the Bankruptcy Cases.

D.      <u>Voting Solicitation</u>.   In conformance with Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Debtors solicited votes on the Plan by distributing the following documents to Holders of Claims in Class 3 and Class 4: (i) the Confirmation Hearing Notice (as defined below); (ii) a Ballot for voting on the Plan; (iii) a pre-addressed and postage paid return envelope for the Ballot; and (iv) a flash drive containing copies of the Disclosure Statement (which included the Plan as an Exhibit) and the Disclosure Statement Approval Order.   Holders of Claims in Class 4 also received a copy of the letter from the Committee supporting the Plan.   In addition, Ballots were supplied to each Person requesting a Ballot who did not otherwise receive a Ballot.

- 3-

E.     Notice.   Notice of the Confirmation Hearing, the Voting Deadline, and the Objection Deadline was served in conformance with Rules 2002, 3017, and 3020.  The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).   As directed by the Disclosure Statement Approval Order, the following Persons were served with the following indicated materials:

1.  All Holders of Class 3 Claims received a transmittal letter; a Class 3 Ballot; a USB flash drive containing the Plan, the Disclosure Statement and the Disclosure Statement Approval Order; the Court-approved notice of the confirmation hearing, objection deadlines, Rule 3018(a) motion deadline, a bold, all-capitalized notice that states that the Plan contains release, injunction and exculpation provisions, and provides notice to former employees of the Debtors regarding the transfer of records to another entity (the "Confirmation Hearing Notice"); and a return envelope.

2.  All Holders of Class 4 Claims received a transmittal letter; a Class 4 Ballot; a letter of support from the Committee; a USB flash drive containing the Plan, Disclosure Statement, and the Disclosure Statement  Approval Order; the Confirmation Hearing Notice; and a return envelope.

3.  All Holders of Equity Interests received a Court-approved Notice of Non-Voting Status Under the Debtors' Amended and Restated Plan Dated as of February 13, 2019 (the "Non-Voting Notice") and Confirmation Hearing Notice.

4.  All Holders of Priority Claims received the Non-Voting Notice and Confirmation Hearing Notice.

5.  All Holders of Miscellaneous Secured Claims received the Non-Voting Notice and Confirmation Hearing Notice.

6.  All owners of real property contiguous to the Debtors' real property, as determined from a review of Richmond County, Georgia's tax records, received a USB flash drive containing the Plan, Disclosure Statement, the Disclosure Statement Approval Order; and the Confirmation Hearing Notice.

7.  All nondebtor parties to Executory Contracts or Unexpired Leases or Applicable Insurance, all parties with Claims subject to pending objections, all parties included on the Master Service List as prescribed by the Court in its *Order Establishing Notice and Administrative Procedures* dated March 7, 2018 [Docket No. 100], all Holders of Class 4 Claims requesting notice at any different address, and all other interested parties not falling into any other defined category (*e.g.,* ELT) received a USB flash drive containing the Plan, Disclosure Statement, and the Disclosure Statement Approval Order; and the Confirmation Hearing Notice.

- 4-

8. All parties on the Debtors' creditor matrix—a 49-page matrix including thousands of former employees, former creditors, and other parties that may or may not have an interest in the Debtors' cases—received a copy of the Confirmation Hearing Notice.

Notice of the Confirmation Hearing, Objection Deadline and Voting Deadline set forth above covers all known Persons that hold or may hold Claims against or Equity Interests in the Debtors, as well as interests in the Debtors' property, or potential Claims related to environmental contamination of the Debtors' real property. Notice was served on February 19, 2019, as evidenced by the affidavit of service [Docket No. 657] filed with this Court. Such notifications to parties in interest included notice of the Environmental Remediation Claims and conditions of the Environmental Remediation Property. The Court finds that notice to known creditors is sufficient under the circumstances of these Bankruptcy Cases.

Furthermore, where a creditor, actual or potential, is not known to the debtor, publication notice of the confirmation hearing and deadline to object to the plan is sufficient to provide due process. *See, e.g., Matter of GAC Corp.,* 681 F.2d 1295, 1300 (11th Cir. 1982) (approving publication notice for unknown creditors under the Bankruptcy Act). On February 27, 2019, the Debtors published the Confirmation Hearing Notice electronically on http://www.kccllc.net/Fibrant and once in the legal notices of *USA Today* and the *Augusta Chronicle,* as evidenced by the affidavit of publication [Docket No. 699]. The Court finds that notice of the Plan and of the Confirmation Hearing has been reasonable, adequate, and sufficient in all respects.

F.     Tabulation of Acceptances.    Upon the *Declaration of Jeffrey R. Miller with Respect to the Tabulation of Votes on the Amended and Restated Plan of Liquidation For Fibrant, LLC, et al.* [Docket No. 790] (the "Ballot Declaration"), the Debtors certified that they received the requisite acceptances both in number and amount from at least one class of creditors

- 5-

for confirmation of the Plan as required under Section 1126 of the Bankruptcy Code.   As evidenced by the Ballot Declaration and based upon the record before the Court, the solicitation and tabulation of acceptances and rejections of the Plan by the Debtors, their counsel, and the Claims Agent was accomplished in a proper, fair, and lawful manner in accordance with the Disclosure Statement Approval Order, all applicable sections of the Bankruptcy Code, and all applicable Bankruptcy Rules.  Holders of Miscellaneous Secured Claims in Class 1 and Priority Claims in Class 2 are unimpaired and are, therefore, deemed to accept the Plan.  Holders of Equity Interests in Class 5 were deemed to have rejected the Plan.  Ballots were transmitted to Holders of Claims in Classes 3 and 4 (the "Voting Classes") in accordance with the Disclosure Statement Approval Order.  The Debtors solicited votes for the Plan from the Voting Classes in good faith and in a manner consistent with the Bankruptcy Code.  As of the date of the Ballot Declaration, Holders of Claims entitled to vote to accept or reject the Plan voted in the numbers and percentages stated in the Ballot Declaration.  At least two-thirds in dollar amount (99.98%) and more than one-half in number (94.12%) of General Unsecured Claims in Class 4 that voted on the Plan voted to accept the Plan.   Holders of General Unsecured Claims voted overwhelmingly to accept the Plan.  At the Confirmation Hearing, (i) EPD stated on the record that it was voting to accept the Plan, and (ii) EPA stated on the record that it did not oppose confirmation of the Plan.

       G.     Modifications to the Plan. Subsequent modifications to the *Amended and Restated Plan of Liquidation For Fibrant, LLC, et al.* [Docket No. 600] affect only Holders of Claims in Classes that voted to accept the Plan, which Classes are not materially and adversely affected by the modifications contained in the Plan, or Classes of Claims that are not entitled to vote. The

Court finds that, pursuant to Bankruptcy Code section 1127(f)(2), no further solicitation of parties-in-interest is required, and that the Plan complies with Bankruptcy Code section 1127.

H.      Reasonable Classification of Claims and Equity Interests (Section 1122 and Section 1123(a)(1), (2) and (3)).  Article II of the Plan designates Claims and Equity Interests, in compliance with Sections 1122 and 1123(a)(1)–(3) of the Bankruptcy Code, in the following five classes:   Miscellaneous Secured Claims (Class 1), Priority Claims (Class 2), Environmental Remediation Claims (Class 3), General Unsecured Claims (Class 4), and Equity Interests (Class 5).  The classification of Claims and Equity Interests in Article II of the Plan is reasonable and necessary, has a rational, justifiable, and good faith basis, and places Claims and Equity Interests in a particular Class where such Claims or Equity Interests are substantially similar to the other Claims or  Equity Interests of such Class.  In light of the foregoing, the Plan complies with Sections 1122 and 1123(a)(1)–(3) of the Bankruptcy Code.

I.      No Discrimination (Section 1123(a)(4)).  Article III of the Plan provides for all Holders of Claims and Equity Interests within a particular Class to receive identical treatment under the Plan on account of such Claims and Equity Interests unless such a Holder has expressly consented to less favorable treatment.  The Plan, therefore, complies with Section 1123(a)(4) of the Bankruptcy Code.

J.      Implementation of the Plan (Section 1123(a)(5)).  Article V, Article VI, Article X, and other provisions of the Plan provide adequate means for implementation of the Plan, including: (i) substantive consolidation of the Debtors; (ii) the dissolution of the Debtors; (iii) revesting of the Debtors' assets in order to close the ELT Transaction; (iv) the appointment of the Liquidating Agent and billing and collection of accounts receivable by the Liquidating Agent; (v) the maintenance of bank accounts and making of Distributions to holders of Allowed Claims;

- 7-

(vi) the cancellation of existing securities of Debtors; (vii) the transfer of the Debtors' books and records; (viii) the ratification of the Debtors' corporate actions; (ix) the preservation and ~~vesting of~~assignment of the Debtors' interests in the Applicable Causes of Action, Applicable CIH Insurance Causes of Action and the DSM SPA Causes of Action; (x) the execution of effectuating documents and further related documents; (xi) the closing of the ELT Transaction and the funding of the ChemicaInvest Parties' Settlement Payments; (xii) the establishment of the Creditor Trust and appointment of the Creditor Trustee; (xiii) the potential sale of the South Center Assets; (xiv) the establishment of an Environmental Remediation Trust; (xv) the transfer of the Environmental Remediation Property to ELT; (xvi) the appointment of the Environmental Remediation Trustee; (xvii) the transfer of the remaining Assets; (xviii) the exemption from certain transfer taxes and recording fees; (xix) the establishment of the Litigation Trust and appointment of the Litigation Trustee; (xx) the assumption and/or assignment, or rejection, of executory contracts and unexpired leases; and (xxi) assignment of the Applicable Insurance.  The Remediation Payment and Insurance Payment by CIH constitute  ~~necessary~~costs and expenses necessarily incurred pursuant to environmental laws and regulations applicable to the Environmental Remediation Property.  Article VIII of the Plan specifies the procedures by which Distributions will be made to Holders of Allowed Claims.   Accordingly, the Plan provides adequate, proper, and legal means for its implementation.  The Plan, therefore, complies with Section 1123(a)(5) of the Bankruptcy Code.

K.     Applicable Insurance; Plan Compliance With Provisions of the Bankruptcy Code (Section 1129(a)(5)(B)).  Fibrant is the successor in interest to the various named insureds Columbia Nitrogen Corporation, Columbia Nipro Corporation, Nipro, Inc., and affiliates in respect of the Applicable Insurance.  Pursuant to Article V of the Plan and Section 1123(a)(5)(B)

- 8-

of the Bankruptcy Code, the Debtors have exercised sound business judgment in determining that, on the Effective Date, the Debtors shall transfer the Applicable Insurance contracts, in their entirety, pursuant to Sections 105 and 1123(a)(5)(B) of the Bankruptcy Code and, transfer and assign (i) to ELT all of the Debtors' rights to assert and pursue claims under the Applicable ELT Insurance Causes of Action, and ELT shall have the right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable ELT Insurance Causes of Action, and (ii) to CIH all of the Debtors' rights to assert and pursue claims under the Applicable CIH Insurance Causes of Action, and CIH shall have the right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable CIH Insurance Causes of Action, subject to paragraphs 13 and 14 of this Confirmation Order. The Plan, therefore, complies with Section 1123(a)(5)(B) of the Bankruptcy Code.

L.    Equity Securities (Section 1123(a)(6)). Section 1123(a)(6) of the Bankruptcy Code does not apply here because the Debtors have sold or will be transferring substantially all of their assets, all of the Equity Interests will be cancelled under the Plan, and none of the Debtors' stakeholders will receive new equity in consideration for their Claims.

M.    Selection of Officers and Directors (Section 1123(a)(7)). Pursuant to Section 7.2 of the Plan, on the Effective Date: (i) the authority, power and incumbency of the persons then acting as officers and managers of the Debtors shall be terminated and such officers and managers shall be deemed to have resigned, and (ii) the Liquidating Agent shall be deemed the sole officer and sole manager of each Debtor and shall be deemed to have succeeded to such

powers as would have been previously exercisable by the equity holder(s) of each Debtor. Lawrence Hirsh, a Managing Director at Alvarez & Marsal North America, LLC, has been selected as the Liquidating Agent by the Debtors, with the agreement of the Committee.  Section 6.4 of the Plan establishes the procedures for appointing a successor Liquidating Agent. Accordingly, to the extent Section 1123(a)(7) of the Bankruptcy Code is applicable, the selection of the Liquidating Agent was consistent with the interests of the Debtors' creditors and comports with public policy.  The Plan, therefore, complies with Section 1123(a)(7) of the Bankruptcy Code.

N.     Payment of Future Income (Section 1123(a)(8)).     Section 1123(a)(8) is inapplicable because the Debtors are not individuals.

O.     Impairment or Unimpairment of Claims or Equity Interests (Section 1123(b)(1)). Articles II and III of the Plan impair or leave unimpaired each class of Claims and the class of Equity Interests in accordance with Section 1123(b)(1) of the Bankruptcy Code.  The Plan, therefore, complies with Section 1123(b)(1) of the Bankruptcy Code.

P.     Assumption or Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)).  Pursuant to Article V of the Plan, the Debtors have exercised sound business judgment in determining that, on the Effective Date (i) the Executory Contracts or Unexpired Leases listed on Schedule 2 to the Plan shall be deemed assumed by Fibrant and assigned to ELT, (ii) the Executory Contracts or Unexpired Leases listed on Schedule 3 to the Plan shall be deemed assumed by Fibrant, and (iii) all other Executory Contracts or Unexpired Leases of the Debtors shall be deemed rejected by the Debtors, except for any Executory Contract or Unexpired Lease that: (a) has been previously rejected or assumed by the Debtors pursuant to an order of this Court, (b) is the subject of a motion to assume filed by the Debtors which is pending

-10-

on the Effective Date, or (c) is assumed by any Debtor pursuant to the Plan or this Confirmation Order.  Further, no cure payments are due or payable in connection with the assumption of any Executory Contracts or Unexpired Leases under the Plan and, therefore, all Cure Claim Amounts are $0.  The Plan, therefore, complies with Section 1123(b)(2) of the Bankruptcy Code.

Q.    <u>Release of Certain Causes of Action (Section 1123(b)(3)(A))</u>.  <u>Sections 10.3</u> and <u>10.10</u> of the Plan provide for certain releases of claims held by the Debtors and the Estates. The releases contained in  <u>Sections 10.3</u> and <u>10.10</u> of the Plan are part of a global settlement between the Debtors, the ChemicaInvest Parties and the creditors, and such releases comply with Section 1123(b)(3)(A) of the Bankruptcy Code.

R.    <u>Pursuit of Causes of Action (Section 1123(b)(3)(B))</u>.  The Plan provides that after the Effective Date, the Litigation Trustee, ELT, and CIH, in their respective sole and absolute discretion (except as provided in Section 10.7 of the Plan) shall have the right to bring, settle, release, compromise, or enforce Applicable Causes of Action, Applicable CIH Insurance Causes of Action, and DSM SPA Causes of Action (or decline to do any of the foregoing), without further approval of this Court. Specifically, <u>Section 6.10</u> of the Plan provides that (i) the Litigation Trust (as assignee of the Debtors) will retain and may (but is not required to) enforce all Causes of Action, (ii) ELT (as assignee of the Debtors) will ~~retain~~<u>be assigned</u> and may (but is not required to) enforce all Applicable ELT Insurance Causes of Action, which shall constitute choses in action, and (iii) CIH (as assignee of the Debtors) will ~~retain~~<u>be assigned</u> and may (but is not required to) enforce all DSM SPA Causes of Action and the Applicable CIH Insurance Causes of Action, which shall constitute choses in action. The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Insurance Cause of Action or DSM SPA Cause of Action in the Plan does not,

-11-

and will not be deemed to, constitute a waiver or release by the Estates, the Liquidating Agent, the Litigation Trust, ELT, CIH or the Debtors of such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action, and the Litigation Trust, ELT, and CIH will retain the right to pursue such claims, rights of action, suits, proceedings and other Applicable Causes of Action, Applicable CIH Cause of Action and DSM SPA Cause of Action (as applicable), each in its respective sole discretion and, therefore, no preclusion doctrine, and neither the entry of this Confirmation Order nor the terms of the Plan and the Disclosure Statement will result in a bar to such claims, actions, causes of action, suits, choses in action or rights to payment under any preclusion doctrine, including the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, late or insufficient notice to claimant, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action upon or after the confirmation or consummation of the Plan, except where such claims, actions, causes of action, suits, choses in action or rights to payment have been released in the Plan (including, for the avoidance of doubt, the releases contained in Section 10.3 and Section 10.10 of the Plan) or any other order of the Court. Without limiting the generality of the foregoing, any and all claims, rights of action, suits and proceedings against any one or more of the DSM Entities are expressly preserved.

S.      Plan Compliance With Provisions of the Bankruptcy Code (Section 1129(a)(1)). The Plan complies with all applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 of the Bankruptcy Code.  The Plan, therefore, complies with Section 1129(a)(1) of the Bankruptcy Code.

-12-

T.  Proponent's Compliance With Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).  As described previously, the Debtors have fully complied with the provisions of Sections 1125 and 1126 of the Bankruptcy Code and with Bankruptcy Rules 3017 and 3018 regarding disclosure and notice. The Debtors, therefore, have satisfied the applicable requirements of Section 1129(a)(2) of the Bankruptcy Code.

U.  Plan Proposed in Good Faith (Section 1129(a)(3)).  The Plan has been proposed in good faith and not by any means forbidden by law.  The Plan was proposed by the Debtors with the intent to realize the maximum benefit for the Debtors' stakeholders.  The Plan was the product of good faith, arms-length negotiations among the Debtors, the Committee, the ChemicaInvest Parties, ELT, EPD, EPA, and certain other parties, and the Plan is consistent with the interests of all the Estates' constituencies.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Bankruptcy Cases and the formulation of the Plan and has concluded that there is a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.  The Debtors, therefore, have satisfied the requirements of Section 1129(a)(3) of the Bankruptcy Code.

V.  Payment of Costs and Expenses (Section 1129(a)(4)).  Any payments made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, have, to the extent required by the Bankruptcy Code, the Bankruptcy Rules, or the various orders of this Court, been approved by, or are subject to the approval of, this Court as reasonable.  The Plan, therefore, complies with Section 1129(a)(4) of the Bankruptcy Code.

W.      Disclosure of Identities of Officers and Managers (Section 1129(a)(5)).  Pursuant to Section 7.2 of the Plan, on the Effective Date, the Liquidating Agent shall be deemed the sole officer and sole manager of each Debtor and shall be deemed to have succeeded to such powers as would have been previously exercisable by the equityholders of each Debtor.  The Debtors and the Committee have agreed to the designation, as set forth in the Plan, of Lawrence Hirsh as the Liquidating Agent.   Pursuant to Article XIII and other provisions of the Plan, the Creditor Trustee shall have and exercise the power set forth in the Plan. The Debtors and the Committee have agreed to the designation, set forth in the Plan, of GlassRatner Advisory & Capital Group, LLC, acting by and through Joseph Pegnia, as the Creditor Trustee. On and after the Effective Date, no insiders shall be employed by the Debtors.  The Plan, therefore, complies with Section 1129(a)(5) of the Bankruptcy Code.

X.      No Rate Change (Section 1129(a)(6)).  The Plan does not provide for any rate change over which a governmental regulatory commission will have jurisdiction.  Therefore, Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Plan.

Y.      Best Interest of Creditors (Section 1129(a)(7)).  With respect to each Class of impaired Claims and Equity Interests in the Debtors, each holder of a Claim or Equity Interest of such Class either (a) has accepted (or is deemed to have accepted) the Plan, or (b) will receive or retain under the Plan on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code.  The Plan, therefore, complies with Section 1129(a)(7) of the Bankruptcy Code.

Z.      Plan Acceptance (Section 1129(a)(8)).  Class 5 is impaired and deemed to have rejected the Plan.  Therefore, the Plan does not satisfy the requirements of Section 1129(a)(8) of

the Bankruptcy Code. However, as set forth herein, the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code.

AA.    Plan Treatment of Administrative Expense Claims, Priority Claims, and Tax Claims (Section 1129(a)(9)).   The Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code with respect to the treatment of Administrative Expense Claims, Priority Claims and Tax Claims.

BB.    Acceptance by at Least One Impaired Class (Section 1129(a)(10)).   The Plan has been accepted by Class 3[3] and Class 4 and, therefore, has been accepted by at least one Class of impaired Claims under the Plan (which acceptance has been determined without including any vote by any insider).   The Plan, therefore, complies with Section 1129(a)(10) of the Bankruptcy Code.

CC.    Feasibility (Section 1129(a)(11)).   Except for the liquidation and transfers of Assets provided for in the Plan, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan.   The Plan, therefore, complies with Section 1129(a)(11) of the Bankruptcy Code.

DD.    Payment of Fees (Section 1129(a)(12)).   Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.   Section 10.13.3 of the Plan provides that: "All fees required to be paid by 28 U.S.C. §1930(a)(6) ("US Trustee Fees") will accrue and be timely paid until the Bankruptcy Cases are closed, dismissed or converted to another chapter of the Bankruptcy Code. Any US Trustee Fees that are due and owing as of the Effective Date will be paid on the Effective Date. From and after the Effective Date, the

---

[3] At the Confirmation Hearing, EPD stated on the record that it was voting to accept the Plan.

-15-

Liquidating Agent shall file the reports and cause the Estates to pay the US Trustee Fees as contemplated by this <u>Section 10.13.3</u>." Moreover, <u>Section 4.2.1</u> of the Plan provides for the payment in full of all Allowed Administrative Expense Claims. The Plan defines "Administrative Expense Claim" to include "all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code."   The Plan, therefore, complies with Section 1129(a)(12) of the Bankruptcy Code.

EE.    <u>Retiree Benefits (Section 1129(a)(13))</u>. The Debtors are not (and, as of the Petition Date, were not) obligated to provide any retiree benefits as that term is defined pursuant to Section 1114 of the Bankruptcy Code.  Accordingly, Section 1129(a)(13) is inapplicable.

FF.    <u>Domestic Support Obligations (Section 1129(a)(14))</u>.   The Debtors are not individuals and they have no domestic support obligations.   Section 1129(a)(14) of the Bankruptcy Code is, therefore, inapplicable.

GG.    <u>Requirements for Debtors that Are Individuals (Section 1129(a)(15))</u>.  Section 1129(a)(15) of the Bankruptcy Code only applies to individuals.  The Debtors are not individuals, and Section 1129(a)(15) is, therefore, inapplicable.

HH.    <u>Transfer of Property (Section 1129(a)(16))</u>.  Each Debtor is a moneyed, business, or commercial corporation.   Accordingly, Section 1129(a)(16) of the Bankruptcy Code is inapplicable.

II.    <u>The Plan Does Not Discriminate Unfairly and is Fair and Equitable (Section 1129(b))</u>.  With respect to the ~~Classes~~<u>Class</u> that ~~are~~<u>is</u> impaired under, and ~~have~~<u>has</u> not accepted, the Plan, the Plan does not discriminate unfairly and is fair and equitable.  With respect to ~~[Class 3 and]~~ Class 5, the non-accepting impaired ~~classes~~<u>class</u>, no Holder of any ~~Claim or~~ Equity Interest that is junior to the ~~claims or~~ interests of ~~these Classes~~<u>this Class</u> will receive or retain

-16-

under the Plan on account of such junior ~~claim or~~ interest any property.  Accordingly, Section 1129(b) of the Bankruptcy Code is satisfied.

JJ.  <u>No Other Plan (Section 1129(c))</u>.  Other than the Plan, no reorganization or liquidation plan has been filed with respect to the Bankruptcy Cases.  Therefore, the requirements of Section 1129(c) of the Bankruptcy Code have been satisfied.

KK.  <u>Avoidance of Taxes or Application of Securities Laws (Section 1129(d))</u>.  No party in interest that is a governmental unit (as defined in the Bankruptcy Code) has objected to the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the Court finds this is not the principal purpose of the Plan.  The Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

LL.  <u>Release, Injunction and Exculpation</u>.  The release, injunction, and exculpation provisions set forth in the Plan and this Confirmation Order: (i) are within the jurisdiction of this Court under 28 U.S.C. Section 1334 of the Bankruptcy Code; (ii) are each an essential means of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code; (iii) are integral elements of the settlements and compromises incorporated in the Plan; (iv) confer material benefits on, and thus are in the best interests of, the Debtors, their estates, their stakeholders, and other parties in interest; (v) are part of a global settlement between the ChemicaInvest Parties (on the one hand) and the Debtors, their creditors, other stakeholders and parties in interest (on the other hand), pursuant to which the ChemicaInvest Parties have agreed to make the Settlement Payments; and (vi) are, under the facts and circumstances of the Bankruptcy Cases, consistent with and permitted pursuant to Sections 105, 1123 and 1129 and all other applicable provisions of the Bankruptcy Code.  Further, reasonable, adequate, and sufficient notice of and opportunity

-17-

to be heard with respect to such release, injunction, and exculpation provisions have been provided under the circumstances and such notice and opportunity have complied with all provisions of the Bankruptcy Code, Bankruptcy Rules, and all other applicable rules and law, including Bankruptcy Rules 2002(c)(3), 3016(c), 3017(f) and 3020.

MM.    <u>Exemption from Transfer Taxes</u>.  All transfers of property by the Debtors on and subsequent to the Effective Date are transfers under the Plan and shall be free from the imposition of transfer taxes, stamp taxes, recording fees or other fees or taxes of the kind specified in Section 1146(a) of the Bankruptcy Code and are subject to the exemptions of Section 1146 of the Bankruptcy Code.

NN.    <u>Good Faith Solicitation</u>.  Based upon the record before the Court, the Debtors and their counsel and other professionals have formulated and filed the Plan, obtained approval of the Disclosure Statement, and solicited votes on the Plan all in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpatory, injunctive, and release provisions set forth in the Plan.

OO.    <u>Good Faith</u>.  The Debtors, the ChemicaInvest Parties, and the Committee, as well as each of their respective members, employees, officers, managers, agents, advisors, attorneys, and financial advisors, have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, with respect to the negotiation, proposal, and administration of the Plan, the solicitation of acceptances with respect thereto, and the property to be distributed thereunder and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpatory, injunctive, and release provisions set forth in the Plan.

PP.     <u>Good Faith of Transferees; No Collusion</u>. No purchaser or transferee of any of the Debtors' assets pursuant to the Plan (including ELT) is an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors.   Upon the closing of the transactions pursuant to the ELT Property Transfer Agreement, ELT will be purchasing or taking title to the Environmental Remediation Property in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to pursuant to the provisions of the applicable agreements, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the ELT Transaction in that, *inter alia*: (i) ELT recognized that the Debtors were free to deal with any other party interested in acquiring the Debtors' assets; (ii) ELT complied with the provisions of any applicable order of this Court; (iii) ELT has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (iv) no common identity of directors, managers or controlling equityholders exists between ELT, on the one hand, and any of the Debtors, on the other hand; and (vi) the negotiation and execution of the ELT Property Transfer Agreement, the Environmental Remediation Trust Agreement and the entirety of the related documentation were at arms' length and in good faith. None of the Debtors, ELT, or any of their respective affiliates, partners, members, subsidiaries, officers, directors, managers, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and their respective successors and assigns, each in their capacity as such, has engaged in any conduct that would cause or permit the ELT Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

-19-

QQ.    <u>Substantive Consolidation</u>.  The substantive consolidation of the Debtors as set forth in the Plan is reasonable, appropriate and supported by the facts of these Bankruptcy Cases. Fibrant owns, directly or indirectly, all three other Debtors.  All of the Debtors have common officers and managers.  Historically, Fibrant paid all of the expenses and liabilities of the other Debtors, all business of the Debtors was conducted under the Fibrant name, the Debtors other than Fibrant generally had no separate bank accounts, and Fibrant used the assets of the other Debtors in conducting its business.  All of the Debtors conducted business at the same physical location. No creditor has objected to substantive consolidation and substantive consolidation will not prejudice or harm any creditor.  The benefits of substantive consolidation in these Bankruptcy Cases include elimination of duplicative corporate filings, elimination of the cost of four parallel plans and disclosure statements, elimination of the cost of four separate closings of the ELT Transaction, and assurance for ELT that its rights to the Debtors' real and personal property are bound up in one plan and one confirmation order.

RR.    <u>Sale of South Center Assets</u>.  Due, adequate and sufficient notice of the proposed sale of the South Center Assets to Augusta Sulfate Company, LLC ("Augusta Sulfate") or its assigns (collectively, the "South Center Purchaser"), pursuant to the Real Estate Purchase Contract (the "South Center Contract") that was filed with the Court on May 17, 2019 [Docket No. 883], was provided by the Debtors and no other or further notice of the proposed transaction is necessary.  The consideration to be paid by the South Center Purchaser under the South Center Contract is the result of extensive marketing of the subject property by a third party broker and constitutes fair and reasonable consideration for the transferred assets.  The Debtors and the South Center Purchaser negotiated and entered into the South Center Contract in good faith, without collusion and from arm's-length bargaining positions, and the South Center Purchaser

-20-

would not have entered into the South Center Contract and would not consummate the transactions contemplated thereby if the sale of the subject assets was not free and clear of any and all Claims and interests.

SS.   RR. Retention of Jurisdiction.  The Court may properly, and hereby does, retain jurisdiction over the Debtors and the Estates with respect to the matters set forth in Article XII of the Plan and paragraph 62 of this Confirmation Order.

## NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

### *Confirmation of Plan*

1.   Confirmation.  The Plan shall be, and hereby is, confirmed, having met the requirements of Section 1129 of the Bankruptcy Code.  Objections to confirmation of the Plan were filed or raised by DSM, EPD, the Office of the United States Trustee, Augusta Sulfate Company, LLC, and certain insurance companies that issued or allegedly issued certain of the Applicable Insurance policies.  All such objecting parties shall be deemed to have notice of the Plan, this proceeding, and the matters discussed therein.  Any and all objections to the Plan not previously withdrawn or resolved under the terms of this Confirmation Order are hereby overruled in their entirety.  The terms of the Plan are incorporated herein and are an integral part of this Confirmation Order.  The provisions of this Confirmation Order are integrated with each other and are mutually dependent and are not severable.

2.   Findings of Fact and Conclusions of Law.  The findings of this Court set forth above and the conclusions of law stated herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any provision designated herein as a finding of fact is more properly characterized to be a conclusion of law, it shall be so deemed, and vice versa.

*__Approval of Plan Provisions__*

3.      Plan Classification Controlling.   The classification of Claims for purposes of Distributions provided for under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims, if any, set forth in the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes, and (c) shall not be binding on the Debtors.

4.      Confirmation Hearing Record.  The record of the Confirmation Hearing shall be, and hereby is, closed as of May 22, 2019.

5.      Implementation of the Plan.  In accordance with Section 1142 of the Bankruptcy Code, the implementation and consummation of the Plan in accordance with its terms shall be, and hereby is, authorized and approved and the Debtors, the Liquidating Agent, the Creditor Trustee, the Environmental Remediation Trustee, the Litigation Trustee and any other Person designated pursuant to the Plan shall be, and they hereby are, authorized, empowered, directed, and ordered to execute, deliver, file, and record contracts, instruments, releases, indentures, and other agreements or documents, whether or not such document, agreement, indenture, release, instrument, or contract is specifically referred to in the Plan or the Disclosure Statement, and to take any action necessary, appropriate or desirable to implement, effectuate, and consummate the Plan in accordance with its terms.  The Debtors, the Liquidating Agent and the Creditor Trustee are hereby authorized and directed to make all payments and Distributions required under the Plan and to implement the Plan in all respects.

6.    <u>Binding Effect</u>.  Pursuant to Section 1141 of the Bankruptcy Code, the Plan and this Confirmation Order shall be legally binding upon and inure to the benefit of the Debtors, their Estates, the Committee, the Liquidating Agent, the Creditor Trustee, the Environmental Remediation Trustee, the Litigation Trustee, ELT, CIH, the ChemicaInvest Affiliated Parties, the Holders of Claims, the Holders of Equity Interests, all other parties in interest in the Bankruptcy Cases, and their respective successors and assigns.  Each federal, state, commonwealth, local, or other governmental agency or department is hereby directed and ordered to accept any and all documents and instruments necessary, useful, or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan or herein.

7.    <u>Effective Date</u>.  The Effective Date shall mean the date specified by the Debtors in the Confirmation Notice (defined below) filed with this Court as the date on which the Plan shall take effect, which date shall be not more than ten (10) Business Days after the date on which the conditions to the Effective Date provided for in the Plan have been satisfied or waived by the Debtors and CIH.

8.    <u>Record Date</u>.  Pursuant to <u>Section 1.1.103</u> of the Plan, the Record Date for determining the identity of Holders of Allowed Claims entitled to receive Distributions under the Plan shall be May 22, 2019.

9.    <u>Administrative Bar Date (General)</u>.  Except as otherwise provided in the Plan, any Person holding an Administrative Expense Claim (other than a claim for Professional Compensation) shall file a proof of such Administrative Expense Claim with the Claims Agent within sixty (60) days after the Liquidating Agent provides notice by mail or by publication, in a form and manner approved by this Court, of the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative

-23-

Expense Claim upon counsel for the Liquidating Agent. **Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim by the Debtors and the Estates.**

10.     Administrative Bar Date (Professionals).  Any Person seeking an award by this Court of Professional Compensation shall file a final application with this Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Effective Date.  The provisions of this paragraph shall not apply to any professional providing services pursuant to, and subject to the limits contained in, the *Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business* entered in the Bankruptcy Cases on May 1, 2018.

11.     Approval of Assumption/Assignment/Rejection of Executory Contracts and Unexpired Leases.  On the Effective Date, (i) the Executory Contracts or Unexpired Leases listed on Schedule 2 to the Plan shall be deemed assumed by Fibrant and assigned to ELT, (ii) the Executory Contracts or Unexpired Leases listed on Schedule 3 of the Plan shall be deemed assumed by Fibrant, and (iii) all other Executory Contracts or Unexpired Leases of the Debtors shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except those Executory Contracts or Unexpired Leases that (a) have been previously rejected or assumed by any Debtor pursuant to an order of the Bankruptcy Court, (b) are the subject of a motion to assume filed by any Debtor which is pending on the Effective Date, or (c) are assumed by any Debtor pursuant to the Plan or this Confirmation Order. No cure payments are due or payable in connection with the assumption of any Executory Contracts or Unexpired Leases under the Plan and, therefore, all Cure Claim Amounts are $0. The entry of this Confirmation Order shall, subject to and upon the occurrence of the Effective

-24-

Date, constitute the approval, pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, of the assumption, assumption and assignment or rejection (as applicable) of Executory Contracts or Unexpired Leases pursuant to <u>Section 5.1</u> of the Plan.

12.    <u>Transfer and Assignment of Certain Applicable Insurance Causes of Action</u>. Pursuant to <u>Article V</u> of the Plan and ~~Section~~<u>Sections 105 and</u> 1123(a)(5)(B) of the Bankruptcy Code, on the Effective Date, the Debtors shall ~~transfer the Applicable Insurance contracts, in their entirety, pursuant to Sections 105 and 1123(a)(5)(B) of the Bankruptcy Code and~~ transfer and assign (i) to ELT all of the Debtors' rights to assert and pursue claims under the Applicable ELT Insurance Causes of Action, and ELT shall have the right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable ELT Insurance Causes of Action, and (ii) to CIH all of the Debtors' rights to assert and pursue claims under the Applicable CIH Insurance Causes of Action, and CIH shall have the right thereafter to prosecute, settle, enforce, and otherwise realize, or control the prosecution, settlement, enforcement or other realization of, the Debtors' (including any of their predecessors in interest) claims and rights arising under the Applicable CIH Insurance Causes of Action.

13.    <u>Applicable Insurance</u>.  Nothing in the Plan, this Confirmation Order, or any documents relating thereto (including any other provision that purports to be preemptory or supervening or grants an injunction, exculpation or release): (a) modifies, limits, waives or releases any defenses the Debtors' insurers ("<u>Insurers</u>") may have under any insurance policies under which the Debtors, the Litigation Trust, CIH, ELT, or any other successor to or assignee of the Debtors seeks coverage (the "<u>Policies</u>") or any agreements related to the Policies (together,

with the Policies, the "Insurance Agreements"), other than a defense based on the fact of any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action or the Applicable ELT Insurance Causes of Action pursuant to the Plan; (b) modifies any of the terms, conditions, exclusions, limitations and/or endorsements contained in the Insurance Agreements; (c) shall be deemed to create, enlarge or modify insurance coverage under the terms of the Insurance Agreements, or creates any right of action against the Insurers that does not otherwise exist under applicable nonbankruptcy law; (d) shall be deemed to alter, limit or prejudice the rights and/or defenses of any party (other than a defense based on the fact of any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action or the Applicable ELT Insurance Causes of Action pursuant to the Plan), or limit the relief available or change the burden or standard of proof in any pending or subsequent litigation in which the Insurers, the Debtors, the Litigation Trust, CIH, ELT, or any other successor to or assignee of the Debtors may seek a declaration or other relief regarding the existence or extent of coverage under the Insurance Agreements; (e) shall be deemed to release or exculpate any insured, or any alleged successor to or assignee of any insured, from any past, present, ongoing or future breach of any of the duties and obligations of any insured under the Insurance Agreements (other than a breach that would arise from the fact of any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Acton or the Applicable ELT Insurance Causes of Action pursuant to the Plan); or (f) shall be construed as a waiver of Insurers' right to claim any prepetition action, failure to act, transaction or Plan transaction, other than the fact of any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action or the Applicable ELT Insurance Causes of Action pursuant to the Plan, violates a policy condition.

14.    <u>Agreements With Respect to Debtors' Assignments of Certain Rights Under Policies</u>.  Insurers acknowledge and agree that the fact of any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action to CIH or Debtors' interest in the Applicable ELT Insurance Causes of Action to ELT pursuant to the Plan does not in and of itself constitute a default and/or a defense to any coverage that otherwise exists; <u>provided</u>, <u>however</u>, that: (a) any assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action or Debtors' interest in the Applicable ELT Insurance Causes of Action pursuant to the Plan is subject to all the terms, conditions, exclusions, limitations and/or endorsements of the Policies, and to the Insurers' rights to assert any defense or default arising from either the pre-assignment conduct of the insured or the post-assignment conduct of the assignee(s), other than any defense based upon the fact of the assignment itself; (b) neither any purported assumption of the Policies as executory contracts, nor the assignment of Debtors' interest in the Applicable CIH Insurance Causes of Action and the Applicable ELT Insurance Causes of Action pursuant to the Plan, shall constitute or be construed for purposes of Section 365 of the Bankruptcy Code as a finding or determination that no defaults exist under the Policies or that any defaults have been or can be cured; (c) the assignment of the Applicable CIH Insurance Causes of Action and the Applicable ELT Insurance Causes of Action shall not constitute or be construed as relieving the Debtors or any successor to or assignee of the Debtors of the burden of proving the existence and terms of any disputed Policies; and (d) the Applicable CIH Insurance Causes of Action and the Applicable ELT Insurance Causes of Action shall be deemed mutually exclusive and non-duplicative, such that as between CIH and ELT, only one party shall be entitled to assert any given Insurance Cause of Action, and the adjudication, settlement, dismissal or resolution of any Insurance Cause of Action as to one party shall be binding, conclusive and preclusive as to the other.

-27-

15.    <u>Bar Date for Rejection Damage Claims</u>.  **All proofs of claim with respect to Claims arising from the rejection pursuant to the Plan of any Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served upon counsel for the Liquidating Agent within thirty (30) days after the Effective Date.  Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that become Allowed Claims are classified and shall be treated as Class 4 General Unsecured Claims.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan not filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates and property of the Debtors unless otherwise ordered by this Court or provided in the Plan.  Notwithstanding the foregoing, a Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease rejected pursuant to a different order of this Court must be filed prior to any bar date set forth in such order.**

16.    <u>Vesting of the Debtors' Assets</u>.  Except as otherwise set forth in this Confirmation Order or the Plan, all property of the Debtors and their Estates shall vest automatically in the Debtors on the Effective Date (without the necessity of executing any instruments of assignment), for the express purposes of allowing the Debtors to close the ELT Transaction and consummate the Plan, and for the Liquidating Agent and Creditor Trustee to make Distributions to Holders of Claims pursuant to the terms and conditions of the Plan.  Fibrant shall be the successor in interest to the various named insureds Columbia Nitrogen Corporation, Columbia Nipro Corporation, Nipro, Inc., and affiliates in respect of the Applicable Insurance.  On the Effective Date, the Debtors shall transfer to the Creditor Trust (i) the Creditor Trust Reserve, (ii) all Estate Cash, and (iii) the Estate Payment (to the extent not transferred directly to the Creditor

Trust by the ChemicaInvest Parties).  In addition, on the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, (a) the Causes of Action shall be deemed transferred, conveyed and assigned to and vest in the Litigation Trust, (b) the Estates' interest in the Applicable ELT Insurance Causes of Action shall be deemed transferred, conveyed and assigned to and vest in ELT, and (c) the DSM SPA Causes of Action and the Estates' interest in the Applicable CIH Insurance Causes of Action shall be deemed transferred, conveyed and assigned to and vest in CIH; *provided, however*, that the Net Litigation Proceeds shall be distributed to CIH and, if applicable, to the Creditor Trust (so as to permit Distributions to Holders of Allowed Class 4 General Unsecured Claims pursuant to section 3.4 of the Plan).  As of the Effective Date, (i) all property of the Debtors shall be free and clear of all Liens, Claims and Equity Interests, and (ii) the rights of Holders of Claims to receive Distributions shall be governed by the Plan.

17.    <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>.  Unless a claim, action, cause of action, suit, chose in action or right to payment against any Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order of the Court (including this Confirmation Order), the Debtors and their Estates expressly reserve such claim, action, cause of action, suit, chose in action or right to payment for later adjudication or administration (including claims, actions, causes of action, suits, choses in action or rights to payment not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) ~~and, therefore, no~~, and neither the entry of this Confirmation Order nor the terms of the Plan and the Disclosure Statement will

result in a bar to those reserved claims, actions, causes of action, suits, choses in action or rights to payment under any preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, late or insufficient notice to claimant, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, actions, causes of action, suits, choses in action or rights to payment upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such claims, actions, causes of action, suits, choses in action or rights to payment have been released in the Plan (including, for the avoidance of doubt, the releases contained in Section 10.3 and Section 10.10 of the Plan) or any other order of the Court. In addition, the Debtors and their Estates expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

18. <u>Prosecution or Settlement of Causes of Action</u>. In accordance with Section 1123(b)(3) of the Bankruptcy Code and as set forth in <u>Section 6.10</u> of the Plan, (i) the Litigation Trust (as assignee of the Debtors) will retain and may (but is not required to) enforce all Causes of Action, (ii) ELT (as assignee of the Debtors) will retain and may (but is not required to) enforce all Applicable ELT Insurance Causes of Action, and (iii) CIH (as assignee of the Debtors) will retain and may (but is not required to) enforce all DSM SPA Causes of Action and the Applicable CIH Insurance Causes of Action.  After the Effective Date, the Litigation Trustee, ELT, and CIH, in their respective sole and absolute discretion (except as provided in Section 10.7 of the Plan), shall have the right to bring, settle, release, compromise, or enforce such Applicable Causes of Action, Applicable CIH Insurance Causes of Action, and DSM SPA Causes of Action (or decline to do any of the foregoing), without further approval of the Court.

-30-

The failure of the Debtors to specifically list any claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Insurance Cause of Action or DSM SPA Cause of Action in the Plan does not, and will not be deemed to, constitute a waiver or release by the Estates, the Liquidating Agent, the Litigation Trust, ELT, CIH or the Debtors of such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action, and the Litigation Trust, ELT, and CIH will retain the right to pursue such claims, rights of action, suits, proceedings and other Applicable Causes of Action, Applicable CIH Causes of Action and DSM SPA Causes of Action (as applicable), each in its respective sole discretion ~~and, therefore, no preclusion doctrine~~, and neither the entry of this Confirmation Order nor the terms of the Plan and the Disclosure Statement will result in a bar to such claims, actions, causes of action, suits, choses in action or rights to payment under any preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, late or insufficient notice to claimant, estoppel (judicial, equitable or otherwise) or laches ~~will apply to such claim, right of action, suit, proceeding or other Applicable Cause of Action, Applicable CIH Cause of Action or DSM SPA Cause of Action upon or after the confirmation or consummation of the Plan~~, except where such claims, actions, causes of action, suits, choses in action or rights to payment have been released in the Plan (including, for the avoidance of doubt, the releases contained in Section 10.3 and Section 10.10 of the Plan) or any other order of the Court. Without limiting the generality of the foregoing, any and all claims, rights of action, suits, or proceedings against any one or more of the DSM Entities are expressly preserved.

19.    <u>Liquidating Agent</u>.    Lawrence Hirsh, a Managing Director at Alvarez & Marsal North America, LLC, is approved as the Liquidating Agent under the Plan as a professional

person pursuant to the applicable provisions of the Bankruptcy Code.  Except as otherwise specifically provided for in this Confirmation Order or in the Plan, the Liquidating Agent shall direct and oversee the Debtors' business activities, conduct the final liquidation and distribution of the Estates and conduct the wind-up of the Debtors' affairs, in each case in accordance with the terms and conditions of this Confirmation Order and the Plan.

20.    <u>Powers of the Liquidating Agent</u>. The Liquidating Agent shall have the rights, powers and duties as set forth in the Plan and shall be responsible for administering the Plan under the terms and subject to the conditions set forth in this Confirmation Order and in the Plan. After the Effective Date, the Liquidating Agent shall be authorized to take, on behalf of the Debtors, all necessary, desirable or appropriate actions to direct and oversee any remaining business activities, winddown activities, and to proceed with an orderly, expeditious and efficient liquidation and distribution of the Estates. The Liquidating Agent shall be authorized to retain or engage, or to cause the Debtors to retain or engage, such employees, professional persons and agents as are appropriate or desirable to continue the liquidation of the Estates. Further, the Liquidating Agent shall be authorized to make Distributions from the Retained Proceeds to pay the costs and expenses incurred after the Effective Date in connection with the administration, liquidation and distribution of the Estates, without the necessity of providing any notice or seeking or obtaining any approval of the Court with respect to such Distributions.  Without limiting the generality of the foregoing, the Liquidating Agent shall be authorized to make Distributions from the Retained Proceeds to pay the fees and expenses of any professional persons retained by the Liquidating Agent and/or the Debtors.  The Liquidating Agent shall be the representative of the Estates as contemplated by section 1123(b)(3)(B) of the Bankruptcy Code. Except as otherwise specifically provided in the Plan, the Liquidating Agent shall have full

-32-

and exclusive power and authority to act on behalf of the Debtors and shall be responsible for performing the duties of the Debtors under the Plan.  The Liquidating Agent shall have the rights, duties and powers of a trustee appointed pursuant to sections 701, 702 and 1104 of the Bankruptcy Code to act on behalf of the Debtors with regard to the administration of the Bankruptcy Cases and the assets of the Estates.  No recourse shall ever be had, directly or indirectly, against the Liquidating Agent personally, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidating Agent under the Plan, or by reason of the creation of any indebtedness by the Liquidating Agent under the Plan for any purpose authorized by the Plan, save and except in cases of defalcation, misappropriation, fraud or gross negligence by the Liquidating Agent, it being expressly understood and agreed that such liabilities, promises, contracts, instruments, undertakings, obligations, covenants and agreements shall be enforceable only against and be satisfied only out of the assets of the Debtors or shall be evidence only of a right of payment from the Debtors' assets.  The Liquidating Agent shall be indemnified and held harmless by the Estates from and against any expenses (including the reasonable fees and expenses of counsel), damages or losses incurred or suffered by the Liquidating Agent in connection with any claim or demand which in any way arises out of or relates to the Plan or the services of the Liquidating Agent under the Plan; provided, however, if the Liquidating Agent is guilty of defalcation, misappropriation, fraud or gross negligence, then the Liquidating Agent shall bear all losses, damages and expenses arising as a result of such defalcation, misappropriation, fraud or gross negligence.  The Liquidating Agent may resign at any time in its sole discretion, and such resignation shall be effective upon the earlier of (i) 30 days after the Liquidating Agent has given written notice of resignation to the Creditor Trustee

-33-

and filed such notice with the Court, and (ii) the date the Court approves a successor to the resigning Liquidating Agent.  In case of the resignation of the Liquidating Agent, a successor shall thereupon be appointed by the Creditor Trustee, subject to approval of the Court, or, in the event that the Creditor Trustee does not exist or does not exercise such right of appointment, by the Court.  The Liquidating Agent shall be reimbursed for any out-of-pocket expenses incurred in connection with the discharge of its duties under the Plan and shall be compensated for his services at his standard hourly rate.  The Liquidating Agent's compensation and expenses shall be reimbursed and/or paid out of the Retained Proceeds and such compensation and expenses may be paid without the necessity of providing notice to any party in interest or obtaining any approval from the Court.  On the Consummation Date, after making the Final Distribution under the Plan, the Liquidating Agent shall be discharged from its duties under the Plan.

21.    <u>Maintenance of Bank Accounts and Distribution of Liquidation Proceeds</u>. Pursuant to <u>Section 6.6</u> of the Plan, the Liquidating Agent and the Creditor Trustee shall have the authority and responsibility to disburse the assets of the Estates to the Holders of Allowed Claims and otherwise in accordance with the terms of the Plan.  Until disbursed in accordance with the Plan, all GUC Funds, Liquidation Proceeds and Retained Proceeds shall be held in trust for the benefit of Holders of Allowed Claims in one or more separate bank or other depository accounts throughout the term of the Plan.  The Liquidating Agent shall be entitled to use the Debtors' bank accounts that are in existence as of the Effective Date and shall be authorized to open such bank or other depository accounts as may be necessary or appropriate in the discretion of the Liquidating Agent to enable it to carry out the provisions of the Plan (provided that any bank account opened by the Liquidating Agent shall be at a financial institution approved by the Office of the United States Trustee).  The Liquidating Agent may, from time to time, cause the Debtors

to invest the Liquidation Proceeds and Retained Proceeds in certificates of deposit, treasury bills, money market accounts or other short term investments.  All interest earned shall be retained for Distribution to the Holders of Allowed Claims pursuant to the Plan.  The Liquidating Agent  and the Creditor Trustee (with respect to Class 4 Claims) shall prepare and maintain an adequate set of financial books, records or databases that will allow the Liquidating Agent and Creditor Trustee (as applicable) to accurately track the amount of Claims asserted against the Estates and the amounts paid to each Holder of an Allowed Claim pursuant to the terms of the Plan; provided that the Liquidating Agent also shall be entitled to use the Debtors' books and records (including the books and records maintained by the Claims Agent that are in existence on the Effective Date).  On the Initial Distribution Date or, with respect to the Creditor Trustee, on the 30th day from the Effective Date (or as soon thereafter as is reasonably practicable), and each subsequent Distribution Date, the Liquidating Agent, and the Creditor Trustee with respect to Class 4 General Unsecured Claims, shall make Distributions to the Holders of Allowed Claims in accordance with the terms of the Plan.  The Liquidating Agent, and the Creditor Trustee with respect to Class 4 General Unsecured Claims, will continue to make Distributions until the assets in the Estates have been fully distributed to Holders of Allowed Claims in accordance with the terms of the Plan.

22.    Corporate Action. Pursuant to Section 6.9 of the Plan, each of the matters provided for under the Plan involving the organizational structure of any Debtor or any action to be taken by or required of any Debtor shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by officers, creditors, managers or equity holders of any of the Debtors. Without limiting the generality of the

foregoing, prior to the Effective Date, Fibrant shall be deemed to have sole ownership and control of the Applicable Insurance, in its capacity as the successor in interest to Columbia Nitrogen Corporation, Columbia Nipro Corporation, Nipro, Inc., and affiliates.

23.    Effectuating Documents; Further Transactions.    Each of the Debtors, their respective officers and designees, and the Liquidating Agent, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions, as may be necessary, desirable or appropriate, or as may be reasonably requested by the ChemicaInvest Parties or the Creditor Trustee, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law. In order to facilitate the liquidation and distribution of the Estates and the wind-down of the Debtors' affairs, on the Effective Date the Liquidating Agent shall be deemed, by operation of law and the Confirmation Order and without need for any action by any person affiliated with the Debtors or any officer or manager of the Debtors, to hold an irrevocable power of attorney on behalf of each Debtor and each Estate and with respect to all of the Assets (including the Environmental Remediation Property).

24.    Fibrant South Center Proceeds.    If the South Center Assets are sold by South Center (a) prior to or on the Effective Date, the Debtors shall transfer fifty percent (50%) of the Fibrant South Center Proceeds to the Environmental Remediation Trust, which shall reduce on a dollar-for-dollar basis the amount of the Remediation Payment to be paid by CIH to the Environmental Remediation Trust, and (b) after the Effective Date, the Debtors or Liquidating Trustee (as applicable) shall transfer fifty percent (50%) of the Fibrant South Center Proceeds to CIH promptly following the closing of the sale of the South Center Assets. The remaining fifty percent (50%) of the Fibrant South Center Proceeds shall be distributed to Augusta Sulfate

~~Company, LLC ("Augusta Sulfate")~~ in full satisfaction of its Allowed Miscellaneous Secured Claim; provided, however, if Augusta Sulfate is the purchaser of the South Center Assets, then (i) the Allowed Miscellaneous Secured claim of Augusta Sulfate shall be deemed satisfied as of the closing of the sale, (ii) Augusta Sulfate shall receive a purchase price "credit" in an amount equal to fifty percent of the Fibrant South Center Proceeds, and (iii) no funds shall be distributed to Augusta Sulfate in connection with the sale of the South Center Assets.

25.    <u>Establishment of the Environmental Remediation Trust</u>.  On the Effective Date, the Environmental Remediation Trust shall be established pursuant to the Environmental Remediation Trust Agreement for the purposes of, among other things: (i) holding the Environmental Remediation Trust Assets; (ii) carrying out administrative functions related to the Environmental Remediation Trust Assets; and (iii) funding implementation of future Clean-Up Activities (as such term is defined in the Environmental Remediation Trust Agreement) with respect to the Environmental Remediation Property. Upon execution of the Environmental Remediation Trust Agreement, the Environmental Remediation Trustee shall be authorized to take all steps necessary to complete the formation of the Environmental Remediation Trust. The Environmental Remediation Trust shall be administered by the Environmental Remediation Trustee in accordance with the Environmental Remediation Trust Agreement and the ELT Property Transfer Agreement.  The funds from the Environmental Remediation Trust shall not be used for state voluntary cleanup applications or plans because, under Georgia law, the Environmental Remediation Property is not eligible to be cleaned up under a voluntary program. To the extent any language in the Environmental Remediation Trust Agreement conflicts with the language contained in this Confirmation Order, the Confirmation Order controls.

26.     <u>Appointment of the Environmental Remediation Trustee.</u> The Court hereby approves the appointment of Delaware Trust Company as the Environmental Remediation Trustee, and such appointment shall be effective as of the Effective Date. The Environmental Remediation Trustee shall have and perform the duties and obligations set forth in the Environmental Remediation Trust Agreement.   Upon written request from EPD, the Environmental Remediation Trustee shall provide to EPD, within fifteen (15) days of receipt of EPD's request, a statement identifying in reasonable detail all transactions of the Trust Funds (as such term is defined in the Environmental Remediation Trust Agreement), provided that sub-custodial statements shall only be provided upon specific request.

27.     <u>Transfer of Remaining Assets.</u>  On and after the Effective Date, the Liquidating Agent shall have sole authority to cause the Debtors to liquidate and sell, and the Liquidating Agent shall pursue the liquidation of, all remaining Assets that have revested in the Debtors.  The Liquidating Agent shall have the authority to consummate such liquidations and sales without the necessity of obtaining any approval from the Court or providing notice to any party in interest if the aggregate purchase price for the Assets to be sold in connection with a particular transaction is less than or equal to $500,000; provided, however, the Liquidating Agent shall have the right in its sole discretion to seek and obtain Court approval of any sale transaction if the Liquidating Agent believes it is in the best interests of the Estates to do so.  If the aggregate purchase price in connection with a particular sale transaction exceeds $500,000, then Court approval (following Designated Notice) shall be required.  The Liquidating Agent shall also have the authority, if appropriate in the sole discretion of the Liquidating Agent, to abandon any Assets that cannot be liquidated or sold in a cost effective manner or that have inconsequential value; <u>provided, however</u>, the Debtors, the Estates and the Liquidating Agent shall not be authorized to abandon

-38-

any real property except (i) with the prior written consent of the EPD, or (ii) pursuant to further order of this Court; provided, further, if the Liquidating Agent intends to sell any portion of real property required to be on a hazardous waste permit, regardless of the aggregate purchase price, the Liquidating Agent shall notify EPD and EPA, in accordance with 40 C.F.R 270.40(b) and GA Rules and Regs. §391-3-11-.11(8), and EPA.

28.     Exemption From Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a Debtor to any other Person pursuant to the Plan (including pursuant to the ELT Property Transfer Agreement and including any sale of the South Center Assets), or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and this Confirmation Order hereby orders and directs the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

29.     Further Authorization. Each of the Debtors, the Liquidating Agent, the Creditor Trustee, the Environmental Remediation Trustee and the Litigation Trustee shall be entitled to seek such orders, judgments, injunctions and rulings as they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

30.     Establishment of the Litigation Trust.  On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purposes of, among other

things, (i) holding the Causes of Action, (ii) prosecuting, settling, enforcing and/or realizing on the Causes of Action, and (iii) if applicable, paying a portion of the Net Litigation Proceeds to the Debtors (which will be added to the GUC Funds). The Court hereby approves the appointment of CIH as Litigation Trustee of the Litigation Trust, and such appointment shall be effective as of the Effective Date.

31. <u>Establishment of the Creditor Trust</u>. On the Effective Date, the Creditor Trust shall be established pursuant to the Creditor Trust Agreement for the purposes of, among other things, (i) reconciling Class 4 Claims to the extent necessary, (ii) establishing a reserve for the payment of any Class 4 Claims that are Disputed Claims, and (iii) making Distributions to Holders of Allowed Class 4 Claims, in accordance with the terms of the Plan. GlassRatner Advisory & Capital Group, LLC by and through Joseph Pegnia is hereby appointed as Creditor Trustee effective as of the Effective Date and is invested with the authority and obligations set forth in the Plan, including <u>Article XIII</u> of the Plan and the Creditor Trust Agreement.

32. <u>Dissolution</u>. Fibrant will be deemed dissolved ~~upon the Effective Date~~ and will cease to exist <u>upon the date the EPD Permit is transferred</u>, which dissolution shall occur immediately following the transfer of the ~~Environmental Remediation Property to ELT and the closing of the ELT Transaction~~<u>EPD Permit to ELT</u>; such dissolution shall be deemed to occur pursuant to the applicable laws of the State of Delaware and without the necessity of taking any action or making any filing with the Delaware Secretary of State or otherwise. Fibrant and the Liquidating Agent are authorized to file the Plan and this Confirmation Order as evidence of the dissolution of Fibrant and shall take such actions as are reasonably requested by the ChemicaInvest Parties with respect to the dissolution of Fibrant and administration of such dissolution with the Delaware Secretary of State. After the occurrence of the Consummation

-40-

Date and the entry of an order of the Court closing the Bankruptcy Cases, South Center, Evergreen and Monomers shall be deemed dissolved pursuant to the applicable laws of the State of Georgia without the necessity of taking any action or making any filing with the Georgia Secretary of State, Delaware Secretary of State, or otherwise.

***Approval of Releases, Exculpation, and Waiver***

33.    <u>Releases by the Debtors of Certain Parties</u>.  **As set forth in <u>Section 10.3</u> of the Plan, pursuant to Section 1123(b)(3) of the Bankruptcy Code, as of the Effective Date, for good and valuable consideration provided by or on behalf of the Debtor Released Parties (including payment of the Settlement Payments), each of the Debtors and the Estates shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to the Debtor Released Parties, from any and all Causes of Action and any other claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any of the Debtors and the Estates has, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, equitable subordination, breach of fiduciary duty, contribution, indemnification, joint liability, or otherwise, or based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, including those in any way related to the Bankruptcy Cases or the Plan; <u>provided,</u>**

-41-

**however**, the foregoing release does not release any obligations of any Debtor Released Party under the Plan or any document, instrument or agreement executed to implement the Plan.

34.     Third Party Releases. **As set forth in Section 10.4 of the Plan, as of the Effective Date, for good and valuable consideration provided by or on behalf of the Creditor Released Parties (including payment of the Settlement Payments), each Releasing Party shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to each Creditor Released Party from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any Releasing Party has, based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, the Estates and their business operations, assets and liabilities, including those in any way related to the Bankruptcy Cases or the Plan; provided, however, the foregoing release does not release any obligations of any Creditor Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan; provided, further, that if prior to or on the Effective Date, any Releasing Party has directly or indirectly brought or asserted a claim or cause of action that has been released or is contemplated to be released pursuant to the Plan against any Creditor**

Released Party, such Releasing Party shall withdraw and/or dismiss, with prejudice, such pending claim or cause of action. Notwithstanding any other provision of this Confirmation Order, (a) EPD and EPA are Releasing Parties with respect to the Creditor Released Parties solely with respect to liabilities related to the Environmental Remediation Property under the Georgia Hazardous Waste Management Act, Official Code of Georgia Annotated ("O.C.G.A."), Section 12-8-66(e) and 12-8-71(b), the Georgia Hazardous Site Response Act, Sections 12-8-90 through 12-8-97, Sections 106 and 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§9606 and 9607(a), and Section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. §6973, and (b) except as provided in clause (a) above, the Releasing Parties shall not include the United States of America or any department, agency, or instrumentality thereof, or the State of Georgia or any department, agency, or instrumentality thereof. Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, EPD and EPA shall not be bound by any release set forth in the Plan or Confirmation Order to the extent it releases, limits, or ~~bar's~~bars EPD's or EPA's right or ability to pursue potentially responsible parties (other than the ChemicaInvest Parties or the ChemicaInvest Affiliated Parties) for environmental liability and/or unpermitted releases, including any DSM Entity. EPD and EPA expressly reserve all claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all Persons (other than the ChemicaInvest Parties or the ChemicaInvest Affiliated Parties), including predecessors of the Debtors and the DSM Entities, for any matter arising at or relating in any manner to the Environmental Remediation Property.

35.     <u>ChemicaInvest Releases.</u> **As set forth in Section 10.5 of the Plan, as of the Effective Date, for good and valuable consideration, each ChemicaInvest Party shall be deemed to have provided a full, complete, unconditional, final and irrevocable release to each CIH Released Party from any and all causes of action and any other claims, debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of any Debtor, whether accrued or unaccrued, whether matured or unmatured, whether existing or hereafter arising, whether known or unknown, foreseen or unforeseen, direct or indirect, fixed or contingent, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, in law, equity, contract, tort or otherwise, which any ChemicaInvest Party has, based in whole or in part upon any act or omission, event, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date and arising from or related in any way to the Debtors, the Estates and their business operations, assets and liabilities, including those in any way related to the Bankruptcy Cases or the Plan; <u>provided</u>, <u>however</u>, the foregoing release does not release any obligations of any CIH Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.**

36.     <u>Exculpation and Limitation of Liability.</u>  **As set forth in <u>Section 10.7</u> of the Plan, the Debtors, the Estates, the Committee, the members of the Committee solely in their capacities as such, and any of such parties' respective current and/or post-Filing Date and pre-Effective Date members, officers, directors, managers, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or**

Equity Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the filing of the Bankruptcy Cases, the negotiation, formulation, preparation, dissemination, and filing of the Plan, the pursuit of confirmation or the pursuit of approval of the Plan, the Estates, the property to be distributed under the Plan, the Disclosure Statement or any other contract, instrument, release or other agreements or documents created or entered into in connection with the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Equity  Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this paragraph for any act or omission in connection with, relating to, or arising out of the Bankruptcy Cases, the filing of the Bankruptcy Cases, the negotiation, formulation, preparation, dissemination, and filing of the Plan, the pursuit of confirmation or the pursuit of approval of the Plan, the Estates, the property to be distributed under the Plan, the Disclosure Statement or any other contract, instrument, release or other agreements or documents created or entered into in connection with the Plan.  For the avoidance of doubt, nothing in this paragraph relieves any Person from complying with the applicable provisions of the federal securities laws.   Nothing in the Plan or this Confirmation Order shall be construed as a waiver or release of EPD's or EPA's right to take any action based on any Person's failure to comply with this Confirmation Order.

Nothing in the Plan or this Confirmation Order shall be construed as giving immunity from criminal action against any Person. Notwithstanding any other provision of the Plan (including the provisions of Section 10.7), (a) the releases of liability by EPD and EPA shall be limited to Sections 10.4 and 10.9 (to the extent Section 10.9 clarifies the releases in Section 10.4) of the Plan, (b) the exculpation and limitation of liability contained in Section 10.7 of the Plan extends to acts or omissions occurring from and after the Filing Date and through and including the Confirmation Date, and (c) Claims for payment of statutory fees pursuant to 28 U.S.C. §1930(a)(6) are not barred by Section 10.7 of the Plan.

37. <u>Injunction</u>. Consistent with <u>Section 10.8</u> of the Plan, this Confirmation Order shall operate as an injunction as follows: **Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate Final Order of the Court, all Persons who have held, hold, or may hold Claims against or Equity Interests in any of the Debtors are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Creditor Released Parties with respect to any such Claim or Equity Interest; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors or Creditor Released Parties on account of any such Claim or Equity Interest; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors or Creditor Released Parties or against the property or interests in the property thereof on account of any such Claim or Equity Interest; (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim which is treated or satisfied pursuant to the Plan; and (e) taking any action to interfere with the implementation or consummation of the Plan; provided, however, the**

provisions of this paragraph shall not prevent any Person from taking action in the Court to enforce their rights under and in accordance with the Plan. EPD and EPA shall maintain ~~their~~any regulatory power ~~and~~or oversight that they may have over the Environmental Remediation Property, and the Debtors, the Estates, ELT, and the Liquidating Agent shall comply with federal and state laws, rules, and regulations regarding the Environmental Remediation Property, including transfer of the EPD Permit in accordance with GA Rules and Regs. §391-3-11-.11(8) and 40 CFR 270.40(b). Nothing in the Plan or this Confirmation Order shall (i) be deemed to limit the authority of EPD or EPA to take response actions or to enforce federal and state laws, rules and regulations against any Person (other than the ChemicaInvest Parties and the ChemicaInvest Affiliated Parties), including predecessors of the Debtors and the DSM Entities, for any matter arising or relating in any manner to the Environmental Remediation Property, (ii) limit the information-gathering authority of EPD or EPA, or (iii) excuse any Person, including the Debtors, the Estates, ELT and Liquidating Agent from any disclosure or notification requirements imposed by federal or state laws, rules, or regulations regarding the Environmental Remediation Property.

38. <u>Waiver of Statutory Limitation on Releases</u>. Each Releasing Party is deemed to have expressly waived any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of granting the release, which if known by it may have materially affected its settlement with the released party. The releases contained in Article X of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, or foreseen or unforeseen.

39.   Approval of Releases.  The releases granted pursuant to Sections 10.4 and 10.9 of the Plan and paragraph 34 of this Confirmation Order (the "Third Party Releases") to the Creditor Released Parties are necessary and fair, and satisfy the factors set forth in *In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070 (11th Cir. 2015), for the following reasons, among others:

(a)   The provisions of the Plan related to the release of the Creditor Released Parties are the product of a global ~~settlement~~resolution reached between the Debtors, the ChemicaInvest Parties, the Committee, ~~EPA,~~ and EPD, and ~~the settlement~~this global resolution has the support of Class 3 creditors and unsecured creditors in Class 4 that voted on the Plan, as reflected in acceptance of the Plan by such creditors holding 99.98% by value and 94.12% by number of the Claims in Class 4 that voted on the Plan;

(b)   The ~~settlement~~global resolution embodied in the Plan provides for the payment of substantial funds from the ChemicaInvest Parties, totaling approximately $17.3 million, that will be used to fund the Plan and pay for necessary environmental remediation of the Environmental Remediation Property, while maximizing creditor recoveries, which would not be possible absent such payments by the ChemicaInvest Parties;

(c)   The ~~settlement~~global resolution embodied in the Plan is the result of good faith, arm's-length and protracted negotiations among the ChemicaInvest Parties, the Debtors, the Committee, ~~EPA,~~ and EPD;

(d)   The ChemicaInvest Parties have an identity of interests with the Debtors because the Third Party Releases are limited in part to claims related to the Debtors, the Estates and their operations, which creates the heightened risk that the ChemicaInvest Parties, if faced with a lawsuit related to the Debtors, would assert claims for contribution (among others) against the Debtors;

(e)   The Third Party Releases are essential to the Plan because without the Third Party Releases, and the attendant assurance that any possible liability with regard to the claims released thereby is fully and finally addressed, the ChemicaInvest Parties would not contribute the necessary funds to the Debtors' Estates, and the payments to be made to the creditors and to support the remediation of the Environmental Remediation Property pursuant to the Plan would not be possible;

(f)   The payments by the ChemicaInvest Parties to enable the ELT Transaction and continue remediation of the Environmental Remediation Property further the public interest in the preservation of public health and safety and the remediation of environmental contamination, and absent the confirmation of the Plan, including the Third Party Releases, such

-48-

payments by the ChemicaInvest Parties and the corresponding benefits to the public interest would not be available;

(g)     Class ~~4, which is the only class that voted on the Plan, overwhelmingly~~3 voted to accept the Plan~~,~~ and Class 4 overwhelmingly voted to accept the Plan, in each case including the Third Party Releases;

(h)     The objecting parties to the Third Party Releases have failed to provide a basis to find the Third Party Releases are not necessary and fair, and thus the objecting parties have not provided sufficient grounds to deny confirmation of the Plan; and

(i)     The Court, by this Confirmation Order, has made specific factual findings that support the conclusion that the Third Party Releases granted to the Creditor Released Parties in the Plan are necessary and fair, and that the circumstances of the Plan constitute the unusual circumstances sufficient to justify the Third Party Releases.

40.     _Waiver of Certain Avoidance Actions_. On and as of the Effective Date, each Debtor, in its individual capacity and as a debtor in possession for and on behalf of its Estate, shall waive, and be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever waived, the Waived Avoidance Actions. The Debtors, the Committee, the Liquidating Agent, the Creditor Trustee, and other potential representatives of the Estates shall be bound, to the same extent the Debtors are bound, by the waiver set forth above.

**_Approval of the ELT Transaction and Related Transactions_**

41.     _Approval of Plan Documents_. The following agreements are hereby approved: (a) the Environmental Remediation Trust Agreement; (b) the Litigation Trust Agreement; (c) the ELT Property Transfer Agreement; and (d) the Creditor Trust Agreement.

42.     _Approval of the ELT Transaction_. Pursuant to Sections 105, 363, 365 and 1123(a)(5) of the Bankruptcy Code, the transfer of the Environmental Remediation Property to ELT, the terms and conditions of the ELT Property Transfer Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby are authorized and approved in all respects. The transfer of the Environmental Remediation Property to ELT and

the consideration provided by the ELT under the ELT Property Transfer Agreement are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. ELT is hereby granted and is entitled to all of the protections afforded to a good faith purchaser under Bankruptcy Code § 363(m).

43. <u>ChemicaInvest Parties' Payments</u>. On or as of the Effective Date (or, with respect to Net Litigation Proceeds, to the extent applicable after the Effective Date), the ChemicaInvest Parties shall pay: (i) to the Environmental Remediation Trust, the Remediation Payment, (ii) the Insurance Payment, (iii) to the Debtors, $850,000 to fund a deductible trust (pursuant to Section 7.5(b) of the ELT Property Transfer Agreement), and (iv) to the Creditor Trust, (a) the Estate Payment, and (b) a portion of the Net Litigation Proceeds (to the extent applicable and calculated pursuant to the Plan).

44. <u>Transfer of the Environmental Remediation Property</u>. On the Effective Date, the Debtors shall transfer, assign, and deliver to ELT all of Debtors' right, title and interest in and to the Environmental Remediation Property in accordance with section 1141 of the Bankruptcy Code and on the terms set forth in the ELT Property Transfer Agreement. Pursuant to Sections 363(f) and 1123(a)(5)(B) and (D) of the Bankruptcy Code, the transfer of the Environmental Remediation Property to ELT shall be: (i) free and clear of all Claims, Liens, encumbrances and interests of any kind or nature whatsoever to the broadest extent permitted under the Bankruptcy Code (other than "Permitted Title Exceptions," as such term is defined in the ELT Property Transfer Agreement); and (ii) subject to any rights of the ChemicaInvest Parties, ELT, the Debtors, EPA and EPD under the Environmental Remediation Trust Agreement or the ELT Property Transfer Agreement. Following the closing date of the ELT Transaction, no Holder of

any Liens or Claims shall interfere with ELT's use of the Environmental Remediation Property based on or related to such Liens or Claims, and no Person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the ELT Property Transfer Agreement.

45.     <u>Continuing Effect of  Environmental Encumbrances and Permits.</u> For avoidance of doubt, to the extent any real property deeds or other written encumbrances recorded in the real property records of Richmond County, Georgia relate to the Debtors' real  property and contain restrictions relating to environmental matters, including the South Center Assets and the real property to be transferred to ELT pursuant to the ELT Property Transfer Agreement, such restrictions and encumbrances shall remain in effect and shall be unaffected by the Plan and this Confirmation Order. EPD shall continue to maintain its regulatory power and oversight over the corrective action required with respect to the real property transferred from the Debtors to ELT pursuant to the ELT Property Transfer Agreement. The Debtors, the Liquidating Agent, and ELT shall comply with all rules, laws, and regulations regarding the transfer of the EPD Permit, including 40 CFR 270.40(b)GA Rules and Regs. §391-3-11-.11(8) and 40 CFR 270.40(b).  From and after the closing of the ELT Transaction, ELT shall allow PCS Nitrogen Fertilizer, L.P. ("PCS") access to the property located at 1802 Sand Bar Ferry Road, Augusta, Georgia (tax parcel no. 076-0-011-00-0), pursuant to the terms of that certain Easement Agreement, dated April 18, 2012, between Fibrant and PCS, in order to allow PCS to conduct ongoing environmental investigations and remediation.

46.     <u>Authority to Implement the ELT Transaction</u>. The Debtors, the Liquidating Agent, and each other Person having duties or responsibilities under the ELT Property Transfer Agreement, any agreements or instruments related thereto or this Confirmation Order, and their

respective directors, officers, employees, members, managers, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the ELT Property Transfer Agreement and this Confirmation Order, to carry out all of the provisions of the ELT Property Transfer Agreement and any related agreements or instruments (including the Environmental Remediation Trust Agreement); to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the ELT Property Transfer Agreement and any related agreements or instruments (including the Environmental Remediation Trust Agreement); to take any and all actions contemplated by the ELT Property Transfer Agreement, any related agreements or instruments (including the Environmental Remediation Trust Agreement), or this Confirmation Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the ELT Property Transfer Agreement, any related agreements or instruments (including the Environmental Remediation Trust Agreement), and this Confirmation Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, managers, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, managers, agents, representatives, and attorneys of such entities.  The Liquidating Agent is authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Liquidating Agent is further authorized and empowered to cause to be filed with the secretary of state of any state or

-52-

other applicable officials of any applicable governmental authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the ELT Property Transfer Agreement, any related agreements (including the Environmental Remediation Trust Agreement) and this Confirmation Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental authorities or as the Liquidating Agent or any of the officers of any Debtor may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Confirmation Order shall constitute all approvals and consents, if any, required by the limited liability company laws of the State of Delaware and all other applicable business, corporation, trust, and other laws of the applicable governmental authorities with respect to the implementation and consummation of the ELT Property Transfer Agreement, any related agreements or instruments and this Confirmation Order, and the transactions contemplated thereby and hereby.

47.    <u>No Avoidance.</u> The transfer of the Environmental Remediation Property pursuant to the ELT Property Transfer Agreement is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

48.    <u>Self-Execution.</u> The provisions of this Confirmation Order authorizing the transfer of assets subject to the ELT Property Transfer Agreement free and clear of Liens and Claims shall be self-executing, and the Debtors, the Liquidating Agent and ELT shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Confirmation Order.  However, the Debtors, the Liquidating Agent, and ELT, and each of their

respective officers, employees, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that the Debtors, the Liquidating Agent, or ELT deem necessary, desirable or appropriate to implement and effectuate the terms of the ELT Property Transfer Agreement and this Confirmation Order.

49.    Permissive Releases. On or before the closing date of the ELT Transaction, the creditors of each Debtor are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens of any kind against the assets transferred to ELT pursuant to the ELT Property Transfer Agreement, as such Liens may have been recorded or may otherwise exist.  Except as expressly provided in the ELT Property Transfer Agreement, if any Person that has filed financing statements or other documents or agreements evidencing any Liens in or against the transferred assets shall not have delivered to the Debtors prior to the closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the assets, the Debtors and/or the Liquidating Agent are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person with respect to such assets prior to the closing, and ELT is authorized to file such documents after closing.

50.    Operation of Debtors' Assets. To the greatest extent available under applicable law, ELT shall be authorized, as of the closing date of the ELT Property Transfer Agreement, to operate under any permit of any governmental authority relating to the transferred assets, and all such permits are deemed to have been, and hereby are, deemed to be transferred to ELT as of the closing date of the ELT Transaction.

-54-

51.    <u>Full and Complete Assignment.</u> All of the Debtor's interests in the assets to be acquired by ELT under the ELT Property Transfer Agreement shall be, as of the closing date and upon the occurrence of the closing, transferred to and vested in ELT.  Upon the occurrence of the closing of the ELT Transaction, this Confirmation Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets acquired by ELT under the ELT Property Transfer Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in such Assets to ELT.

52.    <u>No Successor Liability.</u> Except as expressly provided in the ELT Property Transfer Agreement, ELT shall not be deemed to assume, nor shall it or any affiliate of ELT, be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Environmental Remediation Property prior to the consummation of the transactions contemplated by the ELT Property Transfer Agreement, or any liabilities calculable by reference to the Debtors or their operation of the Environmental Remediation Property, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the ELT Property Transfer Agreement, all of which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against ELT or any affiliate of ELT. ELT is not a "successor" to the Debtors or their estates by reason of any theory of law or equity; and, except as specifically and explicitly provided in the ELT Property Transfer Agreement, ELT shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of the Debtors and/or their Estates including any successor liability or similar liability.  Notwithstanding the foregoing

provisions of this paragraph, any future owner or operator of the Environmental Remediation Property shall be subject to EPD's and EPA's regulatory power and oversight with respect to the Environmental Remediation Property and as further described in paragraphs 34 and 36 of this Confirmation Order.  Furthermore, except with respect to the ChemicaInvest Parties and the ChemicaInvest Affiliated Parties, nothing in this Confirmation Order or the Plan discharges, releases, precludes or enjoins: (i) any police or regulatory liability to a governmental unit (as defined in 11 U.S.C. § 101(27)) ("Governmental Unit") that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; or (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any Person would be subject to as the owner or operator of property after the Effective Date.

53.     Persons in Possession of Debtor Property. Except as otherwise expressly provided in the ELT Property Transfer Agreement, all Persons presently or on or after the closing date for the ELT Property Transfer Agreement in possession of some or all of the Environmental Remediation Property are directed to surrender possession of such property to ELT on the closing date or at such time thereafter as ELT may request.

54.     Acceptance of Documents. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the ELT Property Transfer Agreement and this Confirmation Order.  This Confirmation Order and the ELT Property Transfer Agreement shall be binding upon and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or

otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Environmental Remediation Property.

55.     No Discrimination. To the maximum extent permitted by Bankruptcy Code Section 525, no governmental authority may revoke or suspend any permit relating to the operation of the assets sold, transferred, or conveyed to ELT on account of the filing or pendency of these chapter 11 cases or the consummation of the transactions contemplated by the ELT Property Transfer Agreement; *provided, however,* that EPD shall continue to maintain its regulatory power and oversight over the corrective action required with respect to the real property transferred from the Debtors to ELT pursuant to the ELT Property Transfer Agreement. The Debtors, the Liquidating Agent, and ELT shall comply with all rules, laws, and regulations regarding the transfer of the EPD Permit, including GA Rules and Regs. §391-3-11-.11(8) and 40 CFR 270.40(b).

56.     Modification of Documents. Subject to the terms of the ELT Property Transfer Agreement, the ELT Property Transfer Agreement and any related agreements (including the Environmental Remediation Trust Agreement) and/or instruments may be waived, modified, amended, or supplemented by written agreement of the Debtors, the ChemicaInvest Parties and ELT, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtors and substantially conforms to, and effectuates, the ELT Property Transfer Agreement and any related agreements and/or instruments and this Confirmation Order.

57.     Omission of Reference to ELT Property Transfer Agreement Documents. The failure specifically to include any particular provisions of the ELT Property Transfer Agreement or any related agreements or instruments in this Confirmation Order shall not diminish or impair

the effectiveness of such provisions, it being the intent of the Court, the Debtors, and ELT that the ELT Property Transfer Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Confirmation Order prior to Closing.

58.     No Amendment. Nothing in this Confirmation Order shall alter or amend the ELT Property Transfer Agreement and the obligations of the Debtors, the ChemicaInvest Parties, and ELT thereunder.

59.     Binding Effect. This Confirmation Order and the ELT Property Transfer Agreement shall be binding upon and govern the acts of all Persons, including the Debtors, the Estates, the ChemicaInvest Parties, ELT, their respective successors and permitted assigns, including any Chapter 11 trustee hereinafter appointed for the Estates or any trustee appointed in a Chapter 7 case if these cases are converted from Chapter 11, all creditors of the Debtors (whether known or unknown), all other parties-in-interest in these Bankruptcy Cases, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Environmental Remediation Property. Nothing; provided, however, this Confirmation Order shall only be binding on a Chapter 11 or Chapter 7 trustee from and after the Effective Date.  From and after the Effective Date, nothing in any order of this Court or contained in the Plan, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the ELT Property Transfer Agreement or the terms of this Confirmation Order.

60.   <u>Immediate Entry.</u> Notwithstanding Bankruptcy Rules 6004 and 7062, this Confirmation Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtors, the ChemicaInvest Parties, and ELT are free to consummate the Plan, cause the occurrence of the Effective Date, and close under the ELT Property Transfer Agreement at any time following the entry of this Confirmation Order, subject to the terms of the ELT Property Transfer Agreement.  In the absence of any Person obtaining a stay pending appeal, if the Debtors, the ChemicaInvest Parties and ELT consummate the Plan, cause the occurrence of the Effective Date, and close under the ELT Property Transfer Agreement, the ChemicaInvest Parties and ELT shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the ELT Property Transfer Agreement and the Plan if this Confirmation Order or any authorization contained herein is reversed or modified on appeal.

61.   <u>Modification of Stay.</u> The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to implement the terms and conditions of the ELT Property Transfer Agreement and the provisions of this Confirmation Order.

***Approval of Other Plan Provisions***

62.   <u>Retention of Jurisdiction</u>.  Pursuant to <u>Article XII</u> of the Plan, and subject to 28 U.S.C. §1334, subsequent to the Effective Date, this Court shall have or retain jurisdiction for, without any party waiving its right, under 28 U.S.C. Section 157 and/or Article III of the U.S. Constitution, to insist that any final judgment be entered in an Article III court, for at least the following purposes:

(a)   To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a

-59-

date or dates by which objections to Claims must be filed to the extent not established herein;

(b) To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, and to establish the amount of any reserve required to be withheld from any Distribution under the Plan on account of any disputed, contingent or unliquidated Claim;

(c) To resolve all matters related to the rejection, or assumption and/or assignment, of any Executory Contract or Unexpired Lease of the Debtors;

(d) To hear and rule upon all Causes of Action, Applicable CIH Insurance Causes of Action, Applicable ELT Insurance Causes of Action or DSM SPA Causes of Action, in each case as commenced or pursued by the Debtors, the Liquidating Agent, the Litigation Trust, CIH or ELT (as applicable);

(e) To hear and rule upon all applications for Professional Compensation;

(f) To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

(g) To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

(h) To hear, rule upon and enter orders approving any sales of Assets (including sales of fee owned real property) by the Debtors after the Effective Date;

(i) To adjudicate controversies arising out of the administration of the Estates or the implementation of the Plan, including any disputes that may arise between the Liquidating Agent, CIH and/or the Creditor Trustee;

(j) To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estates and the payment of Claims;

(k) To determine any suit or proceeding brought by the Debtors or the Liquidating Agent to recover property under any provisions of the Bankruptcy Code;

(l) To hear and determine any tax disputes concerning the Debtors and to determine and declare any tax effects under the Plan;

(m) To hear, rule upon and enter orders regarding any disputes, controversies or other matters relating to or arising under the ELT Property Transfer Agreement, the Environmental Remediation Trust Agreement, the Litigation Trust Agreement and/or the Debtors' rights thereunder;

(n) To determine such other matters as may be provided for in the Plan or this Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

(o)    To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

(p)    To decide or resolve any motions, adversary proceedings, contested or litigated matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Agent after the Effective Date;

(q)    To enforce the releases contained in Sections 10.3, 10.4, 10.5 and 10.7 of the Plan;

(r)    To enforce the injunction set forth in Section 10.8 of the Plan;

(s)    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which the Debtors sold any of their assets during the Bankruptcy Cases; and

(t)    To enter a final decree.

63.    <u>Alternative Jurisdiction</u>.  In the event that this Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

64.    <u>Modification of the Plan</u>.  The Debtors may modify the Plan with the prior written consent of the ChemicaInvest Parties pursuant to section 1127 of the Bankruptcy Code and as provided in the Plan, to the extent applicable law permits.  The Debtors may modify the Plan with the prior written consent of the ChemicaInvest Parties after confirmation, upon notice to the Creditor Trustee only, or after such notice and hearing as the Court deems appropriate, if the Court finds that the modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto.

65.    <u>Creditors' Committee</u>.  On the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Bankruptcy Cases and under the Bankruptcy Code;

provided, however, notwithstanding the foregoing, the Committee shall continue to exist for the limited purpose of filing appropriate fee applications or requests for expense reimbursements.

66.    Notice.  As set forth in Section 14.13 of the Plan, any notice required or permitted to be provided to Debtors, the Liquidating Agent, the Creditor Trustee or the ChemicaInvest Parties under the Plan shall be in writing and served by overnight courier service, facsimile transmission or certified mail, return receipt requested, addressed as follows:

Debtors and/or Liquidating Agent for the Debtors:

Fibrant, LLC
c/o Alvarez & Marsal North America, LLC
Monarch Tower
3424 Peachtree Road NE, Suite 1500
Atlanta, Georgia, 30326
Attn:  Lawrence Hirsh
Email: lhirsh@alvarezandmarsal.com

with a copy to (which shall not constitute notice):

King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Attn:   Paul Ferdinands
Email: pferdinands@kslaw.com

The Creditor Trustee:

~~Glass Ratner~~GlassRatner Advisory & Capital Group, LLC
3445 Peachtree Road, Suite 1225
Atlanta, GA  30326
Attn:  Joseph V. Pegnia
Email: jpegnia@glassratner.com

with copies to (which shall not constitute notice):

Lowenstein Sandler LLP
One Lowenstein Drive
Roseland, NJ 07068
Attn:   Jeffrey D. Prol
Email: jprol@lowenstein.com

-62-

Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020
Attn:   Bruce S. Nathan
Email: bnathan@lowenstein.com

The ChemicaInvest Parties:

c/o ChemicaInvest Holding B.V.
Mauritslaan 49, 6129 EL Urmond
The Netherlands
Attn: Jean-Paul Van de Velde
Email: jean-paul.velde-van-de@chemicainvest.com

with copies to (which shall not constitute notice):

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Gary Gengel, Adam J. Goldberg
Email: gary.gengel@lw.com, adam.goldberg@lw.com

Scroggins & Williamson, P.C.
4401 Northside Parkway, Suite 450
Atlanta, Georgia 30327
Attn: Matthew Levin
Email: mlevin@swlawfirm.com

67.    Section 1125 of the Bankruptcy Code.  The Debtors have solicited acceptances of

the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code,

and the Debtors and their Affiliates, officers, managers, employees, consultants, agents, advisors,

members, attorneys, accountants, financial advisors, other representatives and professionals are

not, and on account of such solicitation will not be, liable at any time on account of such

solicitation for the violation of any applicable law, rule, or regulation governing the solicitation

of acceptances or rejections of the Plan.

68.    Effect of Reference to the Plan in this Confirmation Order.  The failure to

reference or discuss any particular provision of the Plan in this Confirmation Order shall have no

effect on the validity, binding effect, and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect, and enforceability as if fully set forth in this Confirmation Order.

69.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

70.    <u>Notice of the Effective Date</u>. The form of the notice of the entry of this Confirmation Order and occurrence of the Effective Date attached hereto as <u>Exhibit 1</u> (the "<u>Confirmation Notice</u>") is hereby approved.  Pursuant to Rule 3020(c), on or before the date that is five (5) days after the occurrence of the Effective Date, the Debtors shall file the Confirmation Notice with this Court and serve it by first class mail on each of the following at their respective addresses last known to the Debtor: (i) the Office of the United States Trustee for the Southern District of Georgia; (ii) counsel to the Committee; (iii) all parties on the Master Service List filed in the Bankruptcy Cases; (vii) all known creditors of the Debtors; and (viii) all known Holders of Equity Interests in the Debtors.  The Confirmation Notice need not be mailed to any Person if a previous mailing to such Person has been returned as undeliverable by the United States Postal Service, unless the Debtors have been informed in writing of a corrected address for such Person. Upon the filing of the Confirmation Notice, the Debtors shall also publish the Confirmation Notice electronically on http://www.kccllc.net/Fibrant.  The notice described in this paragraph shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7), 2002(i)-(l) and 3020(c) of confirmation of the Plan, the entry of this Confirmation Order, and the occurrence of the Effective Date.

71.    <u>Headings</u>.  The headings of the paragraphs in this Confirmation Order have been used for convenience of reference only and shall not limit or otherwise affect the meaning of this

-64-

Confirmation Order.  Whenever the words "include," "includes" or "including" (or other words of similar import) are used in this Confirmation Order, they shall be deemed to be followed by the words "without limitation."

72.    Conflicts.   The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern and shall be deemed a modification to the Plan and shall control and take precedence.

73.    Final Order/No Rule 3020(e) Stay.  This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof. The stay imposed by Bankruptcy Rule 3020(e) is hereby waived.

74.    Applicable Non-Bankruptcy Law.  Pursuant to Sections 1123(a) and 1142 of the Bankruptcy Code, the provisions of this Confirmation Order and the Plan (including any amendments or modifications thereto) shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

75.    Employee Records.  The Debtors intend to transfer their employee and human resources records regarding their former employees (the "Personnel Data") to DSM North America, Inc. ("DSM NA"). Following its receipt of the Personnel Data, (a) DSM NA shall keep Personnel Data confidential and shall not use or disclose Personnel Data except to the extent necessary to perform its legal obligations; (b) DSM NA shall implement and maintain reasonable security procedures and practices to protect Personnel Data from unauthorized access, use, modification, disclosure or destruction; (c) DSM NA shall treat Personnel Data with the same degree of care as DSM NA accords to its own comparable records, but not less than the standard

of care required by applicable law; (d) DSM NA shall use, keep and dispose of all Personnel Data in compliance with applicable law; (e) DSM NA will enter into a Business Associate Agreement containing the elements specified at 45 CFR 164.504(e); (f) DSM NA shall immediately notify the Debtors of any unauthorized access, use or disclosure of Personnel Data; and (g) DSM NA shall provide the Debtors with reasonable access to Personnel Data as necessary to comply with the Debtors' or their Affiliates' obligations under applicable law or as needed in connection with these Bankruptcy Cases.

76.    Approval of the South Center Sale.  The South Center Contract, and all transactions contemplated therein and all of the terms and conditions thereof, are hereby approved.  The Debtors, along with their officers, employees and agents, are authorized to execute, deliver and perform their obligations under and comply with the terms of the South Center Contract and to close and consummate the sale transaction contemplated therein.  The South Center Assets shall be transferred to the South Center Purchaser and, upon the closing, such transfer shall: (a) be valid, legal, binding and effective; (b) vest the South Center Purchaser with all right, title and interest of the Debtors in and to the South Center Assets; and (c) be free and clear of all Claims and interests, with all Claims that represent interests in property to attach to the net proceeds of the sale transaction, in the same amount and order of their priority, with the same validity, force and effect which they have against the South Center Assets, and subject to any claims and defenses the Debtors may possess with respect thereto in each case immediately prior to the closing.  All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the South Center Assets in accordance with the South Center Contract and this Confirmation Order.  Each and every  federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission,

-66-

court, department, or other governmental entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the South Center Contract.  In the event the proposed sale of the South Center Assets to the South Center Purchaser pursuant to the South Center Contract is not closed and consummated then, notwithstanding any contrary provision of the Plan or this Confirmation Order, the Claim of Augusta Sulfate against the Debtors, and the corresponding legal, equitable and contractual rights of Augusta Sulfate, including its lien in and upon the South Center Assets, as provided for in those certain documents referenced in Augusta Sulfate's claim number 87, shall continue and remain unaltered by the Plan and this Confirmation Order or any documents related thereto.

77.   76.  Service.   Counsel for the Debtors is directed to serve a copy of this Confirmation Order on all parties on the Master Service List within three (3) days of the entry of this Confirmation Order and to file a certificate of service with the Clerk of Court.

[END OF DOCUMENT]

Prepared and presented by:

KING & SPALDING LLP


*/s/Paul K. Ferdinands*
Paul K. Ferdinands
Georgia Bar No. 258623
pferdinands@kslaw.com
Jonathan W. Jordan
Georgia Bar No. 404874
jjordan@kslaw.com
Sarah L. Primrose
Georgia Bar No. 532582
sprimrose@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

and

KLOSINSKI OVERSTREET, LLP

James C. Overstreet Jr.
Georgia Bar No. 556005
jco@klosinski.com
1229 Augusta West Parkway
Augusta, GA 30909
Telephone:  (706) 863-2255
Facsimile:  (706) 863-5885

COUNSEL FOR THE
DEBTORS-IN-POSSESSION

Consented to by:


/s/_____
Jeffrey D. Prol, Esq.
Bruce S. Nathan, Esq.
Michael Papandrea, Esq.
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

- and -
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500 (Telephone)
973-597-2400 (Facsimile)

COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

/s/_____
John T. Garcia
Georgia Bar No. 283028
205 B N. Belair Road
Post Office Box 1984
Evans, Georgia 30809
(706) 650-7727
Fax (706) 364-5390
E-mail garcia81@knology.net


LOCAL COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

<u>Exhibit 1</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **FIBRANT, LLC, *et al.*,[1]** | ) | **Case No. 18-10274 (SDB)** |
| | ) | |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |

**NOTICE OF CONFIRMATION OF PLAN, PERMANENT INJUNCTION,**
**VARIOUS DEADLINES, EFFECTIVE DATE**

**AND**

**DEADLINE FOR FILING ADMINISTRATIVE EXPENSE CLAIMS AND**
**CLAIMS ARISING FROM THE REJECTION OF EXECUTORY**
<u>**CONTRACTS AND UNEXPIRED LEASES**</u>

**PLEASE TAKE NOTICE** that on May [__], 2019, the United States Bankruptcy Court for the Southern District of Georgia entered the *Findings of Fact, Conclusions of Law, and Order Confirming the Second Amended and Restated Plan of Liquidation Dated as of ~~April ___~~May 22, 2019 Filed by the Debtors* (the "<u>Confirmation Order</u>").  The Confirmation Order confirmed the *Second Amended and Restated Plan of Liquidation for Fibrant, LLC, et al. (* as amended and modified to date, the "<u>Plan</u>") filed by Fibrant, LLC and its affiliated debtors-in-possession (collectively, the "<u>Debtors</u>").

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order and the Plan may be obtained at the following website: http://www.kccllc.net/Fibrant;

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on [_____], 2019;

**PLEASE TAKE FURTHER NOTICE** the Confirmation Order contains the following permanent injunction:

**Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate Final Order of this Court, all Persons who have**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Fibrant, LLC (6694); Evergreen Nylon Recycling, LLC (7625); Fibrant South Center, LLC (8270); and Georgia Monomers Company, LLC (0042).

**held, hold, or may hold Claims against or Equity Interests in any of the Debtors are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or Creditor Released Parties with respect to any such Claim or Equity Interest; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors or Creditor Released Parties on account of any such Claim or Equity Interest; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against the Debtors or Creditor Released Parties or against the property or interests in the property thereof on account of any such Claim or Equity Interest; (d) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claim which is treated or satisfied pursuant to the Plan; and (e) taking any action to interfere with the implementation or consummation of the Plan; provided, however, the provisions of this paragraph and the provisions of <u>Section 10.8</u> of the Plan shall not prevent any Person from taking action in this Court to enforce their rights under and in accordance with the Plan. From and after entry of the Confirmation Order, (i) EPD and EPA shall maintain ~~their~~any regulatory power ~~and~~or oversight they may have over the Environmental Remediation Property, and (ii) the Debtors, the Estates, ELT, and Liquidating Agent shall comply with federal and state laws, rules, and regulations regarding the Environmental Remediation Property, including transfer of the EPD Permit in accordance with GA Rules and Regs. §391-3-11-.11(8) and 40 CFR 270.40(b).  Nothing in the Plan or the Confirmation Order shall (A) be deemed to limit the authority of EPD or EPA to take responsive action or to enforce federal and state laws, rules and regulations against any Person (other than the ChemicaInvest Parties and the ChemicaInvest Affiliated Parties), including, but not limited to, predecessors of the Debtors and the DSM Entities, for any matters arising or relating in any manner to the Environmental Remediation Property, (B) limit the information-gathering authority of EPD or EPA, or (C) excuse any Person, including the Debtors, the Estates, ELT and the Liquidating Agent from any disclosure or notification requirements imposed by federal or state laws, rules, or regulations regarding the Environmental Remediation Property.**

**NOTICE IS FURTHER GIVEN THAT** the Confirmation Order provides, among other things, the following deadlines:

a.      **Administrative Claims Bar Date (General)**:  Except as otherwise provided in the Plan, any Person holding an Administrative Expense Claim (other than a claim for Professional Compensation) shall file a proof of such Administrative Expense Claim with the Claims Agent **within sixty (60) days after the Liquidating Agent serves this notice of the occurrence of the**

**Effective Date**.  The proof of such Administrative Expense Claim must be filed at the following address:

>Fibrant Claims Processing Center
>c/o Kurtzman Carson Consultants LLC
>2335 Alaska Avenue
>El Segundo, California 90245

At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for the Liquidating Agent at the following address:

>King & Spalding LLP
>Attn: Jonathan W. Jordan
>1180 Peachtree Street
>Atlanta, Georgia 30309-3521

**Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claim by the Debtors and the Estates.**

b.   <u>**Administrative Claims Bar Date (Professionals)**</u>:  Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date **within sixty (60) days after the Effective Date**.  The provisions of this paragraph shall not apply to any professional providing services pursuant to, and subject to the limits contained in, the *Order Authorizing Debtors to Retain and Compensate Professionals Used in the Ordinary Course of Business* entered in the Bankruptcy Cases on May 1, 2018.

c.   <u>**Rejection Damage Claims Bar Date**</u>:  All proofs of claim with respect to Claims arising from the rejection pursuant to the Plan of any Executory Contracts or Unexpired Leases, if any, must be filed with the Claims Agent and served upon counsel for the Liquidating Agent at the addresses indicated in the above paragraph **within thirty (30) days after the Effective Date.** Any Claims arising from the rejection of Executory Contracts or Unexpired Leases that become Allowed Claims are classified and shall be treated as a Class 4 General Unsecured Claims. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan not filed within the time required by this section will be forever barred from assertion against the Debtors, the Estates and property of the Debtors unless otherwise ordered by this Court or provided in the Plan.**  Notwithstanding the foregoing, a Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease rejected pursuant to a separate order of this Court must be filed prior to any bar date set forth in such order.

*[signatures on following pages]*

- 3 -

Prepared and presented by:

KING & SPALDING LLP


/s/ ~~Paul K. Ferdinands~~ *Jonathan W. Jordan*
Paul K. Ferdinands
Georgia Bar No. 258623
pferdinands@kslaw.com
Jonathan W. Jordan
Georgia Bar No. 404874
jjordan@kslaw.com
Sarah L. Primrose
Georgia Bar No. 532582
sprimrose@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

and

KLOSINSKI OVERSTREET, LLP

James C. Overstreet Jr.
Georgia Bar No. 556005
jco@klosinski.com
1229 Augusta West Parkway
Augusta, GA 30909
Telephone:  (706) 863-2255
Facsimile:  (706) 863-5885

COUNSEL FOR THE
DEBTORS-IN-POSSESSION

Document comparison by Workshare Compare on Thursday, May 23, 2019 11:35:57 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMSLIBRARY/DMSLIBRARY01/34056355/9 |
| Description | #34056355v9<DMSLIBRARY01> - Fibrant - Confirmation Order |
| Document 2 ID | interwovenSite://DMSLIBRARY/DMSLIBRARY01/34056355/12 |
| Description | #34056355v12<DMSLIBRARY01> - Fibrant - Confirmation Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 70 |
| Deletions | 59 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 135 |
|---|---|